# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

aioTV Inc.,

       Plaintiff,

v.

Aio Wireless, LLC,

       Defendant

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

For its verified complaint against Defendant, Plaintiff states and alleges as follows:

### INTRODUCTION

This is an action for trademark infringement and unfair competition in which Plaintiff seeks injunctive relief to terminate Defendant's infringement of Plaintiff's "aio" trademark for wireless services, together with damages, restitution and other legal and equitable relief. The action is brought under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1025(a), and Colorado law.

This action arises because Defendant, a subsidiary of AT&T, Inc., recently usurped Plaintiff's trademark by changing Defendant's corporate name to "Aio" and launched an aggressive advertising and marketing campaign of an "aio

wireless" service that infringes and completely appropriates Plaintiff's previously established "aio" trademark.

## PARTIES

1.     Plaintiff is a corporation organized and existing under the laws of the State of Colorado with its principal place of business in Centennial, Colorado.

2.     Upon information and belief, Defendant is a Delaware limited liability company having its principal place of business in Atlanta, Georgia.  It is authorized to do business and maintains a registered agent for service of process in Colorado.

## JURISDICTION AND VENUE

3.     This action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and supplemental Colorado law.

4.      This Court has subject-matter jurisdiction over Plaintiff's Lanham Act claim pursuant to 28 U.S.C. §§ 1331and 1338 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.     This Court also has subject matter  jurisdiction over all claims in this action pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

6.     This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant has transacted business in Colorado and

{JK00487765.1 }

intentionally engaged in tortious activities that are purposely and expressly aimed at Colorado, which is Defendant's domicile and the focal point of the torts, with knowledge that the brunt of the injury from those activities would be felt in Colorado, and Plaintiff's claims in this action arise out of those business activities and forum-related torts and injuries to Plaintiff.

7.      Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is subject to the Court's personal jurisdiction with respect to the present civil action and is therefore deemed to reside in this judicial district, and also because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## GENERAL ALLEGATIONS
(Applicable to all Claims for Relief)

8.      Plaintiff is the developer and owner of a "cloud-based" software service which it markets to customers in Colorado and throughout North America under the distinctive "aio" (pronounced "A-O") trademark, used alone and along with multiple suggestive and descriptive terms, including "aioTV," "MYaio," "aioCloud," "aioPro," and "aioBasic."  A copy of Plaintiff's news release announcing the products using these trademarks is attached hereto as Exhibit 1.

9.      Plaintiff's "aioTV" service aggregates multiple sources of video content from a variety of sources such as network and cable television

programming, movies, YouTube®, hulu®, vimeo®, and similar providers of free

video content on the Internet and delivers it via a unified portal, providing wireless

mobile device and personal computer users having an Internet connection with a

unique "television-like" viewing experience.

10. Michael Earle, who is now Plaintiff's CEO, conceived the idea for

"aioTV" in 2009 and financed its early development out of his own funds.

11. When Plaintiff was incorporated, Mr. Earle and others who worked on

the project contributed their rights in the "aio" intellectual property and related

assets to Plaintiff in exchange for shares of the company, and Plaintiff became the

owner of all of the intellectual property associated with the "aio" trademark,

including "aioTV" service.

12. In January 2010 Plaintiff launched its "aioTV" website offering

"aioTV" to the public, began marketing and selling "aioTV" in commerce, and has

been using the "aio" trademark in commerce worldwide since that time.

13. Plaintiff's "aioTV" service has experienced rapid success,

widespread customer acceptance, and public recognition throughout the United

States and Canada; it is widely installed on Apple ™ wireless devices, including

iPhones ™, iPads ™ and iMac ™ personal computers, ANDROID ™ wireless

devices, and IP television including the Google TV ™ platform.

14.    Plaintiff has two distinct customer groups: (a) consumers who subscribe to "aioTV" service to watch IPTV and other video content across multiple devices, and (b) industry customers such as Google TV and competitors of Defendant who pay Plaintiff license fees allowing them to offer the "aioTV" platform to their wireless phone and Internet customers.

15.    With respect to the first group of customers, "aioTV" service has experienced broad acceptance and rapid growth, increasing from approximately 1500 uses in January 2010 to more than 150,000 users today.

16.    With respect to the second customer group, for example, Plaintiff is in advanced stages of negotiations on distribution agreements with competitors of the Defendant in the wireless mobile device service marketplace.

17.    In addition, Plaintiff has a distribution agreement with Google whereby Google offers the "aioTV" service as a preferred service featured with Google TV.™

18.    The Google TV™ platform has shipped to over one million consumers, all of whom have access to "aioTV" upon activation of the TV, and sales of Google TV™ are anticipated to dramatically accelerate in the next year.

19.    Plaintiff's "aio" brand is a strong, inherently distinctive brand in the wireless marketplace or has acquired a secondary meaning among the relevant trade and public as identifying Plaintiff's wireless service.

