UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AT&T INTELLECTUAL PROPERTY II, L.P., and AIO WIRELESS LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:13-cv-1901-JOF |
| v. | ) ) ) | |
| AIOTV INC. | ) ) | |
| Defendant. | ) ) | |

---

**DEFENDANT AIOTV INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2) and (b)(3)
OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)**

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................... iii

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ..................... 1

II.  RELEVANT UNDERLYING FACTS AND PROCEDURAL HISTORY .. 3

    A.  The Parties ......................................................................... 3

    B.  Absence of Contact Between Defendant and the State of
        Georgia ............................................................................. 4

    C.  Events Leading up to Litigation ....................................... 6

III.  ANALYSIS ................................................................................. 9

    A.  This Court Lacks Personal Jurisdiction Over AIO ........... 9

        1.  AT&T's Burden to Allege *Prima Facie* Case of
            Jurisdiction ........................................................... 9

        2.  Two-Step Jurisdictional Analysis ......................... 11

        3.  This Court Lacks Personal Jurisdiction over AIO
            Under the Georgia Long-Arm Statute ................... 12

        4.  Due Process Does Not Permit this Court to Exercise
            Personal Jurisdiction over AIO ............................ 15

            a.  General Jurisdiction is Absent ..................... 16

            b.  Specific Jurisdiction is Absent ..................... 18

i

        c.     Other Fairness Factors Warrant Dismissal .................... 19

   B.   Venue is Improper in Georgia ........................................ 21

   C.   Regardless of whether the Court has Personal Jurisdiction and whether Venue is Proper, the Court Should Exercise its Discretion and Transfer Venue to the District of Colorado .................... 21

IV.   CONCLUSION .................................................................. 25

CERTIFICATE OF COMPLIANCE ............................................ 26

CERTIFICATE OF SERVICE .................................................... 27

ATTACHMENT 1 – Declaration of Michael Earle

ATTACHMENT 2 – Declaration of Brad H. Hamilton

ATTACHMENT 3 – Verified Complaint, filed in U.S. Dist. Ct. Colo.

ATTACHMENT 4 -  Notice of Motion and Motion to Stay, Dismiss or, in the Alternative, Transfer Case, filed in U.S. Dist. Ct. Colo.

ATTACHMENT 5 – E-mails between Counsel

ATTACHMENT 6 – Unreported Decisions

ii

# TABLE OF AUTHORITIES

**Page**

### CASES

*Askue v. Aurora Corp. of America*,
2012 WL 843939 (N.D. Ga. 2012) .................................... 11, 14, 15

*Barton S. Co., Inc. v. Manhole Barrier Sys., Inc.*,
318 F.Supp.2d 1174 (N.D. Ga. 2004) ................................ 14

*Bayer Cropsciene, LP v. Booth*,
2005 WL 2138759 (M.D. Ga. 2005) ................................. 24

*Bond v. Ivy Tech State Coll.*,
167 F. App'x 103 (11th Cir. 2006) .................................. 14

*Bond v. Octagon Process, Inc.*,
745 F. Supp. 710 (M.D. Ga. 1990) ................................. 11

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ................................... passim

*Essex Group, Inc. v. Cobra Wire & Cable, Inc.*,
100 F.Supp. 2d 912 (N.D. Ind. 2000) .............................. 23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
__U.S.___, 131 S.Ct. 2846 (2011) ................................ 17

*Hanson v. Denckla*,
357 U.S. 235 (1958) ........................................... 10-11

*Imageline, Inc. v. Fotolia LLC*,
663 F.Supp.2d 1367 (N.D. Ga. 2009) ............................. 15, 16, 17, 18

iii

*Jordan Outdoor Enter., Ltd. v. That 70's Store, LLC,*
    819 F.Supp.2d 1338 (M.D. Ga. 2011) .................................................. 13, 14

*Kapordelis v. Danzig,*
    387 F. App'x 905 (11th Cir. 2010) ....................................................... 21

*Kravec v. Chicago Pneumatic Tool Co.,*
    579 F. Supp. 619 (N.D. Ga. 1983) ....................................................... 22

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ............................................................................. 22

*Schütz Cont. Sys., Inc. v. Mauser Corp.,*
    2010 WL 5087865 (N.D. Ga. 2010) .................................................... 17

*Soroka v. Lee Tech. Svcs., Inc.,*
    2006 WL 1734277 (N.D. Ga. 2006) .................................................... 23

*Tazoe v. Airbus S.A.S.,*
    631 F.3d 1321 (11th Cir. 2011) ........................................................... 22

*Tempco Elec. Heater Corp. v. Omega Eng., Inc.,*
    819 F.2d 746 (7th Cir. 1987) ............................................................... 24

*Thomas v. Strange Eng'g, Inc.,*
    2012 WL 993244 (S.D. Ga. 2012) ....................................................... 20

