# ATTACHMENT 2

# Declaration of Brad H. Hamilton

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AT&T INTELLECTUAL PROPERTY II, L.P., And AIO WIRELESS LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 13-cv-1901 |
| | ) ) | |
| v. | ) ) | |
| AIOTV, INC. | ) ) | |
| Defendant. | ) ) ) | |

---

DECLARATION OF BRAD H. HAMILTON

---

Brad H. Hamilton submits this declaration in support of Defendant aioTV Inc.'s Motion to Dismiss or, in the alternative, Transfer the Case to the District of Colorado, and declares as follows:

1.     I am an attorney at law admitted to practice and in good standing in the State of Colorado, and am a shareholder with the law firm of Jones & Keller, P.C. located in Denver, Colorado.  I was admitted to practice in 1983, and have practiced law for 30 years.

2.     I have personal knowledge of the matters set forth in this declaration.

3.     I was engaged by aioTV Inc. ("AIO") in October 2011 to represent it in the negotiation and documentation of its first round of venture capital financing, and have represented AIO on general business and financing matters since that time.

{JK00492328.1 }

4.     Upon information and belief, AIO has used the "aio" (pronounced "A-O") trademark, both alone and along with multiple suggestive and descriptive terms, including "aioTV," to identify and market its services since at least January 2010.

5.     On May 10, 2013, I became aware of a press release announcing the launch on May 9, 2013, of AT&T's new "Aio wireless" service.  A true and correct copy of this press release is attached hereto as **Exhibit 2-A**.  Also on or about May 9, 2013, AT&T went live with a new website for "Aio wireless" at www.aiowireless.com.  Select content from the Aio wireless website is attached hereto as **Exhibit 2-B**.

6.     On May 13, 2013, I sent a letter to AT&T Intellectual Property II, L.P., 645 East Plumb Lane, Reno, Nevada 89502 and to David J. Cho, AT&T Services, Inc., 208 S. Akard St., Dallas, TX 75202-4206, notifying them that the use of "aio" and "aio wireless" infringed upon AIO's trademarks, and requesting that AT&T cease and desist any further use of the "aio" mark.  A true and correct copy of that letter is attached as **Exhibit 2-C**.

7.     I addressed the letter to AT&T Intellectual Property II, L.P. because, upon information and belief, it is the owner of four "aio" related trademark applications at the United States Patent and Trademark Office, and to David Cho of AT&T Services because he is the corresponding attorney on the trademark applications.

8.     On May 15, 2013, I met with a team of three lawyers in the Litigation Section at Jones & Keller, at which time they assigned tasks and commenced the legal and factual investigation necessary for preparation of a verified complaint against the appropriate AT&T entity(ies).

9.     By May 20, 2013, Jones & Keller had prepared a draft of the fact narrative to be included in a complaint against AT&T.

10.     On May 21, 2013, I received a call from Darren Saunders and Linda Goldstein, attorneys in the New York office of Manatt Phelps & Phillips, LLP, who informed me that they represented AT&T and were conducting a preliminary review of the matters raised in my May 13, 2013, letter.

{JK00492328.1 }

11.     They asked first what problems AIO was experiencing, and I told them that AIO is experiencing actual confusion in the marketplace, and has been since "aio wireless" launched. They asked what AIO wanted, and I said that first and foremost AIO wanted AT&T to stop using the "aio" mark. They responded that since AT&T had invested a lot of money on the launch, it "would be difficult to go back."

12.     I asked whether the fact that "aio wireless" had launched in only three test markets would be helpful in restricting or changing the use of "aio", and they responded that AT&T would press forward with nationwide launch under the "aio" name. After discussing potential settlement terms, AT&T's lawyers stated that they hoped we could work something out before starting "World War III."

13.     Although we generally discussed some matters that would be at issue in a trademark-infringement lawsuit, Mr. Saunders and Ms. Goldstein stated that they did not want to discuss the merits or argue the specifics or legalities of the issues at that time, and that the purpose of the call was to make an introduction, do a bit of fact finding and fact sharing, and ask if AIO would propose some kind of settlement. I thanked them for their call and said I would get back to them after I conferred with my client.

14.     By May 24, 2013, Jones & Keller had prepared a draft verified complaint against Aio Wireless, LLC ("Aio Wireless"). Aio Wireless was named the defendant because, upon information and belief, it is the AT&T subsidiary that is actually infringing upon AIO's trademarks.

