# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| AT&T INTELLECTUAL PROPERTY II, L.P., and AIO WIRELESS LLC, | § § § | Civil Action No. 1:13-cv-1901-JOF |
| *Plaintiffs,* | § § § | |
| *v.* | § § | |
| AIOTV, INC. | § § | |
| *Defendant.* | § § § § § | |

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S
# MOTION TO DISMISS OR TRANSFER VENUE

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................ 1

II.  FACTUAL BACKGROUND.............................................. 2

III. ARGUMENT ........................................................... 8

    A.   This Court Has Personal Jurisdiction Over Defendant ...................... 8

        1.   The Georgia Long-Arm Statute Confers Jurisdiction
            Over Defendant ......................................................... 9

        2.   Due Process Is Satisfied In This Case................................... 15

            a.   Defendant Has Sufficient Minimum Contacts with
                Georgia................................................................ 15

                (i)   The Court Has General Jurisdiction .................. 15

                (ii)  Specific Jurisdiction Is Also Present................ 18

            b.   Jurisdiction Over Defendant Comports With Fair
                Play and Substantial Justice........................................... 22

    B.   Venue In This Court Is Proper ......................................... 24

    C.   Transfer to Colorado Is Unnecessary And Improper ....................... 24

IV.  CONCLUSION.......................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aero Toy Store, LLC v. Grieves,*
279 Ga. App. 515 (2006) ............................................................ 8, 13, 14

*Barton S. Co., Inc. v. Manhole Barrier Sys., Inc.,*
318 F. Supp. 2d 1174 (N.D. Ga. 2004) ............................................ 14

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ................................................................ passim

*Compuserve, Inc. v. Patterson,*
89 F.3d 1257 (6th Cir. 1996) ........................................................ 11

*Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.,*
593 F.3d 1249 (11th Cir. 2010) .................................................. 9, 10

*Field Enterprise Educational Corp. v. Cove Industries, Inc.,*
297 F.Supp 989 (E.D.N.Y. 1969) .................................................... 19

*Genentech, Inc. v. Eli Lilly and Company,*
998 F.2d 931 (Fed. Cir. 1993) ....................................................... 24

*Hanson v. Denckla,*
357 U.S. 235 (1958) .................................................................. 21

*Htl Sp. Zo.O v. Nissho Corp.,*
245 Ga. App. 625 (2000) .............................................................. 9

*Imageline, Inc. v. Fotolia LLC,*
663 F. Supp. 2d 1367 (N.D. Ga. 2009) ............................................ 16

*Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames,*
620 S.E.2d 352 (2005) ................................................................ 10

*International Shoe Co v. Washington,*
326 U.S. 310 (1945) .................................................................. 15

*Jordan Outdoor Enter., Ltd. v. That 70's Store, LLC,*
819 F. Supp. 2d 1338 (M.D. Ga. 2011) ............................................ 13

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770 (1984) .................................................................. 16

*Kim v. Keenan,*
71 F. Supp. 2d 1228 (M.D. Fla. 1999) ............................................. 13

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Levi Strauss & Co. v. Blue Bell, Inc.,*
   632 F.2d 817 (9th Cir. 1980) ............................................................ 19

*Manuel v. Convergys Corporation,*
   430 F.3d 1132 (11th Cir. 2005) ................................................. 24, 25

*McGee v. International Life Insurance Co.,*
   355 U.S. 220 (1957) ..................................................................... 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,*
   675 F.2d 1169 (11th Cir. 1982) ................................................. 24, 25

*Ottlite Technologies, Inc v. Verilux, Inc.,*
   2010 U.S. Dist. LEXIS 2990 (M.D. Fla. 2010) ............................... 24

*Perkins v. Benguet Consolidated Mining Co.,*
   342 U.S. 437 (1952) ..................................................................... 15

*Robertson v. CRI, Inc.,*
   267 Ga. App. 757 (2004) ................................................................9

*Sculptchair, Inc. v. Century Arts, Ltd.,*
   94 F.3d 623 (11th Cir. 1996) ....................................................... 13

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,*
   447 F.3d 1357 (11th Cir. 2006) .................................................. 8, 9

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,*
   889 F.2d 1018 (11th Cir. 1989) .................................................... 20

*Tana v. Dantanna's,*
   611 F.3d 767 (11th Cir. 2010) ................................................ 20, 24

*United States v. Steffens,*
   100 U.S. 82, 25 L.Ed. 550 (1879) ................................................. 20

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,*
   952 F. Supp. 1119 (W.D. Pa. 1997) ......................... 10, 11, 13, 21

## STATUTES

28 U.S.C. § 1404(a) ...........................................................................1

## RULES

F.R.C.P. 12(b)(2) ........................................................................ 1, 2

F.R.C.P. 12(b)(3) ...............................................................................1

Plaintiffs AT&T Intellectual Property II, L.P. and Aio Wireless LLC ("Plaintiffs") submit this Memorandum in Opposition to Defendant aioTV, Inc.'s ("Defendant") Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and (b)(3) Or, Alternatively, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Defendant's Motion").[1]

## I.    INTRODUCTION

The limited jurisdictional discovery authorized by this Court has definitively confirmed that Defendant has transacted and continues to transact business in Georgia by providing its services to Georgia users and by soliciting and contracting with at least one major Georgia-based company, Cox Communications, Inc. ("Cox").

