UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AT&T INTELLECTUAL PROPERTY II, L.P., and AIO WIRELESS LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>AIOTV, INC.<br><br>*Defendant.* | § Civil Action<br>§ No. 1:13-cv-1901-JOF<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## DECLARATION OF CHAD S. HUMMEL

COMES NOW Chad S. Hummel, Esq., who makes the following declaration pursuant to 28 U.S.C. § 1746:

1.  My name is Chad S. Hummel. I am over the age of 21 and am competent to give testimony. I am a partner at Manatt, Phelps & Phillips, LLP, and am counsel for Aio Wireless LLC ("Aio Wireless") and AT&T Intellectual Property II, L.P. ("AT&T") (collectively, "Plaintiffs") in this action. I have personal knowledge of the facts stated in this declaration, and the facts are provided in support of Plaintiffs' Opposition to Defendant aioTV, Inc.'s

("Defendant") Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and (b)(3) Or, Alternatively, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Defendant's Motion").

2. On June 6, 2013, Plaintiffs filed this action in the Northern District of Georgia seeking a declaratory judgment that Plaintiffs' use of "Aio Wireless" and "Aio" for prepaid cellular services does not infringe Defendant's alleged common law trademark rights in "aio" for television streaming services following the receipt of two cease and desist letters from Defendant.

3. Before selecting this forum, my office on behalf of Plaintiffs conducted an inquiry into Defendant's business and determined that the nationwide distribution and use of Defendant's television streaming service constituted sufficient activity within the State of Georgia such that this Court has personal jurisdiction over Defendant.

4. On June 11, 2013, Defendant filed a Verified Complaint in the District of Colorado wherein Defendant claimed nationwide trademark rights in the term "aio" due to pervasive use and advertisement of its television streaming services. (the "Colorado Complaint"). The Colorado Complaint was verified by Defendant's CEO Michael Earle. A true and correct copy of the Colorado Complaint is attached hereto as **Exhibit A**.

5. On July 3, 2013, Defendant filed a motion to dismiss under, *inter alia*, Rule 12(b)(2). In support of its Motion, Defendant submitted the declaration of Mr. Earle ("Earle Declaration") dated July 1, 2013.

6. On July 12, 2013, my office on behalf of Plaintiffs requested leave to conduct limited jurisdictional discovery prior to responding to Defendant's Motion.

7. On July 16, 2013, the Court granted Plaintiffs' request for limited jurisdictional discovery prior to responding to Defendant's Motion. The Court ordered Defendant to respond to Plaintiffs' Interrogatories and Document Requests within 21 days from the date of the Order – no later than August 6, 2013. A true and correct copy of the Court's July 16, 2013 Order is attached hereto as **Exhibit B**.

8. In July 2013, my office retained Southeast Private Investigators, LLC, located in Loganville, Georgia to investigate the accessibility of Defendant's services in the State of Georgia. The investigator, Scott Strump, provided a report of his investigation, which I read. I understand from Mr. Strump's report that he was able to access Defendant's television streaming service in three ways. First, Mr. Strump created a user account through Defendant's website at htt://aio.tv/portal/home.php. This was done from a desktop computer in

Loganville, Georgia. Mr. Strump was able to create the account simply by entering a user name, password and an email address. Second, Mr. Strump was able to access Defendant's service on an Apple iPhone in Loganville. Third, Mr. Strump accessed Defendant's service through GoogleTV on a television in Loganville. Mr. Strump reported that he experienced no restrictions, limitations or other issues in accessing Defendant's services in Georgia, from which he concluded that any resident from the State of Georgia can access and view Defendant's television streaming services. A true and correct copy of Mr. Strump's investigative report is attached hereto as **Exhibit C**.

9. On August 6, 2013, Defendant served responses to written discovery. A true and correct copy of Defendant's Responses to Plaintiffs' First Set of Interrogatories is attached hereto as **Exhibit D**.

10. A true and correct copy of Defendant's Responses to Plaintiffs' First Set of Requests for Documents and Things is attached hereto as **Exhibit E**.

11. Also on August 6, 2013, Defendant produced 527 pages of documents. I personally reviewed the documents. The vast majority (approximately 447 pages) consisted of Excel spreadsheets listing users of Defendant's service identified only by numbers.

12.     On August 22, 2013, I took the deposition of Mr. Earle. True and correct copies of pertinent portions of the certified transcript of Mr. Earle's deposition are attached hereto collectively as **Exhibit F**.

13.     During Mr. Earle's deposition, I learned for the first time that Defendant had corresponded with Cox Communications, Inc. ("Cox") in Atlanta, Georgia. During the deposition, I asked Defendant's counsel to produce email exchanges with Cox.

14.     On August 30, 2013, I followed up on my request that the Cox emails be produced by way of an email to Defendant's counsel Ed Lyons and Dan Wartell. A true and correct copy of my August 30, 2013 email is attached hereto as **Exhibit G**.