{JK00487765.1 }

20.    Upon information and belief, Defendant is a wholly owned subsidiary of AT&T Inc., the largest telecommunications service provider in the United States (both mobile and fixed), and the 17th largest company in the world.

21.    Upon information and belief, in late 2012 Defendant, which was formerly known as AT&T Communications America, LLC, changed its name and adopted Plaintiff's "aio" trademark as part of its company name, thereby identifying itself as the source of wireless services bearing that name.

22.    Upon information and belief, Defendant engaged a brand creation company located in Boulder, Colorado to develop a brand name suited for the mission of Defendant.  On further information and belief, the Boulder brand creation company suggested, and defendant adopted, the name "aio".

23.    On May 9, 2013, Defendant published a news release launching its "aio wireless" service, providing no-contract, pre-paid talk, text and data service to wireless device customers, first in Houston, Texas, and Orlando and Tampa, Florida, which was quickly expanded into Jacksonville and Gainesville, Florida, with an announced plan to extend the service throughout the United States over the next year.  A copy of Defendant's news release is attached hereto as Exhibit 2.

24.    Defendant's news release proclaims that "Aio (pronounced 'A-O')" is a brand name that "encapsulates" and uniquely describes its wireless services.

25. Defendant thereby copied and misappropriated, and is willfully infringing, the "aio (pronounced 'A-O')" brand that Plaintiff has been using to distinguish its "aioTV" service since at least 2010.

26. Also, on or about May 9, 2013, Defendant went live with a new website for its "aio wireless" service at www.aiowireless.com, a copy of which is attached hereto as Exhibit 3.

27. The look and feel of Defendant's "aio wireless" website copied the look and feel of Plaintiff's "aioTV" website as it existed up until March 27, 2013, a copy of which is attached hereto as Exhibit 4.

28. Defendant thereby copied and misappropriated, and is willfully infringing, the distinctive "aio" trademark Plaintiff has been using since at least 2010.

29. Defendant's website states that its "aio wireless" service includes "My Aio", "Aio Basic," and "Aio Pro" brands as part of the service.

30. Defendant thereby copied and misappropriated, and is willfully infringing, the "MYaio," "aioBasic," and "aioPro" brands Plaintiff has been using to identify its services since at least January 15, 2010.

31. Defendant markets and sells its "aio" products and services in the same markets, through the same channels of commerce or trade, and to the same relevant customers as Plaintiff's customers.

32.     Defendant's infringing actions and false or misleading descriptions or representations of fact, are likely to cause confusion, and have already caused actual confusion, among actual and potential customers as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff.

33.     For example, on May 10, 2013 Matt Dannehl of Alcatel Lucent sent Mike Earle an e-mail titled "branching out?", including a copy of a portion of the AT&T May 9, 2013 press release and inquiring whether AIO and AT&T were connected. A copy of the e-mail correspondence is attached hereto as Exhibit 5.

34.     In addition, on or about May 14, 2013, one of Defendant's competing prepaid wireless service providers questioned Mike Earle, Plaintiff's CEO, and expressed concern about the apparent affiliation between Plaintiff and Defendant.

35.     Other customers of Plaintiff have expressed similar confusion and concern about whether Plaintiff has been taken over by Defendant or is now affiliated or otherwise somehow connected with Defendant.

36.     Upon information and belief, at least some if not all of those customers would not do business with Plaintiff if it was known to be connected with Defendant or AT&T.

37.   Defendant's press releases and aggressive and pervasive advertising campaign have resulted in identifying itself, rather than Plaintiff, as the authorized source of the "aio" brand in the minds of a large segment of the public.

38.   For example, before May 9, 2013, a search for the term "aio" on the Google Internet search engine displayed Plaintiff's "aioTV" among the top-ranked, first-page search results; however, after May 9, 2013, Defendant's "aio wireless" replaced Plaintiff's "aioTV" as a top-ranked search result and pushed "aioTV" off the first page to a much lower ranking.

39.   Plaintiff's exclusive right to use the "aio" brand in connection with wireless services was well known to Defendant before May 9, 2013.

40.   For example, after Plaintiff began offering its services under the "aio" brand in January 2010, it did an industry launch at the 2010 TelcoTV convention on November 9, 10 and 11, 2010, where Defendant's parent, AT&T had a substantial presence and one of its executives, Steven Wright, was a key note speaker on "IPTV Innovation, Investment, Standards and Interoperability."

41.   Plaintiff also demonstrated its "aioTV" services to Tom Sauer and Jeff Weber of AT&T in 2010, and had ongoing discussions about the service with Tom Sauer in 2010.

{JK00487765.1 }

42.    Plaintiff's executives have presented at industry conferences and shared panels with AT&T executives at industry events from 2010 until the present time, including the Connected TVS Executive Breakfast on April 17, 2012 at the Renaissance Las Vegas Hotel, sponsored by Plaintiff and where GW Shaw, Assistant VP of U-verse, AT&T was featured speaker. A copy of the Connected TVS brochure is attached hereto as Exhibit 6.