*Trading Tech. Int'l, Inc. v. CQG, Inc.,*
    2005 WL 3601936 (N.D. Il. 2005) ....................................................... 24

*Ven-Fuel, Inc. v. Dep't of the Treasury,*
    673 F.2d 1194 (11th Cir. 1982) ........................................................... 23

*Virgin Health Corp. v. Virgin Enter., Ltd.,*
    393 Fed.Appx. 623 (11th Cir. 2010) .................................................... 19

iv

*Web.com, Inc. v. Go Daddy Group, Inc.*,
   2007 WL 7035105 (N.D. Ga. 2007) ................................................... 17


## STATUTES

28 U.S.C. § 1391 (b) ............................................................... 2, 21

28 U.S.C. § 1391 (c) ................................................................. 21

28 U.S.C. § 1404(a) .............................................................. passim

28 U.S.C. § 1406(a) ........................................................ 20, 21, 25

28 U.S.C. § 2201 ..................................................................... 2

O.C.G.A. § 9-10-91 .................................................................. 11

O.C.G.A. § 9-10-91(1) .............................................................. 12


## RULES

F.R.C.P. 12(b)(2) ............................................................... 20, 25

F.R.C.P. 12(b)(3) ............................................................... 21, 25

F.R.C.P. 12(g) ..................................................................... 21

F.R.C.P. 12(h) ..................................................................... 21

v

vi

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This declaratory judgment action arises out of Plaintiffs AT&T Intellectual Property II, L.P. and Aio Wireless LLC's (collectively "AT&T") infringement and unlawful use of the "Aio" trademarks belonging to Defendant aioTV Inc. ("AIO"), a nonresident Colorado corporation.  AT&T filed this declaratory judgment action in anticipation of, and in order to frustrate by disingenuous use of the "first-filed" rule, AIO's pursuit of claims in the United States District Court for the District of Colorado where AIO has filed a pending suit.

The first-filed rule avails AT&T naught.  First, it presupposes the existence of overlapping actions in two courts having *concurrent jurisdiction* over the parties *and* in which venue could lie.  Neither condition is met here.  This Court lacks personal jurisdiction over AIO and, even if jurisdiction could be had, venue is improper.  Second, the first-filed rule yields to several exceptions, such as where an anticipatory declaratory judgment action is filed like the case at bar.

As to the crucial requirement of personal jurisdiction, AT&T's Complaint fails to allege any facts to establish a meaningful connection between this action, AIO's business activities, and the State of Georgia.  The facts now before the Court establish that AIO does not transact any business in the State of Georgia, has no offices or employees here, and directs no activity towards this State—related to

1

this case or otherwise—to create sufficient contact or connection with Georgia for purposes of establishing personal jurisdiction under either Georgia's long-arm statute or the Constitutional requirements of Due Process.

Further, venue is improper pursuant to 28 U.S.C. § 1391(b). AIO does not reside in Georgia and no substantial part of the events or omissions giving rise to AT&T's claim for declaratory judgment occurred here. AT&T does not allege, nor can they prove, any meaningful connection between AT&T's claims and any contact of AIO with the State of Georgia.

Lastly, even if the Court were to determine that it has personal jurisdiction over AIO and that venue is proper, the Court should exercise its discretion to transfer this action to the District of Colorado pursuant to 28 U.S.C. § 1404(a). This case falls within a well-settled exception to the "first filed rule" where a declaratory judgment action is filed in anticipation of a lawsuit and is designed to frustrate the natural plaintiff's (AIO's) ability to select the forum. Moreover, this Court has discretion to not hear this declaratory relief case, particularly where a parallel action—like the one AIO has filed in Colorado—will completely adjudicate the parties' dispute.[1] Furthermore, for the convenience of witnesses and

---

[1] *See* 28 U.S.C. § 2201 (district court "may" but is not required to hear declaratory judgment action).

2

the sake of judicial economy, it simply makes more sense for the District of Colorado to entertain this action which involves key Colorado witnesses, evidence located in Colorado, and numerous claims arising under Colorado substantive law.

## II.    RELEVANT UNDERLYING FACTS AND PROCEDURAL HISTORY

### A.    The Parties.

AIO resides and is incorporated in Colorado.  Attachment 1 (Declaration of Michael Earle ("Earle Dec.")) ¶ 4.  All of its business activities within the United States are conducted from, and by personnel based within, Colorado.  *Id.* ¶ 7.

AIO provides a "cloud-based" service that streams video content to its subscribers' wireless mobile devices and personal computers.  *Id.* ¶ 5.  AIO offers this service under the distinctive "aio" (pronounced "A-O") trademark, used alone and along with multiple suggestive and descriptive terms including "aioTV" "Myaio," "aioCloud," "aioPro," and "aioBasic."  *Id.* ¶ 6.