15.     On May 29, 2013, following the Memorial Day holiday, as a result of aggressive branding and advertising activity by Aio Wireless of "aio" on social media such as Twitter, Jones & Keller began preparing a final draft of the verified complaint to be filed in Colorado, together with a second, more strongly worded, cease and desist letter to AT&T.

16.     On May 30, 2013, I sent by email a cease and desist letter to Darren Saunders of Manatt Phelps & Phillips LLP demanding that AT&T immediately cease further usage of the "aio" mark, and inviting Mr. Saunders and AT&T to propose any offers of settlement. A true and correct copy of that letter is attached hereto as **Exhibit 2-D**.

{JK00492328.1 }

17. On June 3, 2013, I received a telephone call from Darren Saunders and Linda Goldstein to discuss the contents of my May 30, 2013, letter. They asked me what had changed that caused me to send a new letter with what they perceived as a more aggressive tone. I advised them that two things had changed: first, AT&T had recently launched its aggressive social media campaign relating to "aio," which was having a drastic effect on AIO's brand, and second, that AT&T was aggressively marketing the "aio" brand itself without the term "wireless." I pointed them to examples of this on the Internet and Twitter.

18. Ms. Goldstein stated that "a product launch is a product launch" and that AT&T would not cease using the "aio" mark.

19. Ms. Goldstein then brought up the request in my May 30, 2013, letter that AT&T make a settlement proposal of this dispute, but did not offer any terms or proposal. I was instead asked if AIO had something in mind that might serve as a basis for settlement.

20. I responded by describing in general terms a proposal that might resolve this dispute. I told them that if AT&T were interested in such a settlement, that I would provide them a more detailed written proposal.

21. Mr. Saunders and Ms. Goldstein expressed eagerness to hear more about and pursue the proposal I had suggested. They asked about the likelihood of success. I told them that I thought AIO would be excited about the possibility of a business settlement instead of litigation.

22. They then asked whether we were going to file a lawsuit, and I responded that, although we [the lawyers] might enjoy litigating this action, AIO was not eager to file a lawsuit, and had better uses for its money than on litigation if a business resolution was possible.

23. Mr. Saunders said that they were very interested in considering the settlement proposal, but that AT&T was a very big organization and it would take a long time to run the proposal through the chain of command, so it would probably be a long time before they could get back to me. I told him I previously worked with Qwest and some cyber center hosting companies and had experience in both deals and litigation with AT&T, and that I understood, but I hoped it would not take too long, and that my client would need to proceed with legal action to

4

protect its rights if AT&T was not interested in this type of proposal.

24.     Mr. Saunders said that "you have to do what you have to do", but asked me to please notify them "if anything changed." The context was such that I understood that Mr. Saunders was asking me to extend him the professional courtesy of giving him notice if AIO was not willing to wait "a long time" for AT&T to respond to our proposal or if AIO was going to file the lawsuit. I told him that I would do so.

25.     Based on that conversation, I understood that we had agreed to an informal standstill arrangement whereby AIO would delay filing suit for long enough to enable AT&T's management to consider the settlement concept I had outlined.

26.     Based on this understanding, Jones & Keller, on behalf of AIO, refrained from filing the lawsuit to give AT&T sufficient time to respond to the settlement proposal. At that point, Jones & Keller was prepared to file the lawsuit on or about June 12, 2013, if no progress with AT&T had been made.

27.     On the afternoon of June 6, 2013, I was notified by our receptionist that Mr. Saunders and Ms. Goldstein were holding for me, but I was on an extended conference call for a closing and was unable to take their call.

28.     At 10:00 AM Mountain Daylight Time the morning of June 7, 2013, Mr. Saunders and Ms. Goldstein called me and said that AT&T was exploring the business option I had proposed and "looking into gauging internal interest," but that they had filed a declaratory judgment action the previous day in the Northern District of Georgia.

29.     I was shocked to hear this and told them the purpose of our delay was to avoid litigation. I told them we had a complaint ready to file for about 10 days, and now we would have to file our case in Colorado and waste resources hashing out a jurisdictional dispute in a foreign jurisdiction.

30.     They asked if I wanted them to send me a copy of the complaint they had filed and whether we would waive service of process. I told them to please send me the documents, and that the waiver of service would be considered by my litigation team at Jones & Keller.