Defendant has purposefully directed its activities at Georgia by enabling Georgia users to stream media content aggregated and curated by Defendant on an on-going basis.  This is much more than a mere ubiquitous "web" presence, as Defendant's service is regularly and systematically available in this State.

With respect to Cox, after initially denying in sworn discovery responses that it had any contracts with Georgia entities, Defendant was forced to concede that it had indeed entered contracts with Cox containing Georgia forum selection

---

[1] Plaintiffs filed a Motion to Seal certain evidence designated by Defendant as Highly Confidential.

clauses that result in continuing obligations in the State.

Equally important, Defendant's assertion of nationwide common law trademark rights in the administratively closed Colorado action serves as an admission that it has done sufficient business in Georgia for this Court to exercise jurisdiction. Defendant's assertion to the contrary in the instant Motion is fundamentally inconsistent with the concept of common law trademark rights.[2]

The facts are clear. Defendant has a more than sufficient connection with Georgia and its Motion should be denied.

## II.   FACTUAL BACKGROUND

On July 3, 2013, Defendant filed a motion to dismiss under, *inter alia*, Rule 12(b)(2). In support of the motion, Defendant submitted the declaration of its CEO, Michael Earle ("Earle Declaration"). The Earle Declaration describes Defendant's customers as falling into two classes: Direct Service Users and customers of third parties that pay license fees to offer Defendant's streaming content ("Indirect Service Users").

Plaintiffs propounded jurisdictional discovery asking Defendant to, *inter alia*, produce documents identifying the number of Direct and Indirect Service

---

[2] Plaintiff in no way agrees or admits that Defendant owns trademark rights in "aio" in any geographic region. Plaintiff is simply reciting what Defendant would have to do in order to gain common law trademark rights in Georgia, ***without conceding that Defendant has successfully gained such rights***.

Users in Georgia.  On August 6, 2013, Defendant provided a partial response with the number of Direct and Indirect Service Users in Georgia,[3] but added a significant caveat that disclaimed any knowledge of the number of users who accessed Defendant's service through a "Guest" account.  (Defendant's Responses to Rog. Nos. 1 and 2; Earle Depo., 68:9-70:4.)  In essence, a "Guest" account allows Defendant's Direct and Indirect Service Users to use the service without providing any information identifying the users' physical location.  As such, while Defendant admits that it has customers in Georgia, it is not able to identify the total number of customer in Georgia or any other jurisdiction.  (*Id.*)

Plaintiffs also requested Defendant to identify any person located in the State of Georgia with whom it has entered into a contract, and documents evidencing the same.  Defendant responded that ████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████ (Defendant's Responses to Rog. No. 7 and Doc. Req. No. 9.)

On August 22, 2013, Plaintiffs took the deposition of Mr. Earle, and a number of material inconsistencies with the Earle Declaration quickly became apparent.  Specifically:

---

[3] Of ██ licensees identified, Defendant provided data showing Georgia users from only one licensee.  (Defendant's Response to Rog. No. 2 and Doc. Req. No. 2.)

| Earle Declaration | Earle Deposition Testimony |
|---|---|
| "[Defendant] has…never negotiated or entered into a contract within Georgia…."<br><br>(Earle Decl., ¶ 8) | "[Defendant] had a three-month "Agreement" with Cox Communications that expired in Jan. 2012 and resulted in no income to [Defendant]."<br><br>(Defendant's September 4, 2013 Correction to Earle Depo., 89:12.) |
| "[Defendant] does not advertise in Georgia and has never targeted Georgia residents for any marketing or advertising campaign."<br><br>(Earle Decl., ¶ 11) | Q. Does aioTV actively promote itself as being available, ongoing TV?<br><br>A. Yes.<br><br>Q. How?<br><br>A. Through our social media sites, Twitter and Facebook, and on our website.<br><br>Q. And there's no geographic limitation on where that marketing takes place?<br><br>A. That's correct.<br><br>Q. So a Georgia resident could look at Facebook or Twitter and see that promotion?<br><br>A. Absolutely.<br><br>(Earle Depo., 37:25-38:11.) |
| "None of [Defendant's licensees] has a principal place of business in Georgia."<br><br>(Earle Decl., ¶ 14) | Q. So ▮▮▮▮▮ is one of your principal investors?<br><br>A. Yes.<br><br>Q. Did you know they were registered to do business in the State of Georgia?<br><br>A. I did not. |