15.     On September 3, 2013, Mr. Lyons advised me via email that Defendant had inadvertently failed to produce the Cox communications and needed to supplement its written discovery responses to disclose an agreement entered between Defendant and Cox. He also stated that Defendant intended to file a motion requesting leave to file a Supplemental Declaration of Mr. Earle to reflect the existence of Defendant's agreement with Cox and asked me whether Plaintiffs would stipulate to Defendant's filing of a Supplemental Declaration. A true and

correct copy of Mr. Lyons' September 3, 2013 email is attached hereto as **Exhibit H**.

16.     Also on September 3, 2013, Defendant produced 382 pages of email communications with Cox.

17.     I reviewed the documents produced on September 3, 2013. The newly produced documents constituted communications between Defendant and Cox between July 2011 and June 2012. True and correct copies of pertinent portions of Defendant's document production are attached hereto collectively as **Exhibit I**.

18.     The Cox correspondence documents reflected:

- In July 2011, Defendant and Cox discussed having Defendant install a branded trial system on Cox hardware. [AIOTV000910]
- In August 2011, representatives of Defendant and Cox attended an in-person meeting where Defendant's representative gave Cox representatives a demonstration of the aioTV platform. [AIOTV000909]
- The parties then executed a non-disclosure agreement ("NDA") and exchanged drafts of the Agreement. [AIOTV000898]
- In October 2011, Defendant and Cox executed a "trial" license agreement ("Agreement"). [AIOTV000854-861]
- In November 2011, Cox began lab testing of the aioTV platform and worked with Defendant to install aioTV on the Cox lab server. In

order to do so, Defendant had to access the Cox system via virtual private network ("VPN"). [AIOTV000834; AIOTV000820-823; AIOTV000770-780]

- Between December 2011 and February 2012, Defendant and Cox had several calls and WebEx meetings where Defendant assisted Cox to simulate a back-end administrator account for Cox-specific content and set up a channel specifically for their own use. They also prepared for a product demonstration for Cox executives. [AIOTV000547-571; AIOTV000545; AIOTV000543-544; AIOTV000539-542]
- Between January and March 2012, Cox tested Defendant's service in its lab and Defendant continued to provide updates and enhancements of its service directly to Cox's server. [AIOTV000532-534]
- In June 2012, Defendant said to Cox, "I believe we can do some great things together," and indicated that Defendant had still been providing Cox's server with updates. Defendant suggested that they have a phone call to discuss next steps for the business opportunity. [AIOTV000528-529]

19. Additionally, Defendant produced Agreement that it entered with Cox. A true and correct copy of the Agreement, assigned production numbers AIOTV000911-917, is attached hereto as **Exhibit J**.

20. On September 5, 2013, Defendant sent a correction page relating to Mr. Earle's deposition, which Mr. Earle executed on September 4, 2013. Therein,

Mr. Earle changed his answer to the question: "Did AIOTV have any contracts with any Georgia companies?" from "No" to "aioTV had a three-month 'Trial Agreement' with Cox Communications that expired in January 2012 and resulted in no income to aioTV." A true and correct copy of the correction page and cover email is attached hereto as **Exhibit K**.

21. On September 5, 2013, at my direction Jessica Slusser of my office sent an email to Mr. Lyons requesting that Defendant produce the NDA, as it was responsive to document requests yet had not been provided. A true and correct copy of Ms. Slusser's September 5, 2013 email is attached hereto as **Exhibit L**.

22. On September 6, 2013, counsel for Defendant Aaron Goldhamer contacted me via email to ask Plaintiffs' position on a motion for leave to file a Supplemental Declaration of Mr. Earle. I responded that Plaintiffs could not take a position until we saw the proposed Supplemental Declaration. In response, Mr. Goldhamer sent the proposed Supplemental Declaration of Mr. Earle, executed that same day. A true and correct copy of my September 6, 2013 email exchange with Mr. Goldhamer, and the proposed Supplemental Declaration of Mr. Earle is attached hereto collectively as **Exhibit M**.

23. Also on September 6, 2013, Defendant served amended responses to written discovery. A true and correct copy of Defendant's Amended Responses to Plaintiffs' First Set of Interrogatories is attached hereto as **Exhibit N**.

24. A true and correct copy of Defendant's Amended Responses to Plaintiffs' First Set of Requests for Documents and Things is attached hereto as **Exhibit O**.

25. Additionally, on September 6, 2013, Defendant produced the NDA. A true and correct copy of the NDA executed between Defendant and Cox dated August 11, 2011 is attached hereto as **Exhibit P**.

26. A true and correct copy of a printout of publicly available information from the Georgia Secretary of State website for ▮▮▮▮▮▮▮ is attached hereto as **Exhibit Q**.

27. A true and correct copy of a printout of publicly available information from the Georgia Secretary of State website for Google, Inc. is attached hereto as

**Exhibit R.**

28. A true and correct copy of a printout of publicly available information from the website www.google.com is attached hereto as **Exhibit S**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of September, 2013.
Los Angeles, California

_____
CHAD S. HUMMEL