43.    At no time has Defendant sought or received permission or license from Plaintiff to use the "aio" trademark.

44.    Accordingly, Defendant's unauthorized use of "aio wireless" can only be explained as a willful and bad faith infringement of Plaintiff's trademark undertaken with the intent to wrongfully appropriate Plaintiff's brand identification and identify Defendant as the authorized source of "aio" wireless services.

45.    Defendant's use of the brand "aio" for wireless service is likely to cause public confusion, and has already resulted in actual confusion, as to the source of "aio" branded services, falsely implies that "aioTV" and "aio wireless" are affiliated, and that "aioTV" approves of or sponsors "aio wireless" services.

46.    Upon noticing Defendant's unauthorized use of Plaintiff's trademark, on May 13, 2013, Plaintiff, acting through its attorney, sent a letter notifying AT&T of its infringement and requesting Defendant to cease such use, a copy of which correspondence is attached hereto as Exhibit 7.

{JK00487765.1 }

47.    In response to that letter, on May 21, 2013, Plaintiff's attorney received a telephone call from Darren Saunders and Linda Goldstein of the New York law firm of Manatt, Phelps, & Phillips, who identified themselves as attorneys for AT&T and said they were conducting a preliminary review of the issues raised in the May 13, 2013 letter.

48.    AT&T's attorneys stated that Defendant had already spent a large sum of money on naming, launch and advertising of "aio wireless" and would not stop using the brand. They suggested that Plaintiff should submit a different proposal to resolve the problem.

49.    On May 30, 2013, Plaintiff's attorney sent a second letter demanding that Defendant cease its use of the "aio" trademark, a copy of which is attached hereto as Exhibit 8.

50.    In response, on June 3, 2013 Plaintiff's attorney received another call from AT&T's attorneys named in paragraph 47 above, who reiterated the position that Defendant would not cease its use of the "aio" brand and said they would take the structure of a proposed business arrangement in settlement of the infringement up the chain at AT&T, but that due to AT&T's size and structure it would take some time before they could respond to Plaintiff's attorney.

51.    Defendant has thus refused to cease its unauthorized use of Plaintiff's trademark, thereby necessitating the present action.

{JK00487765.1 }

11

52.   Plaintiff invested approximately $4,500,000 in the development and launch of its brand, and before Defendant interfered was beginning to reap the rewards of its investment, expanding revenues from $0 at the beginning of 2010 to $1,500,000 today, with projections of over $3 million in revenue for 2013, ramping aggressively to over $15 million in the following 12 months as the "aio" brand and product traction accelerates through sales to customers of Defendant's competitors already either signed or in final stages of contract negotiations.

53.   As a consequence of Defendant's wrongful conduct, Plaintiff has suffered, and will unless that conduct is enjoined by this Court will continue to suffer, great and irreparable loss, damage and injury to its business, reputation and the goodwill value of its "aio" trademark, for which monetary damages alone would not be an adequate remedy

54.   Plaintiff lacks the financial means to conduct the type of multi-million dollar remedial advertising campaign that would be required to counteract and attempt to repair the damage to its business, reputation and the goodwill value of its "aio" trademark that Defendant's wrongful conduct has caused and continues to cause.

## FIRST CLAIM FOR RELIEF
(Violation of Section 43(a) of the Lanham Act)

55.    The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

56.    Plaintiffs "aio" trademark is inherently distinctive or has acquired a secondary meaning among the relevant trade and public as identifying Plaintiff's wireless service.

57.    Defendant's unauthorized use of Plaintiff's "aio" trademark is likely to cause public confusion and deceive customers as to the affiliation, connection, and association of Defendant's services and Plaintiff, and/or as to the origin, or sponsorship, or approval by Plaintiff of Defendant's services.

58.    Defendant's unauthorized use of "aio" in connection with its wireless services constitutes trademark infringement, unfair competition, false designation of origin, and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) and Colorado law.

59.    Defendant's ongoing violations of Section 43(a) of the Lanham Act are committed knowingly, willfully, intentionally, and in bad faith.

60.    By reason of Defendant's acts as described above, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the

value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

61.     Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

62.     Plaintiff is also entitled to a monetary judgment against Defendant awarding Plaintiff compensatory and consequential damages, Defendant's profits, and compensation for a corrective advertising campaign in amounts to be proven at trial, plus attorney fees, costs, and expenses.

## SECOND CLAIM FOR RELIEF
(Unfair Competition under Colorado Law)

63.     The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

64.     Plaintiff's "aio" trademark is inherently distinctive or has acquired a secondary meaning among the relevant trade and public as identifying Plaintiff's wireless product and services.

65.     Defendant's unauthorized use of Plaintiff's "aio" trademark is deceptive and misleading and is likely to cause public confusion and deceive customers as to the affiliation, connection, and association of Defendant's services

and Plaintiff, and/or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff.

66.     Defendant's acts as described above constitute unfair competition under the common law of the State of Colorado.

67.     At all times relevant hereto, Defendant's acts of unfair competition were committed intentionally, willfully, knowingly, maliciously, and with reckless disregard of Plaintiff's rights.