Plaintiff AT&T Intellectual Property II, L.P. is a Nevada limited liability partnership and Plaintiff Aio Wireless LLC is a Delaware limited liability company with corporate offices in Georgia.  Pl. Compl. ¶ ¶ 3, 5.

The AT&T Plaintiffs are not consumers of AIO's products or services, nor does AIO have any contractual relationship with them.  Earle Dec. ¶ 16.  AT&T

does not allege that they or any other resident of Georgia has ever transacted business with or been injured in any way by AIO.

AT&T launched its new "aio wireless" service on May 9, 2013.  Pl. Compl. ¶ 16.  They decided to use the "aio" brand after hiring a "brand creation company" to develop a brand name.  *Id.* ¶ 14.  On information and belief, this brand creation company is located in Boulder, Colorado, and managed by an individual who is also the head of public relations and communications for Plaintiff Aio Wireless.  Earle Dec. ¶19.  At the time AT&T began to use "aio" to identify itself and its services, AIO had been using the "aio" trademark throughout the United States, and worldwide, for more than three years.  *Id.* ¶ 6.

**B.**     **Absence of Contact Between Defendant and the State of Georgia.**

AIO has no substantial, continuous, and systematic contacts with the State of Georgia, and has not purposely availed itself of the privilege of conducting business in this State; nor did a substantial part of the events giving rise to AT&T's claims occur in Georgia.  Earle Dec. ¶¶ 3, 8.

AIO has never had an office or other place of business within the State of Georgia, never had an employee or agent residing in Georgia, never owned real or personal property situated within Georgia, never negotiated or entered into a contract within Georgia, never had a bank account or paid taxes in Georgia, never

4

received revenues from a bank account or other payment source within Georgia, and has never been licensed, authorized, or registered to do business, or appointed an agent for the service of process, in Georgia. Earle Dec. ¶ 8. AIO does not direct marketing or advertising campaigns towards Georgia, does not advertise in Georgia, and has never presented any exhibits or demonstrations at a trade show in Georgia. *Id.* ¶¶ 10-11.

AIO has two distinct types of customers: (a) consumers who subscribe to an "aioTV" service to watch video content across multiple devices, and (b) industry customers (like Google TV) who pay AIO license fees allowing them to offer the "aioTV" platform to their customers. Earle Dec. ¶ 9. As to the first class of customers, anyone in the world who has access to the internet may log on to AIO'S website (www.aio.tv) and download "aioTV." This is a free, no-contract service for the individual user. The only revenue AIO derives from providing this service comes from third-party advertisers who pay AIO so that their ads can appear on and be accessed by users of aioTV. *Id.* ¶ 12.

As to the second class of customers, which are independent companies that pay AIO license fees to offer aioTV to their own customers, AIO currently has distribution agreements with seven such customers in the United States. None of these companies has a principal place of business in Georgia, and none of those

agreements was negotiated or entered into in Georgia.  Earle Dec. ¶ 14.  AIO has

no knowledge or control over where, or in what states, these independent

companies market and sell their products and services.  *Id.* ¶ 15.

To proceed with the present case in Georgia would be extremely

inconvenient and burdensome to AIO and its key employees and witnesses.  Earle

Dec. ¶ 18.  Further, most of the relevant documents—including those presumably

in the possession of the brand creation company that AT&T used—are located in

Colorado.  *Id.* ¶ 20.  Taking into account the relative means of the parties, it should

be much less inconvenient for AT&T—who unquestionably have a worldwide

presence and most of whose counsel of record are not even located in Georgia— to

litigate in Colorado than it would be for Defendant to litigate in Georgia.  *Id.* ¶ 21.[2]

## C.    Events Leading up to Litigation.

On May 9, 2013, AT&T published a news release launching its "aio

wireless" service in Texas and Florida with an announced plan to extend the

service nationwide over the next year, and went live with a new website

(www.aiowireless.com) for its "aio wireless" service.  Attachment 2 (Declaration

---

[2] AIO is currently projected to generate gross revenues of approximately $1.5
Million during 2013.  Plaintiffs are part of the AT&T Inc. conglomerate which,
upon information and belief, is the 17th largest company in the world whose most
recent reported annual gross revenues exceeded $127 Billion.  Earle Dec. ¶ 21.

of Brad H. Hamilton ("Hamilton Dec.")) ¶ 5.

On May 13, 2013—acting through its attorney in Denver, Colorado—AIO sent a letter to AT&T's attorney in Texas, notifying AT&T that it was infringing AIO's trademarks and demanding it cease and desist from the same.  Hamilton Dec. ¶ 6.  By May 15, 2013, AIO's attorneys had already begun the process of preparing a verified complaint to be filed in Colorado.  *Id.* ¶¶ 8-9.

On May 21, 2013, AIO's counsel received a call from AT&T's counsel in New York City concerning the May 13 letter, the nature of the dispute, and possibilities of settlement to avoid litigation.  Hamilton Dec. ¶¶ 10-13.