{JK00492328.1 }

5

31.    Ms. Goldstein closed the call by stating that the reason she felt they had to file was the aggressive tone of my May 30, 2013, letter, and Mr. Saunders confirmed that statement and said they felt they had to file based on my last letter. I found this confusing and impossible to square with the phone call we had on June 3, after they had received that letter.

32.    At 5:03 PM Mountain Daylight Time on Friday June 7, 2013, I received the Complaint and related documents by email from Manatt Phelps's New York office, together with a notice and request for waiver of service.

33.    Because Mike Earle had been out of town and was not available to sign the verified complaint until noon on June 11, 2013, AIO's verified complaint against Aio Wireless was filed later that same day in the United States District Court for the District of Colorado. A summons was issued by the Clerk of the Court the following day, and the verified complaint was served upon Aio Wireless' registered agent for service of process in Colorado on June 12, 2013.

34.    That same day, despite the terms of the notice and waiver of service that Aio Wireless' attorney sent on June 7, which allowed AIO 30 days to accept service of the complaint in the present case, that complaint was served upon AIO's registered agent for service of process in Colorado on June 12, 2013.

35.    Based upon the foregoing, and particularly the June 3, 2013 telephone call from Mr. Saunders and Ms. Goldstein, I believe that the Plaintiffs in the present action deliberately induced AIO to delay filing its complaint for trademark infringement and unfair competition in the District of Colorado so that they could in the meantime prepare and file an anticipatory action for a declaratory judgment in this Court.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this 1st day of July, 2013.
Denver, Colorado

Brad H. Hamilton

# EXHIBIT 2-A

## (to Declaration of Brad H. Hamilton)



News Release Archives

## Aio Wireless™ Announces New Nationwide Voice and Data Service

*No-annual-contract wireless provider kicks off new service with launch in first three markets*
**Alpharetta, Georgia, May 09, 2013**

Share:

Today Aio Wireless announced the launch of a new nationwide wireless service for consumers interested in a first-class wireless experience at a value price, without an annual contract. Aio provides new choices, seamless customer experience, and simplified service and offerings to value-conscious customers interested in an unlimited talk/text/data plan with no annual contract.

Aio expects the service to roll out in multiple markets across the U.S. over the next year, with an initial launch today in select stores in Houston, Orlando and Tampa, and with additional stores in these three markets opening in the coming weeks. Store locations and Aio information will be available at www.aiowireless.com. Aio (pronounced "A-O") is a brand name that encapsulates Aio's brand promise: simply, delightfully, more.

"We talked with no-annual-contract customers and created our service around what they want. They want simple, easy plan choices with unlimited offers; first-class service at affordable prices; great devices; nationwide voice and data coverage; and no annual contracts. Today's wireless customers don't want to compromise," said Jennifer Van Buskirk, president of Aio Wireless. "We are set up to win over value-conscious customers who are increasingly moving towards smartphones and mobile broadband."

Aio makes prepaid wireless easy for customers with a friendly in-store and on-line experience, three simple rate plans to choose from, and an attractive portfolio of devices that include smartphones, tablets, and feature phones from a variety of manufacturers, including Samsung, Nokia, ZTE and others. Aio's unlimited talk, text, and data rate plans range from $35 to $70 per month, with pricing varying by market, and will offer 4G download speeds of up to 4Mbs per second. Customers will also have the opportunity to bring a compatible, unlocked device for activation on the Aio network. Aio will delight customers with an attitude of gratitude, easy pre-payment options, and an involvement in the local communities in which we serve.

Aio Wireless is a subsidiary of AT&T Inc. (NYSE:T). AT&T does not expect this announcement to change AT&T's January 2013 financial guidance.

*Aio's plan pricing includes applicable state and local taxes, and fees. Each unlimited plan includes a pre-established amount of high speed data access, and service is subject to Aio's Terms and Conditions of Service and Unreasonable Use Policy. Coverage and services are not available everywhere. Restrictions apply. © 2013 Aio Wireless LLC. All rights reserved. Aio, Aio Wireless and the Aio logo are trademarks of Aio Wireless LLC.*

### About Aio Wireless

Aio Wireless (pronounced A-O) was created for today's value-conscious connected consumers who want it all. We created a new class of service for individuals who expect a first class wireless service at a value price – one with no-annual contract, friendly service, uncomplicated plans and the mobile phones and tablets you love. All of Aio's phone plans include unlimited talk, text and data, with taxes and fees included – the price you see is the price you pay. Aio Wireless is a subsidiary of AT&T Inc. Visit www.aiowireless.com to find out more.