| Earle Declaration | Earle Deposition Testimony |
|---|---|
|  | Q. You don't recognize Exhibit 6 [Secretary of State registration for ██████], I take it. <br><br> A. I've not seen this before. <br><br> (Earle Depo., 79:17-24.)[4] |
| "[Defendant] has no knowledge or control over where, or in what states, these independent companies market and sell their products and services." <br><br> (Earle Decl., ¶ 15) | Q. Is it true that aioTV has no knowledge of or control over where or in what states your independent licensees market and sell your products and services? <br><br> … <br><br> A. That is not a true statement. <br><br> Q. Okay. In what sense is it not true? <br><br> A. We do have some knowledge of where our licensees offer service. We have no control over where they offer their service. <br><br> Q. You could negotiate that, but you haven't? <br><br> A. Correct. <br><br> (Earle Depo., 60:1-18.) |

During the deposition, it came to light that Defendant had corresponded with

Cox in Atlanta, Georgia.  However, Mr. Earle expressly denied that Defendant

ever entered a contract with any Georgia company.  (Earle Depo., 89:10-17.)

---

[4] Although not a "principal place of business," Defendant's licensee Google, Inc. has an office in Atlanta, and both ██████. and Google are registered to do business in Georgia.  (Hummel Decl., Exs. Q, R and S.)

Nearly two weeks later, Mr. Earle submitted a signed correction to his deposition transcript changing his testimony.  (Hummel Decl., ¶ 20, Ex. K.)

On September 3, 2013, Defendant advised Plaintiffs that it had inadvertently failed to produce the communications with Cox and was supplementing its written discovery responses to disclose an agreement entered between Defendant and Cox. Defendant then produced 382 pages of email communications with Cox evidencing Defendant's extensive efforts to solicit business.  Additionally, Defendant produced a "trial" license agreement ("Agreement") that it entered with Cox.  The newly produced documents showed:

- In July 2011, Defendant and Cox discussed having Defendant install a branded trial system on Cox hardware.  (Hummel Decl., ¶ 18, Ex. I.)

- In August 2011, representatives of Defendant and Cox attended an in-person meeting where Defendant's representative took Cox employees through the service platform.  The parties executed a non-disclosure agreement ("NDA") and exchanged drafts of the Agreement.  (Hummel Decl., ¶ 18, Ex. I.)

- The NDA included a three-year term, except for trade secrets, which require the restrictions on disclosure to remain in effect as long as the information is a trade secret.  Defendant and Cox agreed that in the event of a breach of the NDA, each party is entitled to seek specific performance as well as any injunctive

relief that may be granted by a court of competent jurisdiction.  The NDA is governed and construed under the laws of the State of Georgia.  (Hummel Decl., ¶ 25, Ex. P.)

- In October 2011, Defendant and Cox executed the Agreement, which identified Cox as a "Distribution Partner" of Defendant's.  In the event of a dispute, the parties agreed to arbitrate in the county of the initial respondent's/defendant's principal place of business (either Atlanta, Georgia or Denver, Colorado).  The Agreement further indicated that the arbitration clause would not affect "either party's ability to seek from a court injunctive or equitable relief at any time." (Hummel Decl., ¶ 19, Ex. J.)

- In November 2011, Cox began lab testing of Defendant's service platform and worked with Defendant to install the service on the Cox lab server.  In order to do so, Defendant had to access the Cox system via a virtual private network ("VPN").[5]  (Hummel Decl., ¶ 18, Ex. I.)

- Between December 2011 and February 2012, Defendant and Cox had several calls and WebEx meetings where Defendant assisted Cox to simulate a back-end administrator account for Cox-specific content and set up a channel

---

[5] VPN enables a computer to send and receive data across shared or public networks as if it were directly connected to the private network, while benefiting from the functionality, security and management of the private network.

specifically for their own use.  They also prepared a product demonstration for

Cox executives.  (Hummel Decl., ¶ 18, Ex. I.)

- In June 2012, Defendant said to Cox, "I believe we can do some great things

  together," and indicated that Defendant had been providing Cox's server with

  updates.  Defendant suggested that they have a phone call to discuss next steps

  for the business opportunity.  (Hummel Decl., ¶ 18, Ex. I.)

On September 6, 2013, Defendant served amended responses to written

discovery, despite the fact that it was under a Court order to produce all such

documents one month earlier.  (Hummel Decl., ¶ 23, Exs. N and O.)  In sum,

Defendant produced nearly 400 pages of highly relevant, responsive documents

*after* the Earle deposition, thereby depriving Plaintiffs of the opportunity to

examine Mr. Earle on those documents, including Defendant's year-long

relationship with Cox.