68.     By reason of Defendant's acts as described above, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

69.     Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

70.     Plaintiff is also entitled to judgment against Defendant awarding Plaintiff direct and consequential damages in an amount to be proven at trial, plus attorney fees, costs, and expenses.

## THIRD CLAIM FOR RELIEF
(Trademark Disparagement under Colorado Law)

71.    The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

72.    Plaintiff had established "aio" as a trademark for wireless data, video and IPTV services prior to Defendant appropriating and adopting that brand as its corporate name and advertising and marketing "aio" as its own trademark for wireless services.

73.    In this connection Defendant published the false statements described above to Plaintiff's customers or potential customers, which, coupled with the disparity in size between the companies and the voluminous advertising use of "aio" by Defendant, conveyed the implication that Defendant had the exclusive right to the use of "aio" as a trademark and that Plaintiff was using that trademark illegally.

74.    These false statements could reasonably be understood to cast doubt upon or create confusion about the validity of Plaintiff's "aioTV" trademark and create the appearance of dishonesty and wrongful conduct by Plaintiff.

75.    In publishing these false statements, Defendant acted with malice, intending to vex, injure, intimidate or annoy Plaintiff.

76.    These false statements had an adverse economic effect on Plaintiff's

business and have irreparably harmed its reputation within the trade and with the

public.

77.    By reason of Defendant's misrepresentations, Plaintiff has suffered

and will continue to suffer monetary damages and irreparable harm to the value

and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to

Plaintiff's business, goodwill, reputation, and customer relations.

78.    Plaintiff has no adequate remedy at law, and is entitled to preliminary

and permanent injunctive relief against Defendant, because damages to Plaintiff's

goodwill and reputation are irreparable and difficult to ascertain, and will

irreparably continue unless enjoined by this Court.

79.    Plaintiff is also entitled to judgment against Defendant awarding

Plaintiff direct and consequential damages in an amount to be proven at trial, plus

attorney fees, costs, and expenses.

### FOURTH CLAIM FOR RELIEF
(Violations of Colorado Consumer Protection Act)

80.    The allegations contained in the foregoing paragraphs numbered 1-54

are adopted and incorporated by reference herein.

81.    Defendant's knowing and unauthorized use of Plaintiff's "aio"

trademark, which wholly appropriates it, constitutes a false representation as to the

source, sponsorship, or approval of Defendant's product or service and

Defendant's affiliation, connection, or association with Plaintiff, and Defendant

has thereby engaged, and continues to engage, in deceptive trade practices within

the meaning of C.R.S. § 6-1-105(1)(b) and (c).

82.    These false representations occurred and continue to occur in the

course of Defendant's business.

83.    These false representations significantly impact the public as actual or

potential purchasers of Defendant's goods and services.

84.    At all times relevant hereto, Defendant's deceptive trade practices

were committed intentionally, willfully, knowingly, maliciously, with reckless

disregard of Plaintiff's rights, and in bad faith.

85.    By reason of Defendant's acts as described above, Plaintiff has

suffered and will continue to suffer monetary damages and irreparable harm to the

value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to

Plaintiff's business, goodwill, reputation, and customer relations.

86.    Plaintiff has no adequate remedy at law, and is entitled to preliminary

and permanent injunctive relief against Defendant, because damages to Plaintiff's

goodwill and reputation are irreparable and difficult to ascertain, and will

irreparably continue unless enjoined by this Court.

87.    Plaintiff is also entitled to judgment against Defendant awarding

Plaintiff direct and consequential damages in an amount to be proven at trial and to

be trebled pursuant to C.R.S § 6-1-113(2)(a)(iii), attorney fees pursuant to C.R.S.

6-1-113(2)(b), costs, and expenses.

## FIFTH CLAIM FOR RELIEF
(Unjust Enrichment under Colorado Law)

88.     The allegations contained in the foregoing paragraphs numbered 1-54

are adopted and incorporated by reference herein.

89.     Defendant's use of Plaintiff's "aio" trademark constitutes a benefit

conferred on Defendant by Plaintiff.

90.     Defendant has appreciated or realized the benefit.

91.     Defendant accepted the benefit under circumstances that it would be

inequitable for Defendant to retain the benefit without payment of its value.

92.     Plaintiff is entitled to judgment against Defendant awarding restitution

of the value of the benefit it received, including disgorgement of Defendant's

profits from goods and services sold under the "aio wireless" brand, and awarding

Plaintiff attorney fees, costs, and expenses.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks the following relief against Defendant:

A.     Preliminary and permanent injunctions prohibiting Defendant's use of

the "aio" trademark in connection with advertising and selling wireless goods and

services;

{JK00487765.1 }

B.     Judgment awarding Plaintiff direct and consequential damages in treble the amount proven at trial, plus compensation for a corrective advertising campaign; in addition, Plaintiff reserves the right, to amend this complaint to seek an award of exemplary damages  pursuant to  C.R.S. § 13-21-102(1)(a).