By May 24, 2013, AIO's counsel had prepared a draft verified complaint against Aio Wireless.  Hamilton Dec. ¶¶ 14-15.  On May 30, 2013, AIO, through counsel in Colorado, sent a second "cease and desist" letter to AT&T's counsel as a result of AT&T's continued, and even more aggressive, branding and advertising activity involving the "aio" trademark  *Id.* ¶ 16.

On June 3, 2013, AIO's counsel received a second call from AT&T's New York counsel concerning what had occasioned the more strongly worded May 30th letter, and whether AIO had something in mind that might serve as a basis for settlement.  Hamilton Dec. ¶¶ 17, 19.  In response, AIO's counsel described, in general terms, an arrangement that might serve as a basis for settlement.  *Id.* ¶ 20.

7

Counsel for AT&T said they were very interested in considering this settlement proposal, but cautioned that AT&T was a big organization and it would take time to run the proposal through the chain of command before they could respond. *Id.* ¶ 23. In the meantime, AT&T's counsel asked for assurance that if AIO was not willing to wait and intended to file a lawsuit, counsel for AIO would notify them first. AIO's counsel agreed he would do so. *Id.* ¶ 24.

Based on that telephone call, counsel for AIO understood that the parties had agreed to an informal standstill arrangement whereby AIO would delay filing suit in order to give AT&T time to consider the settlement proposal that had been discussed. Hamilton Dec. ¶ 25. With this understanding, AIO delayed filing suit despite being ready to do so. *Id.* ¶ 26; Earle Dec. ¶ 22.

Three days later, on June 6, 2013, AT&T filed the instant declaratory judgment action. This timing suggests AT&T's attorneys were preparing AT&T's Complaint while they simultaneously induced AIO to delay filing suit. On June 11, 2013, AIO filed the verified complaint that it had ready to go for some time in the United States District Court for the District of Colorado alleging claims under Section 43(a) of the Lanham Act, and for unfair competition, trademark disparagement, deceptive trade practices, and unjust enrichment under Colorado

8

Law. A true and correct copy of AIO's Verified Complaint in the Colorado action, Case No. 13-cv-01493-PAB-KLM, is contained in Attachment 3 to this brief.

On June 17, 2013, AT&T filed a motion in the Colorado court to stay, dismiss or, in the alternative, transfer that case to this Court pursuant to the "first-filed" rule. See Attachment 4 to this brief. Counsel for AIO have advised AT&T's counsel that they will not oppose, and will stipulate to, a temporary stay of the Colorado case to allow this Court to determine the jurisdictional, venue, and *forum non conveniens* issues raised here. See Attachment 5 (e-mails between counsel).

## III. ANALYSIS

### A. This Court Lacks Personal Jurisdiction Over AIO.

#### 1. AT&T's Burden to Allege *Prima Facie* Case of Jurisdiction.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). Where a defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Diamond Crystal*, 593 F.3d at 1257.

9

Here, AT&T's Complaint states only conclusory allegations concerning personal jurisdiction, as follows:

> This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant has substantial, continuous, and systemic [sic] contacts with the State of Georgia.  Upon information and belief, Defendant conducts business in the State of Georgia, by making its content and streaming services, <u>which are provided through third parties</u> to consumers, available in the State of Georgia.  By virtue of these actions, Defendant has purposefully availed itself of the privilege of conducting business in this State.

Pl. Compl. ¶ 10 (emphasis added).

Of these allegations, only the second sentence purports to allege a possible fact supporting personal jurisdiction; the remaining allegations merely state conclusions without any independent factual support.  However, the theory upon which AT&T relies—that would impute the activities of "third parties" to AIO—is insufficient as a matter of law to allow a court in Georgia to exercise jurisdiction over AIO.  Independent companies, such as GoogleTV, do in fact pay AIO a license fee to install "aioTV" on their own product and then sell that product to consumers.  Earle Dec. ¶ 9.  However, AIO has no knowledge or control over where these independent companies market their products and services.  *Id.* ¶ 15.  Thus, as the Supreme Court has instructed,

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with

10

the forum State. . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253 (1958), *reh'g denied,* 358 U.S. 858.[3]

None of AT&T's allegations, on their face, meets this minimum requirement of establishing a jurisdictional contact between AIO and the State of Georgia. Thus, as is more fully discussed below, AT&T's Complaint fails to make out even a *prima facie* case for jurisdiction.