### Cautionary Language Concerning Forward-Looking Statements

*Information set forth in this news release contains financial estimates and other forward-looking statements that are subject to risks and uncertainties, and actual results may differ materially. A discussion of factors that may affect future results is contained in AT&T's filings with the Securities and Exchange Commission. AT&T disclaims any obligation to update or revise statements contained in this news release based on new information or otherwise.*

News Sources

About Us
RSS News Releases
RSS Podcasts
AT&T news

Tags
financial

EXHIBIT 2-A

# EXHIBIT 2-B

## (to Declaration of Brad H. Hamilton)



EXHIBIT 2-B



EXHIBIT 2-B



EXHIBIT 2-B

# EXHIBIT 2-C

## (to Declaration of Brad H. Hamilton)



# JONES&KELLER
—— A T T O R N E Y S   A T   L A W ——

BRAD H. HAMILTON                                        BHAMILTON@JONESKELLER.COM

May 13, 2013

AT&T Intellectual Property II, L.P.
645 East Plumb Lane
Reno, Nevada 89502

C/O

David J. Cho
AT&T Services, Inc.
208 S. Akard St.
Dallas, TX 75202-4206

Via Email: david.cho@att.com

Dear Mr. Cho:

Re: aioTV Inc.'s "AIO" Trademarks

We represent aioTV, Inc. ("**AIO**") owner of the "aio", "aioTV," "aio pro," "aio basic,"
"aio cloud," and related trademarks and service marks. AIO has been conducting business
throughout North America using the "aio", "aioTV", "MYaio" and similar marks since at least
early 2010, in the IPTV and wireless data business.

A few days ago, AT&T launched "aio wireless", using the "aio" mark in a confusingly
similar line of business, and in a manner that is clearly confusing to AIO's brand and trademark
rights. AT&T is well aware of my client's "aio" mark. AIO began offering its services under the
"aio" brand in early 2010, and did an industry launch at the 2010 TelcoTV convention, where
AT&T had a substantial presence and Steven Wright, Chair, IPTV Interoperability Forum ATIS,
AT&T Network Architecture was a key note speaker on "IPTV Innovation, Investment,
Standards and Interoperability." AIO demonstrated its services to Tom Sauer and Jeff Weber of
AT&T in 2010, and had ongoing discussions with Tom Sauer in 2010. AIO executives have
shared panels with AT&T executives at various industry events such as TelcoTV.

AIO's brand and service offerings have ranked high on the first page of Google® and
other Internet search engines for two years; prior to AT&T's "aio wireless" launch, an Internet
search for "aio" always returned my client as the top result. I assume that AT&T conducted a
trademark search through Thomson Reuters or another service before filing USPTO applications
Nos. 85773612, 85738188, 85718159, & 85773608 for various "aio" marks, which would have
notified you of AIO's rights in the "aio" marks.

JONES & KELLER, P.C. | 1999 BROADWAY, SUITE 3150 · DENVER, COLORADO 80202
P: 303 573 1600 | F: 303 573 8133 | WWW.JONESKELLER.COM

EXHIBIT 2-C

AT&T/David Cho
May 13, 2013
Page 2 of 2

     Moreover, AT&T has launched a website at www.aiowireless.com that copies the look and feel of AIO's website (prior to a recent change). See Attachment 1.

     AT&T has also launched "My AIO," while AIO has been using the "MYaio" mark for a couple of years. See Attachment 2. It appears that AT&T is also launching a number of services under the "aio" brand "Aio Pro," "Aio Smart," and "Aio Basic." My client already uses "aioTV," "aioCLOUD," "aioPRO," and "aioBASIC." See Attachment 3. Naturally, this will cause severe consumer confusion.

     Since our clients are sophisticated and represented by counsel I will dispense with the usual case and statute citations and other "cease and desist" form-letter demands. However, it is probably a requirement that I request, on behalf of aioTV Inc., that AT&T cease and desist any further use of the "aio" mark, and notify you that AT&T's use of the identical trademark in connection with nearly the same goods and services that are offered by AIO under its "aio" marks constitutes trademark infringement, false designation of origin, and unfair competition in violation of the federal Trademark Act of 1946 (Lanham Act), 15 U.S.C. Section 1051 et seq.