## III.   ARGUMENT

### A.   This Court Has Personal Jurisdiction Over Defendant

Plaintiffs have satisfied their burden to establish a prima facie case of

personal jurisdiction.  *See Stubbs v. Wyndham Nassau Resort & Crystal Palace

Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).  As such, Defendant, in moving to

dismiss, bears the burden of proving lack of personal jurisdiction.  *See Aero Toy*

*Store, LLC v. Grieves*, 279 Ga. App. 515, 523 (2006), *citing Robertson v. CRI, Inc.*, 267 Ga. App. 757, 757 (2004).  Defendant's conclusory assertions in support of its Motion are not sufficient to shift the burden back to Plaintiffs.  *See Stubbs*, 447 F.3d at 1360.  Indeed, any disputes of fact must be resolved in favor of Plaintiffs, as the parties asserting the existence of personal jurisdiction.  *Id., citing Htl Sp. Zo.O v. Nissho Corp.*, 245 Ga. App. 625, 626 (2000).

Mr. Earle's declaration includes no less than four assertions that discovery has revealed to be misleading or  false.  The Supplemental Earle Declaration, which attempts to remedy the most egregious inaccuracies serves as an admission that is virtually dispositive of the instant Motion, as it provides the true fact that Defendant has in fact contracted with a major Georgia company and, in those agreements, consented to Georgia law and venue.  All of these disputes of fact should be construed in favor of finding jurisdiction.  *Id*.  Defendant has failed to meet its burden to prove that this Court lacks personal jurisdiction.

## 1.   The Georgia Long-Arm Statute Confers Jurisdiction Over Defendant

All Plaintiffs need to establish is that Defendant "transacts any business" within the State of Georgia, interpreted by the Eleventh Circuit as requiring the nonresident defendant to purposefully do some act or consummate some transaction in Georgia.  *See Diamond Crystal Brands, Inc. v. Food Movers Intern.,*

*Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010) (upholding the decision to deny defendant's motion to dismiss for lack of personal jurisdiction).  In *Diamond Crystal*, the Eleventh Circuit clarified and broadened the reach of Georgia's long-arm statute by stripping away limitations not expressly contained in the statute.  *Id.* at 1257.  Foremost, a defendant need not even physically enter the forum state.  Instead, a non-resident's "intangible acts" including mail and telephone calls must be considered to determine if it transacted business in Georgia.  *Id.* at 1264, *citing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames,* 620 S.E.2d 352, 355 (2005) ("We hereby overrule all prior cases that fail to accord the appropriate breadth to the construction of the "transacting any business" language of [the Georgia long-arm statute].")  Here, Defendant has made substantial contacts in Georgia such that it has transacted business for purposes of the long-arm statute.

Defendant has an interactive website that is accessible to Georgia residents.[6] Defendant's website allows users not only to learn about its service, but to log on and immediately download Defendant's service for use on their wireless device or computer.  (Earle Decl., ¶ 12; Hummel Decl., ¶ 8, Ex. C.)  Defendant's records

---

[6] While Defendant classifies its own website as "passive," it clearly does not satisfy the definition of that term supplied in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (a passive website is one "where a defendant has simply posted information" and "does little more than make information available to those who are interested").

reflect users of its direct subscription service in the State of Georgia.  (Earle Depo., 68:9-69:23.)  And admittedly, Defendant has numerous other direct subscribers in Georgia that it does not track.  (*Id.*)  Similarly, Defendant has indirect service users in Georgia[7] (Defendant's Response to Rog. No. 2), and countless more that it is unable to quantify.[8]  (Earle Depo., 69:24-70:4.)

Similar websites have been found to be doing business over the Internet, subjecting them to a state's long-arm statute.  *See, e.g., Zippo*, 952 F. Supp. at 1122 (The defendant's website allowed subscribers to fill out an online application, receive a password and view and/or download news stored on the defendant's server.  Evidence showed the defendant's website had direct subscribers, **2%** of which were residents of the forum state, and indirect subscribers due to agreements with seven internet access providers in the forum state.); *see also Compuserve, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996) (an individual entered into a contract to distribute shareware [allowing him to download and use it free for a trial period

---

[7] The only evidence of the number of indirect users in Georgia from any of Defendant's licensees came from ██████, which showed ██% of its total users were in Georgia.  (Defendant's Responses to Rog. No. 2).

[8] Further evidencing Defendant's willful ignorance is the fact that although Mr. Earle admitted sending an email to Google asking for the number of indirect service users in Georgia, he never followed up when he failed to receive a response, even though he admitted having many contacts at Google.  (Earle Depo., 70:13-72:4.)

before a fee is requested] through the plaintiffs' server in the forum state, and electronically uploaded 32 software files to that server.  Knowingly entering into a contract with a forum resident and then deliberately and repeatedly transmitting files to the forum state subjected the defendant to personal jurisdiction, even if the contract yielded little revenue.)