C.     Judgment awarding Plaintiff restitution for the value of the amount of unjust enrichment received by Defendant, including disgorgement of Defendant's profits from goods and services sold under the "aio" brand;

D.     Judgment awarding Plaintiff attorney fees, interest, costs, expenses, and such additional relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable in this action.

s/
Edward T. Lyons, Jr.
Daniel A. Wartell
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600
Fax (303) 573-8133
elyons@joneskeller.com
Attorneys for Plaintiff

STATE OF COLORADO       )
                            ) ss.

CITY & COUNTY OF DENVER      )

     MICHAEL EARLE, being first duly sworn upon his oath, deposes and states: that he is the Chief Executive Officer of Plaintiff aioTV Inc.; that he has read the foregoing Verified Complaint and Jury Demand and knows the contents thereof; and that the facts stated therein are true and correct to the best of his knowledge, information and belief.

                                   Michael Earle

Subscribed and sworn to before me this 11th day of June, 2013

My commission expires: _March 16, 2014_

                                   Notary Public



aiotv   Product   Service Providers   Applications   About Us   Contact Us

Posted on March 21, 2012   — Previous   Next→

# aioTV launches aioCloud and aioPro, enabling Providers to offer a branded OTT experience in 24 hours at no cost

aioTV launches aioCloud and aioPro, enabling Providers to offer a branded OTT experience in 24 hours at no cost

Denver, CO – March 21, 2012 - aioTV announced today the availability of aioCloud, enabling service providers to deliver a branded OTT TV experience on multiple devices in 24 hours with no capital or on-going operational cost. aioTV also announced aioPro, enabling Providers to customize and integrate their licensed content as a logical follow on to aioCloud.

The new offerings enable Providers to immediately offer consumers a branded OTT experience with aioCloud. aioCloud aggregates freely available main stream video and special interest long form Internet video into a compelling consumer experience.

"The challenge for Providers is how to deliver persistent brand loyalty across all platforms in a market where people are consuming Internet video on connected devices and where broadband transport has become an invisible utility judged on price and availability," said Mike Earle, CEO of aioTV Inc. "What we've heard from Providers is they are not getting any credit for carrying Internet video traffic and that they are looking for a economically sound solution". "We challenged ourselves to deliver a branded solution within a day, to address Provider's key questions of where do I start? how do I start? and how do I do it no cost? aioCloud is the answer".

aioPro is the next step from aioCloud, giving access to powerful back office tools allowing Providers to integrate content, customize the experience and tailor the offerings.

Providers can get into the branded OTT market today by going to http://aiocloud.aio.tv to get their own OTT service now.

About aioTV Inc.
aioTV Inc. is the leading OTT cloud video aggregation platform serving customers worldwide. The company's flagship products aioCloud and aioPro are enabling platforms for service providers, consumer electronics manufactures and media companies designed to curate multiple sources of video content into a TV like experience for customers to enjoy on multiple devices. aioTV aggregates long form video content from the web (OTT) and licensed content (VOD, TV Everywhere VOD, even linear channels) into a user experience that looks like TV middleware and runs on iPad, Android tablets, PC, MAC, GoogleTV, iPhone, Android phones, Android set top boxes and Amino set top boxes.

aioTV Inc.
Jim Anderson
720.442.5096
janderson@aio-tv.com | www.aio-tv.com

This entry was posted in News by aio TV. Bookmark the permalink.





© Copyright 2012. All rights reserved. | www.aio-tv.com



| About Us | News | Wireless | Network | Innovation | U-verse | Business | Investor Relations | Site Map | Search |

News Release Archives

## Aio Wireless™ Announces New Nationwide Voice and Data Service

*No-annual-contract wireless provider kicks off new service with launch in first three markets*
**Alpharetta, Georgia, May 09, 2013**

Share:

Today Aio Wireless announced the launch of a new nationwide wireless service for consumers interested in a first-class wireless experience at a value price, without an annual contract. Aio provides new choices, seamless customer experience, and simplified service and offerings to value-conscious customers interested in an unlimited talk/text/data plan with no annual contract.

Aio expects the service to roll out in multiple markets across the U.S. over the next year, with an initial launch today in select stores in Houston, Orlando and Tampa, and with additional stores in these three markets opening in the coming weeks.  Store locations and Aio information will be available at www.aiowireless.com. Aio (pronounced "A-O") is a brand name that encapsulates Aio's brand promise:  simply, delightfully, more.

"We talked with no-annual-contract customers and created our service around what they want. They want simple, easy plan choices with unlimited offers; first-class service at affordable prices; great devices; nationwide voice and data coverage; and no annual contracts. Today's wireless customers don't want to compromise," said Jennifer Van Buskirk, president of Aio Wireless. "We are set up to win over value-conscious customers who are increasingly moving towards smartphones and mobile broadband."