### 2.    Two-Step Jurisdictional Analysis.

This Court must undertake a two-step inquiry to determine whether personal jurisdiction exists.  First, the Court must determine whether jurisdiction is authorized under Georgia's long-arm statute, § 9-10-91, O.C.G.A.  Second, the Court's exercise of jurisdiction "must . . . not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *Diamond Crystal,* 593 F.3d at 1257-58.  This two-step inquiry is necessary because the reach of Georgia's long-arm statute is not "coextensive with procedural due process."  *Id.; accord*

---

[3] *See also Bond v. Octagon Process, Inc.*, 745 F. Supp. 710, 712 (M.D. Ga. 1990), *aff'd* 926 F.2d 1573 (11th Cir. 1991) (even under the then-more-expansive reading of Georgia long-arm statute—*see Diamond Crystal*, 593 F.3d at 1259—where defendant shipped a "product to an independent distributor who then controlled where it was ultimately sent," that "does not qualify" as a transaction with or in the forum).

11

*Askue v. Aurora Corp. of America*, 2012 WL 843939 *2 (N.D. Ga. 2012).[4]  Rather, "the long-arm statute must be read literally.  It imposes independent obligations that [AT&T] must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."  *Diamond Crystal*, 593 F.3d at 1249.

### 3. This Court Lacks Personal Jurisdiction over AIO Under the Georgia Long-Arm Statute.

As applicable here, the Georgia long-arm statute permits the exercise of personal jurisdiction over a nonresident who "transacts any business within [Georgia]."  O.C.G.A. § 9-10-91(1).[5]

To satisfy the "transacts any business" requirement, the defendant must have "purposefully done some act or consummated some transaction in [Georgia]."  *Diamond Crystal*, 593 F.3d at 1264 (quoting *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737) (Ga. App. 2006)).

AIO's only arguable connection to Georgia is its website.  The website advertises and provides information about AIO's services, and provides a download link for a free copy of "aioTV" for personal use.  This does not amount

---

[4]  *See* Attachment 6 for unreported cases cited in this brief.
[5]  Plaintiffs do not allege any tortious acts or omissions by AIO either inside or outside the State of Georgia that would give rise to jurisdiction under any provision other than § 9-10-91(1).

12

to "literally transacting business within Georgia[,]" and does not suffice to confer long-arm jurisdiction. *Diamond Crystal*, 593 F.3d at 1261.

In *Jordan Outdoor Enter., Ltd. v. That 70's Store, LLC*, 819 F. Supp.2d 1338 (M.D. Ga. 2011), the court examined a similar situation where a nonresident defendant's only alleged contact with Georgia was through its website. In *Jordan*, the court noted that the defendant was not licensed to do business in Georgia, did not have an agent for service of process in Georgia, had no offices, employees, real or personal property, records, or assets in Georgia, and that the defendant's website had not generated any sales in Georgia. *Id.* at 1340-41. The only evidence of any contact between the defendant and Georgia was that some Georgia residents had accessed the website. *Id.*

In evaluating the question of personal jurisdiction, the *Jordan* court did not even get past the first prong of its jurisdictional analysis before concluding that jurisdiction was absent under the Georgia long-arm statute. Quoting *Diamond Crystal* for the proposition that the "transacts any business" section of the long-arm statute "expressly depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state," the *Jordan* court concluded that evidence of such contact was absent and, therefore, personal jurisdiction did not exist. *Id.* at 1342-44. Rejecting the argument that

13

evidence of a Georgia resident accessing defendant's website was sufficient to

confer jurisdiction, the *Jordan* court explained its rationale as follows:

> The Court finds that this evidence does not support a finding that Defendants transacted business in Georgia sufficient to meet the requirements of the Georgia long-arm statute. Defendants operated websites that are accessible everywhere and not specifically in Georgia. The websites do not target Georgia residents. The websites failed to generate any business for Defendants in Georgia. Defendants did not sell any products to Georgia residents through the internet or otherwise. Defendants did not ship any products to Georgia. The record fails to reveal any 'intangible' conduct by Defendants in Georgia. Defendants have not corresponded via email, mail, or telephone with Georgia residents. The Court cannot conclude that merely operating a website accessible in Georgia, and everywhere else, constitutes 'the actual transaction of business—the doing of some act or consummation of some transaction—by the [Defendants] *in the state.*'

*Id.* at 1343-44 (italics in original; internal citation omitted); *see also Barton S. Co.,*

*Inc. v. Manhole Barrier Sys., Inc.*, 318 F. Supp.2d 1174, 1177-78 (N.D. Ga. 2004)

(mere presence of website accessible by residents of Georgia insufficient to

support long-arm jurisdiction over nonresident defendant); *Bond v. Ivy Tech State*

*Coll.*, 167 F. App'x 103, 106 (11th Cir. 2006) (deeming website contact with

Florida "insubstantial" and unable to support long-arm statute jurisdiction under

analogous Florida law and collecting similar rulings from other Federal Circuits);

*Askue*, 2012 WL 843939 *3 (where unrebutted affidavit demonstrated lack of

14

business dealings in Georgia and lack of control over third party distributors,

plaintiff could not demonstrate long-arm jurisdiction).