     I suggest AT&T counsel contact the undersigned as soon as possible so that we can understand AT&T's thinking on these marks, and see if this matter can be resolved.

                Sincerely,

                JONES & KELLER, P.C.

                Brad H. Hamilton

EXHIBIT 2-C

**JONES KELLER**

**<u>ATTACHMENT 1</u>**





**ATTACHMENT 2**





**ATTACHMENT 3**







# EXHIBIT 2-D

## (to Declaration of Brad H. Hamilton)

# JONES&KELLER
#### ————— A T T O R N E Y S   A T   L A W —————

BRAD H. HAMILTON                                                BHAMILTON@JONESKELLER.COM

May 30, 2013

Darren Saunders
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036

Via Email: dsaunders@manatt.com

Dear Mr. Saunders:

    Re: aioTV Inc.'s "AIO" Trademarks

    Further to our telephone conversation last week and your voice message last Friday, our client, aioTV, Inc. ("**AIO**") has asked me to provide the following.

    After AT&T's launch of "aio wireless" on May 9, 2013, and after my letter to AT&T dated May 13, 2013, AT&T has commenced and is continuing a very aggressive, well-funded and comprehensive brand marketing campaign surrounding the "aio" mark. The campaign includes aggressive social media brand marketing, primarily focused on the "aio" mark; for example, your client has been very aggressively feeding Twitter using not only the name "aio wireless", but also "aio" alone, as in:

    "We are delighted to announce iPhone is available from **Aio** with no annual contract. http://ow.ly/l22ci #HelloAio."

    and

 **Aio Wireless** @aiowireless           21 May
How do you #Aio? We'll leave that up to you. #HelloAio
Collapse   ← Reply   ⟲ Retweet   ★ Favorite   ••• More

 **Aio Wireless** @aiowireless           9h
Who's been to their local #Aio store? We want to hear from you!
Expand

 **Aio Wireless** @aiowireless           28 May
When we say A, you say #Aio. A!
Expand

---

JONES & KELLER, P.C. | 1999 BROADWAY, SUITE 3150 | DENVER, COLORADO 80202
P: 303 573 1600   F: 303 573 8133   WWW.JONESKELLER.COM

EXHIBIT 2-D

Darren Saunders/ AT&T
May 30, 2013
Page 2 of 5

These are just a few examples. Your client is conducting similar activities on facebook, Instagram, Spotify and other social media. I have also attached photographs of the aio wireless physical stores. It is clear that your client is aggressively branding the word "aio" and "hello aio."

As a result of AT&T's campaign, our client's mark no longer appears prominently in searches for "aio" on Twitter or popular Internet search engines, a position it had enjoyed for several years. In the 15-days since I notified AT&T of its infringement of our client's marks, AT&T's branding campaign has nearly obliterated our client's goodwill and reputation in its "aio" mark. Rather than taking a short pause to assess my client's claims, AT&T has pressed ahead with its branding, indifferent to confusion with my client's marks, and increasingly destroying our client's ability to make effective use of its trademark to identify its service or its company. AT&T has engaged in this course of action despite knowing of my client's "aio" mark for more than two years.

In our phone conversation last week you inquired whether our client might have a proposal to settle this matter. As our client is not the infringing party, it is incumbent upon us to notify you that AT&T's use of the "aio" mark constitutes trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act and my client's common law rights.

While our client is prepared to take aggressive action in connection with AT&T's unauthorized use of the "aio" mark, we are writing in an effort to resolve this matter by seeking AT&T's assurance that it will *immediately* cease and desist from using "aio", or anything confusingly similar thereto, as a trademark, service mark or trade name in connection with the sale and/or service of wireless devices.

If AT&T has any proposals or suggestions for settling this matter in a different manner, please communicate them to me as soon as possible; unfortunately, AT&T's actions have already virtually destroyed my client's mark, so usual remedial actions would have no value.

Sincerely,

JONES & KELLER, P.C.

Brad H. Hamilton

**JONES&KELLER**

Darren Saunders/ AT&T
May 30, 2013
Page 3 of 5



JONES&KELLER

Darren Saunders/ AT&T
May 30, 2013
Page 4 of 5



**JONES&KELLER**

Darren Saunders/ AT&T
May 30, 2013
Page 5 of 5



JONES&KELLER