Moreover, Defendant has licensees who have locations in Georgia and are registered to do business in Georgia.  (Hummel Decl., ¶¶ 26-27, Exs. Q, R and S.) One of Defendant's principal investors is registered to do business in Georgia. (*Id.*; Earle Depo., 79:17-21.)  Defendant focuses its marketing efforts nationwide, with all marketing equally available in Georgia.  (Earle Depo., 37:25-38:14.) Defendant's service is available on Google TV, which, according to Defendant, "has shipped to over one million consumers, all of whom have access to 'aioTV' upon activation of the TV…."  (Colorado Complaint, ¶ 18.)  Defendant admits that Google TVs are used by consumers in Georgia.  (Earle Depo., 88:22-89:7.) Defendant attended a trade show in Georgia with the specific intention of learning how cable operators in that area viewed the over-the-top market.  (Earle Depo., 27:8-28:5.)  Defendant negotiated and entered not one but two contracts within Georgia, namely with Cox.  Defendant engaged in protracted and detailed communications with Cox over the course of one year between July 2011 and the

end of June 2012.  Defendant installed a branded trial system at Cox and gave several demos to Cox employees, including Cox executives.  Defendant and Cox had numerous telephone calls, WebEx meetings, and at least one in-person meeting.  Defendant and Cox entered the NDA and the Agreement, both of which indicated Georgia as a possible forum for disputes.  (Hummel Decl., Exs. J and P.)

Such contacts with Georgia, when taken as a whole, should satisfy the requirements of Georgia's long-arm statute and confer personal jurisdiction over Defendant.  *See Aero Toy Store*, 279 Ga. App. at 523 (finding that the defendant transacted business in Georgia based on its operation of an "interactive website through which it has reached out to, and done business with, persons in Georgia"); *see also See Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 628 (11th Cir. 1996) (although the defendant's sales efforts were sporadic and the revenue generated therefrom was relatively insignificant, the court concluded that her marketing efforts, viewed collectively, qualified as a general course of business in Florida); *see Kim v. Keenan*, 71 F. Supp. 2d 1228, 1234 (M.D. Fla. 1999) (active internet solicitation is a means of establishing personal jurisdiction), *citing Zippo*, 952 F. Supp. at 1124.

Although Defendant argues its website does not suffice to confer long-arm jurisdiction, the cases it cites are factually distinct.  *See e.g., Jordan Outdoor*

*Enter., Ltd. v. That 70's Store, LLC*, 819 F. Supp. 2d 1338 (M.D. Ga. 2011) (although Georgia residents accessed the defendant's website, **no sales over internet were ever made in Georgia**); *see also Barton S. Co., Inc. v. Manhole Barrier Sys., Inc.*, 318 F. Supp. 2d 1174, 1177-78 (N.D. Ga. 2004) (defendants had **20 customers, none in Georgia, never received a purchase order from anyone in Georgia, and never received email from, or sent email to Georgia**).

Here, Defendant admittedly has numerous direct and indirect subscribers in Georgia.[9] (Earle Depo., 61:10-23.)  Defendant makes money in the form of advertising revenue and license fees associated with those subscribers.[10] (Earle Decl., ¶¶ 12 and 14.)  Defendant entered contracts with Cox, which created ongoing obligations.  Defendant has much more than a mere web presence in Georgia and should be subject to jurisdiction here.

---

[9] The fact that Defendant and its licensees do not track the geographic location of their users of Defendant's service and thus cannot give an exact count, or even a close estimation, of the number of users in Georgia only further proves that Defendant cannot meet its burden to show lack of jurisdiction. *See Aero Toy Store*, 279 Ga. App. at 523.  Defendant's willful ignorance cannot carry the day.  The evidence shows there are numerous users in Georgia.  Any disputes of fact must be construed in favor of the party asserting personal jurisdiction. *Id.*

[10] Although Defendant points to a total of $█████ in advertising revenue in 2012 and 2013 to date, Defendant also discloses that it is projected to generate $1.5 million in revenues in 2013. (Earle Declaration, ¶ 21.)  Mr. Earle testified that license fees constitute more than 90% of Defendant's revenue. (Earle Depo., 47:9-23.)

### 2.    Due Process Is Satisfied In This Case

The Due Process Clause protects defendants from being subjected to litigation in forums where they have established no meaningful "contacts, ties, or relations." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), *citing International Shoe Co v. Washington*, 326 U.S. 310, 319 (1945).  Due to Defendant's Georgia users and year-long communications and contracts with a Georgia company including Georgia forum selection provisions, it cannot be credibly argued that Defendant has established no meaningful "contacts, ties, or relations" in Georgia.  Furthermore, the Court's exercise of personal jurisdiction over this Defendant comports with "fair play and substantial justice." *See International Shoe*, 326 U.S. at 320.

### a.    Defendant Has Sufficient Minimum Contacts with Georgia

While Due Process dictates that Defendant's contacts with Georgia may give rise to *either* general or specific jurisdiction, both exist here.