Aio makes prepaid wireless easy for customers with a friendly in-store and on-line experience, three simple rate plans to choose from, and an attractive portfolio of devices that include smartphones, tablets, and feature phones from a variety of manufacturers, including Samsung, Nokia, ZTE and others. Aio's unlimited talk, text, and data rate plans range from $35 to $70 per month, with pricing varying by market, and will offer 4G download speeds of up to 4Mbs per second. Customers will also have the opportunity to bring a compatible, unlocked device for activation on the Aio network.  Aio will delight customers with an attitude of gratitude, easy pre-payment options, and an involvement in the local communities in which we serve.

Aio Wireless is a subsidiary of AT&T Inc. (NYSE:T). AT&T does not expect this announcement to change AT&T's January 2013 financial guidance.

*Aio's plan pricing includes applicable state and local taxes, and fees. Each unlimited plan includes a pre-established amount of high speed data access, and service is subject to Aio's Terms and Conditions of Service and Unreasonable Use Policy. Coverage and services are not available everywhere. Restrictions apply. © 2013 Aio Wireless LLC. All rights reserved. Aio, Aio Wireless and the Aio logo are trademarks of Aio Wireless LLC.*

### About Aio Wireless

Aio Wireless (pronounced A-O) was created for today's value-conscious connected consumers who want it all.  We created a new class of service for individuals who expect a first class wireless service at a value price - one with no-annual contract, friendly service, uncomplicated plans and the mobile phones and tablets you love.  All of Aio's phone plans include unlimited talk, text and data, with taxes and fees included - the price you see is the price you pay. Aio Wireless is a subsidiary of AT&T Inc.  Visit www.aiowireless.com to find out more.

### Cautionary Language Concerning Forward-Looking Statements

*Information set forth in this news release contains financial estimates and other forward-looking statements that are subject to risks and uncertainties, and actual results may differ materially. A discussion of factors that may affect future results is contained in AT&T's filings with the Securities and Exchange Commission. AT&T disclaims any obligation to update or revise statements contained in this news release based on new information or otherwise.*

News Sources

About Us
RSS News Releases
RSS Podcasts
AT&T news

Tags

financial


EXHIBIT
2



EXHIBIT

3



EXHIBIT

4

**From:** Danneil, Matt (Matt) [mailto:matt.danneil@alcatel-lucent.com]
**Sent:** Friday, May 10, 2013 7:39 AM
**To:** Mike Earle; Chuck Correll
**Subject:** branching out ?

**AT&T launches new prepaid service under 'Aio Wireless' brand.**
AT&T Mobility launched a new prepaid brand, Aio Wireless, promising a simplified, no-contract experience and opening up a new front in the prepaid battle with Verizon Wireless, Sprint Nextel and T-Mobile US.
*Fierce Wireless, May 9 2013 5:10PM*

Mike and Chuck
I am assuming this is not connected to AIO and AT&T somehow has copied your name, but with adding "wireless" avoids a lawsuit ?

Hope everything is going well and I hope to wrap up a new path I am pursuing within the next couple weeks and we can touch base on prospects.

Thanks,
Matt.



EXHIBIT

5



**FIERCEONLINEVIDEO PRESENTS**

*executive breakfast*

# CONNECTED TVs:
## OPPORTUNITY & UNANSWERED QUESTIONS ABOUT THE FUTURE

**04.17.12 | 7:00 – 8:45 AM | RENAISSANCE LAS VEGAS HOTEL**

## SPEAKERS


**Don Loheide,** VP Advanced Video, Turner Broadcasting


**Hardie Tankersley,** VP Innovation, Fox Broadcasting


**Irv Katlick,** Principal, Business Development Group, Google TV


**Christy King,** VP Digital Technology Research & Development, Ultimate Fighting Championship


**GW Shaw,** Assistant VP of U-verse, AT&T


**Alex Blum,** Chief Operating Officer, KIT Digital


**Jim O'Neill,** Editor, FierceOnlineVideo

Connected TVs will provide service providers, advertisers and content owners deeper analytics that those that are available now. They've helped to create a new outlet for developers whose apps are finding easier entry into consumers' homes through the television set.

And, as this year's CES demonstrated, they look to be one of the hottest CE devices coming to market. In fact, new research from The Diffusion Group suggests that 78 percent of new TV buyers are likely to purchase connected TVs.

FierceOnlineVideo Editor, Jim O'Neill hosted an exclusive executive breakfast at NAB and sat down with top industry executives from Turner Broadcasting, Fox Broadcasting, Google TV, UFC, AT&T, and KIT Digital to discuss the questions that have been left unanswered. Some of the topics discussed include:

- Will there be set-top boxes in the future?
- Will content go directly to consumers over the top, relegating service providers to the role of big pipes? Or will SPs find a way to maintain their customer relationship?
- Will sports programming, which has been a fatted cow for service providers and broadcasters alike, join the revolution and deliver their product directly to viewers for a fee?
- Will CE manufacturers, content owners or some other segment benefit the most from the estimated 138 million connected TVs expected to ship in 2015?