Because AIO does not transact any business in Georgia—through its website

or otherwise—the Court should conclude that it lacks jurisdiction under the

Georgia long-arm statute and dismiss or transfer the case accordingly.

### 4. Due Process Does Not Permit this Court to Exercise Personal Jurisdiction over AIO.

Even if the Court were to conclude that AIO does transact business in

Georgia within the meaning of section 9-10-91(1), the exercise of personal

jurisdiction over AIO must still satisfy due process such that "maintenance of the

suit does not offend traditional notions of fair play and substantial justice." *Askue*,

2012 WL 843939 *4 (quoting *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d

1210, 1220 (11th Cir. 2009)).

A nonresident defendant's contacts with a forum state may give rise to either

"general" or "specific" personal jurisdiction. *Imagineline, Inc. v. Fotolia LLC*, 663

F. Supp. 2d 1367, 1373 (N.D. Ga. 2009) (citing *Helicopteros Nacionales de

Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  However, regardless of the

general or specific nature of these contacts, "it is essential in each case that there

be some act by which the defendant purposely avails itself of the privilege of

15

conducting activities within the forum State" and jurisdiction cannot be based on "random, fortuitous, or attenuated contacts…or because of the unilateral activity of a third person." *Imageline*, 663 F. Supp. 2d at 1373 (internal citations omitted).

Once a court has decided the issue of whether a nonresident defendant has sufficient "minimum contacts" with the forum state to confer jurisdiction, those contacts must then be considered "'in light of other factors to determine whether the assertion of personal jurisdiction would comport with '"fair play and substantial justice."'" *Imageline*, 663 F. Supp. 2d at 1373 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). These other "fairness factors" include "the burden on the defendant of litigating in the foreign forum, the interests of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering substantive social policies." *Id.* at 1373-74 (citing *Burger King*, 444 U.S. at 286).

### a.   General Jurisdiction is Absent.

The term "general jurisdiction" refers to "the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose." *Imageline*, 663 F. Supp. 2d at 1374 (quoting *Oldfield*, 558 F.3d at 1221). Due process requirements for general jurisdiction are

16

"more stringent than for specific jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Id.* (quoting *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)).

Here, the only possible basis AT&T alleges that could give rise to general jurisdiction over AIO is the existence of its website.  In *Imageline*, the court noted that "courts have been reluctant to find general jurisdiction based on internet contacts only, even in those cases where the websites are highly interactive."  663 F. Supp.2d at 1374.  Thus, the court refused to exercise general jurisdiction over a website operator who "makes a website available for worldwide consumption" and concluded that doing so would not be consistent with due process. *Id.* at 1375; *see also Web.com, Inc.v. Go Daddy Group, Inc.*, 2007 WL 7035105 (N.D. Ga. 2007) (court "readily conclud[ed]" that website operator with no offices, employees, or significant customer base in Georgia was "insufficient to demonstrate continuous and systematic contacts."); *Schütz Cont. Sys., Inc. v. Mauser Corp.*, 2010 WL 5087865 *3 (N.D. Ga. 2010) (court rejected conclusory allegations concerning defendant's contact with Georgia and rejected general jurisdiction argument where "quantum of traffic from Georgia users" was insufficient to support a finding of continuous contact with this State).

17

Because AIO lacks any continuous or systematic contact with Georgia, such as would make it "essentially at home" in this State, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011),  this Court should decline to exercise jurisdiction over the Defendant and dismiss or transfer the action.

### b.   Specific Jurisdiction is Absent.

"Specific jurisdiction" refers to "jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *Imageline*, 663 F. Supp. 2d at 1375 (citing *Oldfield*, 558 F.3d at 1221)).  To establish specific jurisdiction, AT&T must establish that (1) AIO's contacts with Georgia are "related to [AT&T's] cause of action;" (2) this action involves "some act by which [AIO] purposely avails itself of the privilege of conducting activities within the forum;" and (3) the contact "must be such that [AIO] should reasonably anticipate being haled into court there." *Id.* (citing *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007)).

Jurisdiction is absent under the first "relatedness" factor.  AT&T does not allege any facts that establish a connection between their claim for declaratory judgment and the State of Georgia.  For example, there is no allegation that AIO and AT&T entered into a contract in Georgia or that Georgia residents used or were harmed in any way by AIO's activities either inside or outside of Georgia.

18

*See Diamond Crystal*, 539 F.3d at 1267 (to exercise specific jurisdiction, there

must be "sufficient nexus" between defendant's contact with state and litigation).

Jurisdiction is also absent under the purposeful availment factor.  AIO does

not benefit from the privilege of doing business in Georgia, derives no revenue

from Georgia, is not registered to do business in Georgia, has no physical presence

or employees in Georgia, and is not alleged to have consummated a single

transaction with a resident of this State giving rise to AT&T's claims.