#### (i)    *The Court Has General Jurisdiction*

When a cause of action does not arise out of or relate to the foreign defendant's activities in the forum state, Due Process is not offended by a state's subjecting the corporation to personal jurisdiction when there are sufficient contacts between the state and the foreign defendant.  *See Perkins v. Benguet*

*Consolidated Mining Co.*, 342 U.S. 437 (1952) (general jurisdiction over a foreign corporation was proper when continuous and systematic, but limited, company business had been carried on by its president in the forum state); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-780 (1984) ("Respondent produces a national publication aimed at a nationwide audience.  There is no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed.")

While Defendant argues that courts are reluctant to find general jurisdiction based on internet contacts only, the evidence shows that Defendant has much more than a mere internet presence in Georgia.  Defendant cites *Imageline, Inc. v. Fotolia LLC*, 663 F. Supp. 2d 1367, 1374 (N.D. Ga. 2009) as an example of where a court refused to exercise jurisdiction over a website operator who makes its website available worldwide.  In *Imageline*, the defendant proffered evidence that 1.9% of its registered users lived in Georgia, and "1,706-less than one percent" of their total users nationwide maintained active accounts in Georgia to or from which they had uploaded or downloaded at least one digital image.  They had $16 in revenue from Georgia.  *Id.* at 1371-72.  Defendant's contacts in Georgia are more pervasive than the mere web presence in *Imageline*.  Defendant admittedly has Direct and Indirect Users in Georgia, the quantity of which cannot be

determined, but is certainly not small given the stated success of Google TV with over one million customers.  Defendant receives revenue from advertising and license fees due to users of its services, including those in Georgia.  While Defendant cannot state how much is due to Georgia, Defendant stands to make nearly $1.5 million mostly due to license fees this year.  Notably, Defendant's users in Georgia are not obtaining one-off products but enjoy the ability to stream content aggregated and curated by Defendant directly to their mobile devices or personal computers whenever and as often as they want.  As such, Defendant provides an ongoing service to its users.  (Earle Depo., 24:20-25:9; 26:6-27:1.) Defendant cannot deny that it purposefully derives benefit from Georgia citizens. In such circumstances, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474.

Defendant argues that the only possible basis for general jurisdiction is the existence of its website.  Yet, Defendant entered two contracts with a Georgia company, one of which was governed by Georgia law and in the other Defendant agreed to arbitrate any dispute in either Georgia or Colorado.  These contracts created a relationship and continuing obligations on behalf of both parties.  The Cox lab trial of Defendant's service required Defendant to access Cox's server

using VPN and install the service.  The Agreement between those parties obligated

Defendant to provide Cox with ongoing support.  (Hummel Decl., Ex. J.)  In

furtherance of this relationship, Defendant updated Cox's server for six months

*after* Defendant suggests the Agreement expired.  (Hummel Decl., ¶ 18, Ex. I.)

The NDA executed by the same parties had a three-year term, except for trade

secrets, which were required to be kept in confidence as long as the information

was considered a trade secret.  (Hummel Decl., Ex. P.)  The undisputed evidence

shows Defendant has reached out beyond the State of Colorado and created

continuing relationships with, and obligations to, citizens of Georgia such as its

users and Cox.  These actions should subject Defendant to jurisdiction in Georgia.

*See Burger King*, 471 U.S. at 473.

<div align="center">(ii)   <em>Specific Jurisdiction Is Also Present</em></div>

Defendant claims that it owns trademark rights nationwide due to its use of

the "aio" mark on its streaming video service.  (Colorado Complaint, ¶¶ 12-13.)

Mr. Earle admitted that Defendant's service is available in Georgia in three ways –

Google TV, computers, and wireless devices.[11]  As such, the very service at issue

---

[11] Plaintiffs hired an investigator to examine the accessibility of Defendant's service in Georgia.  The investigator easily established a user account and was able to view content using Defendant's service while in Georgia.  He found no restrictions or limits on Defendant's service in Georgia.  (Hummel Decl., Ex. C.)

in this litigation is regularly and systematically available in Georgia.

The claims in this lawsuit grew out of Defendant's purposeful attempts to create nationwide trademark rights, including in the State of Georgia, such that Defendant reasonably should have anticipated being subject to jurisdiction here.[12] Defendant "purposefully availed" itself of the privilege of conducting activities in Georgia.  Indeed it admitted as much in its Colorado Complaint when it alleged, "[Defendant's] 'aio' brand is a strong, inherently distinctive brand in the wireless marketplace or has acquired secondary meaning[13] among the relevant trade and public as identifying [Defendant's] wireless services." (Colorado Complaint, ¶ 19.)  When asked whether Defendant asserts its "aio" brand is strong or has acquired secondary meaning in Georgia, Mr. Earle answered in the affirmative. (Earle Depo., 50:2-9.)  The claims in this lawsuit arise from Defendant's efforts to garner nationwide recognition of its brand, including in Georgia.