The unique format of the event provided attendees with an opportunity chance to hear what top industry executives really had to say in an uncensored environment.

If you are interested in future Fierce events, please check our website.

## SPONSORED BY

*Gold Sponsor*

 **kit digital**

*Silver Sponsors*



 **NDS**

## HOSTED BY

   

**FierceVIDEO ONLINE**
THE WORLD OF ONLINE VIDEO




**EXHIBIT 6**

# JONES KELLER
—— A T T O R N E Y S   A T   L A W ——

BRAD H. HAMILTON                                    BHAMILTON@JONESKELLER.COM

May 13, 2013

AT&T Intellectual Property II, L.P.
645 East Plumb Lane
Reno, Nevada 89502

C/O

David J. Cho
AT&T Services, Inc.
208 S. Akard St.
Dallas, TX 75202-4206

Via Email: david.cho@att.com

Dear Mr. Cho:

Re: aioTV Inc.'s "AIO" Trademarks

We represent aioTV, Inc. (**"AIO"**) owner of the "aio", "aioTV," "aio pro," "aio basic,"
"aio cloud," and related trademarks and service marks. AIO has been conducting business
throughout North America using the "aio", "aioTV", "MYaio" and similar marks since at least
early 2010, in the IPTV and wireless data business.

A few days ago, AT&T launched "aio wireless", using the "aio" mark in a confusingly
similar line of business, and in a manner that is clearly confusing to AIO's brand and trademark
rights. AT&T is well aware of my client's "aio" mark. AIO began offering its services under the
"aio" brand in early 2010, and did an industry launch at the 2010 TelcoTV convention, where
AT&T had a substantial presence and Steven Wright, Chair, IPTV Interoperability Forum ATIS,
AT&T Network Architecture was a key note speaker on "IPTV Innovation, Investment,
Standards and Interoperability." AIO demonstrated its services to Tom Sauer and Jeff Weber of
AT&T in 2010, and had ongoing discussions with Tom Sauer in 2010. AIO executives have
shared panels with AT&T executives at various industry events such as TelcoTV.

AIO's brand and service offerings have ranked high on the first page of Google® and
other Internet search engines for two years; prior to AT&T's "aio wireless" launch, an Internet
search for "aio" always returned my client as the top result. I assume that AT&T conducted a
trademark search through Thomson Reuters or another service before filing USPTO applications
Nos. 85773612, 85738188, 85718159, & 85773608 for various "aio" marks, which would have
notified you of AIO's rights in the "aio" marks.

---

JONES & KELLER, P.C.   1999 BROADWAY, SUITE 3150   DENVER, COLORAD
P: 303 573 1600   F: 303 573 8133   WWW.JONESKELLER.COM

**EXHIBIT**
7

AT&T/David Cho
May 13, 2013
Page 2 of 2

Moreover, AT&T has launched a website at www.aiowireless.com that copies the look and feel of AIO's website (prior to a recent change). See Attachment 1.

AT&T has also launched "My AIO," while AIO has been using the "MYaio" mark for a couple of years. See Attachment 2. It appears that AT&T is also launching a number of services under the "aio" brand "Aio Pro," "Aio Smart," and "Aio Basic." My client already uses "aioTV," "aioCLOUD," "aioPRO," and "aioBASIC." See Attachment 3. Naturally, this will cause severe consumer confusion.

Since our clients are sophisticated and represented by counsel I will dispense with the usual case and statute citations and other "cease and desist" form-letter demands. However, it is probably a requirement that I request, on behalf of aioTV Inc., that AT&T cease and desist any further use of the "aio" mark, and notify you that AT&T's use of the identical trademark in connection with nearly the same goods and services that are offered by AIO under its "aio" marks constitutes trademark infringement, false designation of origin, and unfair competition in violation of the federal Trademark Act of 1946 (Lanham Act), 15 U.S.C. Section 1051 et seq.

I suggest AT&T counsel contact the undersigned as soon as possible so that we can understand AT&T's thinking on these marks, and see if this matter can be resolved.

Sincerely,

JONES & KELLER, P.C.

Brad H. Hamilton

Brad H. Hamilton

JONES KELLER

**ATTACHMENT 1**





**ATTACHMENT 2**





**ATTACHMENT 3**





Death of the Call Center – 7 Ways Call Center Managers Can Control Their Fate.



## Aio Wireless

Home     Products & Services     Insights

120 followers   ✓ Following

**How You're Connected**




6   second-degree connections

31   Employees on LinkedIn

See all »

**Products And Services**

**Aio Smart**
Gotta share everything? Here's more-than-enough high speed data that lets you...

See all »



SEE 403(b) BEST PRACTICES IN OUR BENCHMARKING REPORT.