The last factor—AIO's reasonable anticipation of being haled into Court in

Georgia—also cuts against AT&T's allegation of jurisdiction.  AIO is a relatively

small, Colorado-based company that could not have anticipated being sued in

Georgia by two Nevada and Delaware subsidiaries of an enormous corporate

conglomerate about a dispute that arose because of their unilateral decision to use

AIO's trademark without permission.  Earle Dec. ¶ 17.  Indeed, the letters from

AIO's counsel requesting AT&T to cease their trademark infringement were not

even directed to Georgia, but rather to AT&T's New York and Texas attorneys.

*See generally Virgin Health Corp. v. Virgin Enter., Ltd.*, 393 Fed. Appx. 623, 626

(11th Cir. 2010) (sending cease and desist letter does not constitute transaction of

business in forum state).  Simply put, AIO played no part in AT&T's decision to

infringe upon its trademarks and could never have reasonably anticipated being

19

haled into a Georgia court to litigate against one of the world's largest companies.

### c.      Other Fairness Factors Warrant Dismissal

Even if AIO had minimum contacts with Georgia sufficient to justify personal jurisdiction—which it does not—requiring AIO to litigate with AT&T in Georgia would not comport with traditional notions of fair play and substantial justice. The burden of litigating in Georgia will be acutely felt by AIO and many of the key witnesses in this case. Earle Dec. ¶18. Conversely, AT&T are part of a worldwide corporate conglomerate with resources to litigate anywhere in the world. Thus, AT&T will not achieve any specific benefit in obtaining convenient and effective relief in Georgia. Colorado, on the other hand, is the most logical and efficient forum for the adjudication of this dispute based on the convenience of the parties and witnesses.

Further, Georgia has no particular interest in the outcome of this dispute as it does not impact Georgia consumers of AIO's service. Conversely, Colorado has a significant interest in adjudicating this dispute which involves Colorado substantive law and significant economic harm to one of its residents. The facts of this case thus weigh heavily in favor of dismissing this action pursuant to F.R.C.P.

12(b)(2) and allowing this dispute to instead be decided in Colorado.[6]

**B.   Venue is Improper in Georgia.**

AT&T alleges that venue is proper in this District pursuant to 28 U.S.C. §

1391(b) and (c) because "a substantial portion of the events giving rise to

[AT&T's] claims occurred herein" and "because the Defendant is subject to

personal jurisdiction in this action." Pl. Compl. ¶ 11.  For the reasons set forth

above, AIO is not subject to personal jurisdiction in this Court and no substantial

portion of the events giving rise to AT&T's claims occurred in Georgia.[7]  Thus, the

Court should dismiss this action pursuant to F.R.C.P. 12(b)(3) or transfer this

action to the District of Colorado pursuant to 28 U.S.C. § 1406(a).

**C.   Regardless of whether the Court has Personal Jurisdiction and whether Venue is Proper, the Court Should Exercise its Discretion and Transfer Venue to the District of Colorado.**

---

[6] In the alternative to dismissal, the Court could also transfer this action to Colorado pursuant to 28 U.S.C. § 1406(a) which empowers this court to order a transfer to correct venue and jurisdictional defects. *Thomas v. Strange Eng'g, Inc.*, 2012 WL 993244 *7 (S.D. Ga. 2012) (where court lacked jurisdiction and venue was improper, transfer of action to another district where a substantial part of the events giving rise to action occurred was appropriate pursuant to § 1406(a)).

[7] Any events that AT&T alleges occurred in Georgia do not "directly give rise" to AT&T's claim, lack a "close nexus with the cause of action," and are therefore "irrelevant" for purposes of the venue analysis. *Kapordelis v. Danzig*, 387 F. App'x 905, 906 (11th Cir. 2010) (internal punctuation and citations omitted).

21

Pursuant to 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[8]  In evaluating whether transfer is appropriate this Court should determine whether (1) an adequate alternative forum is available, (2) public and private factors weigh in favor of transferring the case, and (3) whether AT&T can restate the suit in the alternative forum without undue inconvenience or prejudice.  *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011).

Here, there is no question that the District of Colorado provides an alternative forum, as AIO has already initiated suit there and AT&T, or at least Aio Wireless, has appeared and not contested personal jurisdiction and only objected to venue on the basis of the "first to file rule."  *See* Attachment 4.  Private factors, including ease of access to sources of proof, the availability of compulsory process for the attendance of unwilling witnesses, and other practical issues that would make a trial easier, less expensive, and more expeditious also weigh in favor of transfer. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).  Public factors

---

[8]  AT&T consented to jurisdiction in Colorado by moving to dismiss the action there only on venue and not jurisdictional grounds.  F.R.C.P. 12(g) and 12(h).