Mr. Earle confirmed the same in his deposition.  (Earle Depo., 31:5-32:1; 32:17-24.)

[12] Again, Plaintiff does not concede that Defendant owns trademark rights in "aio" in any geographic region.

[13] Notably, the only way that a trademark can acquire secondary meaning in a geographic market is by such continuous and pervasive use in that area that consumers have come to associate the mark with its owner. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980); *see also Field Enterprise Educational Corp. v. Cove Industries, Inc.*, 297 F.Supp 989, 994-95 (E.D.N.Y. 1969) (long and continuous use (52 years), widespread sales, and large sums of money spent on advertising support a finding of secondary meaning).

A **sufficient nexus** exists between Defendant's contacts with Georgia and this litigation. Defendant claims it built a brand with nationwide trademark rights, and that it owns trademark rights over the "aio" brand in Georgia. Defendant, however, has no federal trademark registration, and thus must establish its nationwide claim through common law trademark rights, which are not automatic. Under the common law, trademark rights are appropriated only through actual prior use in commerce. *United States v. Steffens,* 100 U.S. 82, 25 L.Ed. 550 (1879). Such use must be continuous to retain a protectable interest in a mark. *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022-23 (11th Cir. 1989). Geographic considerations are particularly relevant where a party alleges only common law rights in a mark because it is well-established that **the scope of protection accorded a mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade**. *See Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010). If Defendant did enough business to argue it has gained common law trademark rights in Georgia, there is a sufficient nexus between Plaintiffs' lawsuit and Defendant's actions in this state.

Further, Defendant has **purposefully availed itself** of the privilege of conducting activities in Georgia. Where a non-resident defendant has deliberately engaged in significant activities within a state or has created continuing obligations

between itself and residents of the forum, it has availed itself of the privilege of conducting business in that state. *See Burger King*, 471 U.S. at 476. Where a foreign defendant "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Zippo*, 952 F.Supp. at 1124. So should it be the case here. As long as it creates a substantial connection with the forum state, "even a single act can support jurisdiction." *Id.* at 1127, *citing McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957).

Defendant argues that the only allegation supporting personal jurisdiction is one that imputes the activities of third parties to Defendant. Not so. To support its argument, Defendant cites to *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (the court held Due Process forbids exercise of personal jurisdiction over a trustee whose only connection with the forum resulted from the settlor's decision to exercise her power of appointment there). Jurisdictional discovery has shown that this is not an instance of unilateral activity of another party over which Defendant has no knowledge or control.[14] Instead, this is an example of willing, mutually

---

[14] Despite Mr. Earle's Declaration to the contrary, he testified in his deposition that Defendant *does* have knowledge over where its licensees offer the service, and further that it could negotiate where it was offered, if it wanted. (Earle Depo., 60:1-18.)

beneficial partnerships entered into because Defendant wanted to tap into its licensees' current, nationwide customer base. Defendant touts the strength of its trademark based on the availability of its service through licensees such as Google in order to argue it has nationwide trademark rights, including in Georgia. It cannot be heard in the same breath to disavow any knowledge or control over where those licensees do business to avoid jurisdiction in Georgia.

Finally, because Defendant has affirmatively worked to familiarize Georgia citizens with its brand such that it claims to own common law trademark rights in Georgia, it should **reasonably anticipate** having to enforce those purported rights in a Georgia court. This venue should be all the more foreseeable since, in its efforts to build trademark rights, Defendant reinforced its deliberate affiliation with Georgia by entering two contracts with a Georgia resident that provided Georgia venues would govern any dispute. Although the contracts with Cox do not directly relate to the instant litigation, the choice of law provisions therein, combined with all other evidence of Defendant's conduct, show its purposeful connection to the forum. *Burger King*, 471 U.S. at 482.

        b.    <u>Jurisdiction Over Defendant Comports With Fair Play and Substantial Justice</u>

Where a defendant who has purposefully directed its activities at forum residents seeks to defeat personal jurisdiction, it must present a compelling case

that the presence of other considerations render jurisdiction unreasonable. *Id.* at

477. Defendant's case is not so compelling.

Mr. Earle broadly asserts in his declaration that litigating in Georgia would

be burdensome in that Defendant's documents and witnesses are in Colorado.

(Earle Decl., ¶¶ 18 and 20.) However, it is an inescapable fact of modern business

that much can be accomplished by email, telephone, teleconference and online.

Indeed, Defendant's own documents show the ease at which it can conduct

business in Georgia. Defendant can exchange documents and data via the Internet.

Defendant utilizes WebEx in its daily operations, which provides online meeting,

web conferencing and videoconferencing capabilities. (Hummel Decl., ¶ 18, Ex.

I.) Of the ■ licensees disclosed by Defendant, none of these business associates

are Colorado companies, whereas many are international. (Earle Depo., 62:1-

65:5.) This is not a hardship that justifies denying jurisdiction.

Defendant argues that Plaintiffs have superior financial resources.