A New Way to Wireless

**Recent Updates**

Aio Wireless added a new product: Aio Pro

2 days ago

Aio Wireless added a new product: Aio Smart

2 days ago

Aio Wireless added a new service: Aio Basic

2 days ago

Aio Wireless Say hello to Aio! A new way to wireless. www.aiowireless.com




# JONES KELLER
### ──── A T T O R N E Y S   A T   L A W ────

BRAD H. HAMILTON                                                   BHAMILTON@JONESKELLER.COM

May 30, 2013

Darren Saunders
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036

Via Email: dsaunders@manatt.com

Dear Mr. Saunders:

        Re: aioTV Inc.'s "AIO" Trademarks

        Further to our telephone conversation last week and your voice message last Friday, our client, aioTV, Inc. ("**AIO**") has asked me to provide the following.

        After AT&T's launch of "aio wireless" on May 9, 2013, and after my letter to AT&T dated May 13, 2013, AT&T has commenced and is continuing a very aggressive, well-funded and comprehensive brand marketing campaign surrounding the "aio" mark. The campaign includes aggressive social media brand marketing, primarily focused on the "aio" mark; for example, your client has been very aggressively feeding Twitter using not only the name "aio wireless", but also "aio" alone, as in:

        "We are delighted to announce iPhone is available from **Aio** with no annual contract. http://ow.ly/l22ci  #HelloAio."

        and



**Aio Wireless**
How do you #Aio? We'll leave that up to you. #HelloAio



**Aio Wireless**
Who's been to their local #Aio store? We want to hear from you!



**Aio Wireless**
When we say A, you say #Aio, A!



EXHIBIT
8

Darren Saunders/ AT&T
May 30, 2013
Page 2 of 5

These are just a few examples. Your client is conducting similar activities on facebook, Instagram, Spotify and other social media. I have also attached photographs of the aio wireless physical stores. It is clear that your client is aggressively branding the word "aio" and "hello aio."

As a result of AT&T's campaign, our client's mark no longer appears prominently in searches for "aio" on Twitter or popular Internet search engines, a position it had enjoyed for several years. In the 15-days since I notified AT&T of its infringement of our client's marks, AT&T's branding campaign has nearly obliterated our client's goodwill and reputation in its "aio" mark. Rather than taking a short pause to assess my client's claims, AT&T has pressed ahead with its branding, indifferent to confusion with my client's marks, and increasingly destroying our client's ability to make effective use of its trademark to identify its service or its company. AT&T has engaged in this course of action despite knowing of my client's "aio" mark for more than two years.

In our phone conversation last week you inquired whether our client might have a proposal to settle this matter. As our client is not the infringing party, it is incumbent upon us to notify you that AT&T's use of the "aio" mark constitutes trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act and my client's common law rights.

While our client is prepared to take aggressive action in connection with AT&T's unauthorized use of the "aio" mark, we are writing in an effort to resolve this matter by seeking AT&T's assurance that it will *immediately* cease and desist from using "aio", or anything confusingly similar thereto, as a trademark, service mark or trade name in connection with the sale and/or service of wireless devices.

If AT&T has any proposals or suggestions for settling this matter in a different manner, please communicate them to me as soon as possible; unfortunately, AT&T's actions have already virtually destroyed my client's mark, so usual remedial actions would have no value.

Sincerely,

JONES & KELLER, P.C.

Brad H. Hamilton

JONES  KELLER

Darren Saunders/ AT&T
May 30, 2013
Page **3** of **5**



JONES  KELLER

Darren Saunders/ AT&T
May 30, 2013
Page **4** of **5**



JONES  KELLER

Darren Saunders/ AT&T
May 30, 2013
Page **5** of 5



JONES  KELLER

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | |
|---|---|
| aioTV Inc. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| Aio Wireless, LLC | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Aio Wireless, LLC
1025 Lenox Park Blvd NE
Atlanta, GA 30319

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   aioTV, Inc.
c/o Edward T. Lyons, Jr., Esq.
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____06/11/2013_____          _____
                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏  I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏  I returned the summons unexecuted because _____ ; or

❏  Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44   (Rev. 12/11)   District of Colorado Form

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
aioTV Inc.

**DEFENDANTS**
AIO Wireless, LLC

**(b)** County of Residence of First Listed Plaintiff Arapahoe County, Colorado
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Fulton County Georgia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Edward T. Lyons, Jr.; Daniel A. Wartell; Aaron D. Goldhamer
Jones & Keller, P.C., 1999 Broadway, Suite 3150, Denver, CO 80202
(303) 573-1600

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Med. Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [X] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS - Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district *(specify)*
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Lanham Act, 15 U.S.C. § 1025(a)

Brief description of cause:   [ ] AP Docket
Trademark Infringement, Unfair Competition and related claims

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes  [ ] No

DATE
June 11, 2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

JS 44 Reverse (Rev. 12/11) District of Colorado Form
## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44
Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows.

I.     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

       **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

       **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment noting, noting in this section "(see attachment)".

II.    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional** statutes unless diversity.

|  |  |
|---|---|
| **Example:** | **U.S. Civil Statute: 47 USC 553** |
| **Brief Description:** | **Unauthorized reception of cable service** |
| **Or:** | **"AP Docket"** |

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.