22

including, most importantly here, the applicability of Colorado substantive law,
also weigh in favor of transferring this action to Colorado. *Id.*; *see also Kravec v.
Chicago Pneumatic Tool Co.*, 579 F. Supp. 619, 623 (N.D. Ga. 1983) (this Court
invited motion to transfer where common law claims would be governed by law of
foreign jurisdiction where witnesses and evidence were located and only
connection to Georgia was plaintiff's residence).

The mere fact that AT&T filed their declaratory judgment action first should
avail them of nothing in this instance. Courts have expressed strong disfavor of the
"race to the courthouse" practice of using declaratory judgment actions as a means
of wrestling from the natural plaintiff its right to choose the forum, particularly
where the declaratory judgment action was filed in anticipation of an imminent suit
being filed elsewhere.

In *Soroka v. Lee Tech. Svcs., Inc.*, 2006 WL 1734277 (N.D. Ga. 2006), the
court analyzed a similar situation where a resident of Georgia filed a declaratory
judgment action against nonresident defendants after receiving a cease and desist
letter related to an employment agreement. Citing *Ven-Fuel, Inc. v. Dep't of the
Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982), for the proposition that a "district
court may decline to entertain a declaratory judgment action on the merits when a
pending proceeding in another court will fully resolve the controversy between the

23

parties," the *Soroka* court transferred the case pursuant to 28 U.S.C. § 1404(a).

*Soroka* recognized that the "first filed rule is not applied mechanically," especially

"where a declaratory judgment action is filed in anticipation of another suit and is

being used for forum shopping purposes." *Soroka*, 2006 WL 1734277 at 4; *see*

*also Essex Group, Inc. v. Cobra Wire & Cable, Inc.*, 100 F. Supp.2d 912 (N.D.

Ind. 2000) (recognizing that a suit for declaratory judgment aimed solely at

wresting the choice of forum away from the "natural" plaintiff will normally be

dismissed and the case allowed to proceed in the usual way) (quoting *NUCOR*

*Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577-78 (7th

Cir. 1994)); *Bayer Cropscience, LP v. Booth*, 2005 WL 2138759 *3 (M.D. Ga.

2005) (citing various Federal Circuits and the United States Supreme Court for the

proposition that courts look "critically" at preemptive declaratory judgment actions

triggered by a notice letter when the purpose is to gain procedural advantage,

preempt the plaintiff's choice of forum and "usurp the normal status of the plaintiff

as the 'master of his claim.'"); *Tempco Elec. Heater Corp. v. Omega Eng., Inc.*,

819 F.2d 746 (7th Cir. 1987) ("Where, as here, the declaratory judgment action is

filed in anticipation of a [trademark] infringement action, the infringement action

should proceed, even if filed four days later")); *Trading Tech. Int'l, Inc. v. CQG,*

*Inc.*, 2005 WL 3601936 *3 (N.D. Ill. 2005) ("The Declaratory Judgment Act was

24

not intended to affix [a] competitor with a right to feign negotiation in order to delay [a] patentee's filing of an infringement suit in an effort to secure a preferable forum.").

Here, AIO is the natural plaintiff who, but for the tactics and gamesmanship of some of AT&T's counsel, would have been the first to file in the District of Colorado.  Under the circumstances, the Court should exercise its discretion to decline consideration of AT&T's request for declaratory relief and transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404(a).

## IV.  CONCLUSION

WHEREFORE, AIO moves the Court to dismiss this action pursuant to F.R.C.P. 12(b)(2) and (b)(3) or, alternatively, transfer this action to the United States District Court of the District of Colorado pursuant to 28 U.S.C. § 1404(a) or §1406(a).

DATED:  July 3, 2013

Respectfully submitted,
s/ Kelly L. Whitehart
Kelly L. Whitehart
GA Bar No. 755447
MILLER & MARTIN, PLLC
1170 Peachtree Street, N.E. #800
Atlanta, GA 30309-7706
Telephone: (404) 962-6100
Fax: (404) 962-6300

25

Email: kwhitehart@millermartin.com

Of Counsel (*pro hac vice pending*)
Edward T. Lyons, Jr.
elyons@joneskeller.com
Daniel A. Wartell
dwartell@joneskeller.com
Aaron D. Goldhamer
agoldhamer@joneskeller.com
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: (303) 573-1600
Fax: (303) 573-8133

## LOCAL RULE 7.1D CERTIFICATION

By signature below, counsel certifies that the foregoing document was

prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

/s/ *Kelly L. Whitehart*
Kelly L. Whitehart
(Georgia Bar #755447)
*kwhitehart@millermartin.com*

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of July, 2013, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AIOTV INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2) and (b)(3) OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)with the Clerk of Court by using the CM/ECF system, and a copy of the foregoing pleading has been electronically mailed to all attorneys of record.

/s/ *Kelly L. Whitehart*
Kelly L. Whitehart
(Georgia Bar #755447)
*kwhitehart@millermartin.com*

27