Nonetheless, absent compelling considerations, "a defendant who has purposefully

derived commercial benefit from his affiliations in a forum may not defeat

jurisdiction there simply because of his adversary's greater net wealth." *Id.* at 484.

Finally, Defendant argues – illogically – that the instant dispute involves

Colorado law. Nonetheless, minimum contacts analysis presupposes that more

than one state may be interested in the outcome of a dispute.  The process of resolving competing state interests can be accommodated through choice-of-law rules rather than outright preclusion of jurisdiction in one forum.  *Id.*

At bottom, Defendant has failed to demonstrate how jurisdiction in this Court would be fundamentally unfair.

### B.     Venue In This Court Is Proper

This is a trademark case wherein Defendant claims to have inundated the citizens of Georgia with the "aio" brand until they associate the mark with Defendant.  *See Tana*, 611 F.3d at 780.  As such, "a substantial portion of the events giving rise to Plaintiffs' claims occurred herein." (Complaint, 11.)  For that reason and because Defendant is subject to personal jurisdiction, venue is proper.

### C.     Transfer to Colorado Is Unnecessary And Improper

Defendant argues that the Court should alternatively transfer this case to the District of Colorado.  However, the first-filed rule applies here and courts, including those in the Eleventh Circuit, recognize and follow the first-filed rule whether or not the first-filed action is declaratory in nature.  *See Manuel v. Convergys Corporation*, 430 F.3d 1132, 1135 (11th Cir. 2005); *see also Ottlite Technologies, Inc v. Verilux, Inc.*, 2010 U.S. Dist. LEXIS 2990 (M.D. Fla. 2010); *Genentech, Inc. v. Eli Lilly and Company*, 998 F.2d 931, 937 (Fed. Cir. 1993).  The

party objecting to jurisdiction in the first-filed forum must prove "compelling circumstances" exist to warrant an exception to the first-filed rule. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).

Defendant argues Plaintiffs filed the instant action in anticipation of the Colorado Complaint. They did no such thing. (Hummel Decl., ¶ 2.) However, even if a court finds a declaratory judgment action anticipatory, such a finding "does not transmogrify into an obligatory rule mandating dismissal." *See Manuel*, 430 F.3d at 1135. It is but one equitable factor among many, and the matter remains at the sound discretion of the trial court. *Id*. at 1137.

Since this Court was "initially seized" with the controversy regarding the parties' respective rights to use the term "aio," this Court should decide Plaintiffs' case. *See Merrill-Lynch*, 675 F.2d at 1174. Aio Wireless is headquartered in this District, and its witnesses and documents almost all are here; accordingly, Plaintiffs' choice of forum should be respected.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that Defendant's Motion be denied in its entirety.

Respectfully submitted,

Dated:  September 16, 2013

/s/ William H. Brewster
William H. Brewster
Georgia Bar No. 080422
Kilpatrick Townsend & Stockton
1100 Peachtree Street, Ste. 2800
Atlanta, Georgia  30309
Telephone:  (404) 815-6500
Facsimile:   (404) 815-6555
Email:        bbrewster@kiltown.com

Of Counsel:

Darren W. Saunders, Esq. (Pro Hac Vice to be filed)
Linda A. Goldstein, Esq. (Pro Hac Vice to be filed)
Manatt, Phelps & Phillips LLP
7 Times Square
New York, New York 10036
Telephone:  (212) 790-4500
Facsimile:   (212) 790-4545
Email:        dsaunders@manatt.com
Email:        lgoldstein@manatt.com

Chad S. Hummel, Esq. (Pro Hac Vice to be filed)
Manatt, Phelps & Phillips LLP
11355 W. Olympic Blvd.
Los Angeles, California 90064
Telephone:  (310) 312-4000
Facsimile:   (310) 312-4224
Email:        chummel@manatt.com

*Attorneys for Plaintiffs*
**AT&T INTELLECTUAL PROPERTY II, L.P. and AIO WIRELESS LLC**

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing was typed in Times New Roman 14 point font with a top margin of 1.5 inches in accordance with Rule 5.1 of the Local Rules of this Court.

<div style="margin-left:40%">

s/William H. Brewster
William H. Brewster
Georgia Bar No. 080422
Kilpatrick Townsend & Stockton
1100 Peachtree Street, Ste. 2800
Atlanta, Georgia  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
Email:        bbrewster@kiltown.com

</div>

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 16, 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will

automatically send e-mail documentation for such filing to the attorneys of record.

                                             s/William H. Brewster
                                             William H. Brewster
                                             Georgia Bar No. 080422
                                             Kilpatrick Townsend & Stockton
                                             1100 Peachtree Street, Ste. 2800
                                             Atlanta, Georgia  30309
                                             Telephone:  (404) 815-6500
                                             Facsimile:  (404) 815-6555
                                             Email:        bbrewster@kiltown.com