# EXHIBIT A
# PART 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

aioTV Inc.,

        Plaintiff,

v.

Aio Wireless, LLC,

        Defendant

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

For its verified complaint against Defendant, Plaintiff states and alleges as follows:

### INTRODUCTION

This is an action for trademark infringement and unfair competition in which Plaintiff seeks injunctive relief to terminate Defendant's infringement of Plaintiff's "aio" trademark for wireless services, together with damages, restitution and other legal and equitable relief. The action is brought under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1025(a), and Colorado law.

This action arises because Defendant, a subsidiary of AT&T, Inc., recently usurped Plaintiff's trademark by changing Defendant's corporate name to "Aio" and launched an aggressive advertising and marketing campaign of an "aio

{JK00487765.1 }

wireless" service that infringes and completely appropriates Plaintiff's previously established "aio" trademark.

## PARTIES

1. Plaintiff is a corporation organized and existing under the laws of the State of Colorado with its principal place of business in Centennial, Colorado.

2. Upon information and belief, Defendant is a Delaware limited liability company having its principal place of business in Atlanta, Georgia. It is authorized to do business and maintains a registered agent for service of process in Colorado.

## JURISDICTION AND VENUE

3. This action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and supplemental Colorado law.

4. This Court has subject-matter jurisdiction over Plaintiff's Lanham Act claim pursuant to 28 U.S.C. §§ 1331and 1338 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. This Court also has subject matter jurisdiction over all claims in this action pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

6. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant has transacted business in Colorado and

intentionally engaged in tortious activities that are purposely and expressly aimed at Colorado, which is Defendant's domicile and the focal point of the torts, with knowledge that the brunt of the injury from those activities would be felt in Colorado, and Plaintiff's claims in this action arise out of those business activities and forum-related torts and injuries to Plaintiff.

7.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is subject to the Court's personal jurisdiction with respect to the present civil action and is therefore deemed to reside in this judicial district, and also because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## GENERAL ALLEGATIONS
(Applicable to all Claims for Relief)

8.     Plaintiff is the developer and owner of a "cloud-based" software service which it markets to customers in Colorado and throughout North America under the distinctive "aio" (pronounced "A-O") trademark, used alone and along with multiple suggestive and descriptive terms, including "aioTV," "MYaio," "aioCloud," "aioPro," and "aioBasic."  A copy of Plaintiff's news release announcing the products using these trademarks is attached hereto as Exhibit 1.

9.     Plaintiff's "aioTV" service aggregates multiple sources of video content from a variety of sources such as network and cable television

programming, movies, YouTube®, hulu®, vimeo®, and similar providers of free video content on the Internet and delivers it via a unified portal, providing wireless mobile device and personal computer users having an Internet connection with a unique "television-like" viewing experience.

10.     Michael Earle, who is now Plaintiff's CEO, conceived the idea for "aioTV" in 2009 and financed its early development out of his own funds.

11.     When Plaintiff was incorporated, Mr. Earle and others who worked on the project contributed their rights in the "aio" intellectual property and related assets to Plaintiff in exchange for shares of the company, and Plaintiff became the owner of all of the intellectual property associated with the "aio" trademark, including "aioTV" service.

12.     In January 2010 Plaintiff launched its "aioTV" website offering "aioTV" to the public, began marketing and selling "aioTV" in commerce, and has been using the "aio" trademark in commerce worldwide since that time.

13.     Plaintiff's "aioTV" service has experienced rapid success, widespread customer acceptance, and public recognition throughout the United States and Canada; it is widely installed on Apple ™ wireless devices, including iPhones ™, iPads ™ and iMac ™ personal computers, ANDROID ™ wireless devices, and IP television including the Google TV ™ platform.

14.    Plaintiff has two distinct customer groups: (a) consumers who subscribe to "aioTV" service to watch IPTV and other video content across multiple devices, and (b) industry customers such as Google TV and competitors of Defendant who pay Plaintiff license fees allowing them to offer the "aioTV" platform to their wireless phone and Internet customers.

15.    With respect to the first group of customers, "aioTV" service has experienced broad acceptance and rapid growth, increasing from approximately 1500 uses in January 2010 to more than 150,000 users today.

16.    With respect to the second customer group, for example, Plaintiff is in advanced stages of negotiations on distribution agreements with competitors of the Defendant in the wireless mobile device service marketplace.

17.    In addition, Plaintiff has a distribution agreement with Google whereby Google offers the "aioTV" service as a preferred service featured with Google TV.™

18.    The Google TV™ platform has shipped to over one million consumers, all of whom have access to "aioTV" upon activation of the TV, and sales of Google TV™ are anticipated to dramatically accelerate in the next year.

19.    Plaintiff's "aio" brand is a strong, inherently distinctive brand in the wireless marketplace or has acquired a secondary meaning among the relevant trade and public as identifying Plaintiff's wireless service.

20.     Upon information and belief, Defendant is a wholly owned subsidiary of AT&T Inc., the largest telecommunications service provider in the United States (both mobile and fixed), and the 17th largest company in the world.

21.     Upon information and belief, in late 2012 Defendant, which was formerly known as AT&T Communications America, LLC, changed its name and adopted Plaintiff's "aio" trademark as part of its company name, thereby identifying itself as the source of wireless services bearing that name.

22.     Upon information and belief, Defendant engaged a brand creation company located in Boulder, Colorado to develop a brand name suited for the mission of Defendant.  On further information and belief, the Boulder brand creation company suggested, and defendant adopted, the name "aio".

23.     On May 9, 2013, Defendant published a news release launching its "aio wireless" service, providing no-contract, pre-paid talk, text and data service to wireless device customers, first in Houston, Texas, and Orlando and Tampa, Florida, which was quickly expanded into Jacksonville and Gainesville, Florida, with an announced plan to extend the service throughout the United States over the next year.  A copy of Defendant's news release is attached hereto as Exhibit 2.

24.     Defendant's news release proclaims that "Aio (pronounced 'A-O')" is a brand name that "encapsulates" and uniquely describes its wireless services.

25.     Defendant thereby copied and misappropriated, and is willfully infringing, the "aio (pronounced 'A-O')" brand that Plaintiff has been using to distinguish its "aioTV" service since at least 2010.

26.     Also, on or about May 9, 2013, Defendant went live with a new website for its "aio wireless" service at www.aiowireless.com, a copy of which is attached hereto as Exhibit 3.

27.     The look and feel of Defendant's "aio wireless" website copied the look and feel of Plaintiff's "aioTV" website as it existed up until March 27, 2013, a copy of which is attached hereto as Exhibit 4.

28.     Defendant thereby copied and misappropriated, and is willfully infringing, the distinctive "aio" trademark Plaintiff has been using since at least 2010.

29.     Defendant's website states that its "aio wireless" service includes "My Aio", "Aio Basic," and "Aio Pro" brands as part of the service.

30.     Defendant thereby copied and misappropriated, and is willfully infringing, the "MYaio," "aioBasic," and "aioPro" brands Plaintiff has been using to identify its services since at least January 15, 2010.

31.     Defendant markets and sells its "aio" products and services in the same markets, through the same channels of commerce or trade, and to the same relevant customers as Plaintiff's customers.

32.    Defendant's infringing actions and false or misleading descriptions or representations of fact, are likely to cause confusion, and have already caused actual confusion, among actual and potential customers as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff.

33.    For example, on May 10, 2013 Matt Dannehl of Alcatel Lucent sent Mike Earle an e-mail titled "branching out?", including a copy of a portion of the AT&T May 9, 2013 press release and inquiring whether AIO and AT&T were connected. A copy of the e-mail correspondence is attached hereto as Exhibit 5.

34.    In addition, on or about May 14, 2013, one of Defendant's competing prepaid wireless service providers questioned Mike Earle, Plaintiff's CEO, and expressed concern about the apparent affiliation between Plaintiff and Defendant.

35.    Other customers of Plaintiff have expressed similar confusion and concern about whether Plaintiff has been taken over by Defendant or is now affiliated or otherwise somehow connected with Defendant.

36.    Upon information and belief, at least some if not all of those customers would not do business with Plaintiff if it was known to be connected with Defendant or AT&T.

37.    Defendant's press releases and aggressive and pervasive advertising campaign have resulted in identifying itself, rather than Plaintiff, as the authorized source of the "aio" brand in the minds of a large segment of the public.

38.    For example, before May 9, 2013, a search for the term "aio" on the Google Internet search engine displayed Plaintiff's "aioTV" among the top-ranked, first-page search results; however, after May 9, 2013, Defendant's "aio wireless" replaced Plaintiff's "aioTV" as a top-ranked search result and pushed "aioTV" off the first page to a much lower ranking.

39.    Plaintiff's exclusive right to use the "aio" brand in connection with wireless services was well known to Defendant before May 9, 2013.

40.    For example, after Plaintiff began offering its services under the "aio" brand in January 2010, it did an industry launch at the 2010 TelcoTV convention on November 9, 10 and 11, 2010, where Defendant's parent, AT&T had a substantial presence and one of its executives, Steven Wright, was a key note speaker on "IPTV Innovation, Investment, Standards and Interoperability."

41.    Plaintiff also demonstrated its "aioTV" services to Tom Sauer and Jeff Weber of AT&T in 2010, and had ongoing discussions about the service with Tom Sauer in 2010.

42.    Plaintiff's executives have presented at industry conferences and shared panels with AT&T executives at industry events from 2010 until the present time, including the Connected TVS Executive Breakfast on April 17, 2012 at the Renaissance Las Vegas Hotel, sponsored by Plaintiff and where GW Shaw, Assistant VP of U-verse, AT&T was featured speaker. A copy of the Connected TVS brochure is attached hereto as Exhibit 6.

43.    At no time has Defendant sought or received permission or license from Plaintiff to use the "aio" trademark.

44.    Accordingly, Defendant's unauthorized use of "aio wireless" can only be explained as a willful and bad faith infringement of Plaintiff's trademark undertaken with the intent to wrongfully appropriate Plaintiff's brand identification and identify Defendant as the authorized source of "aio" wireless services.

45.    Defendant's use of the brand "aio" for wireless service is likely to cause public confusion, and has already resulted in actual confusion, as to the source of "aio" branded services, falsely implies that "aioTV" and "aio wireless" are affiliated, and that "aioTV" approves of or sponsors "aio wireless" services.

46.    Upon noticing Defendant's unauthorized use of Plaintiff's trademark, on May 13, 2013, Plaintiff, acting through its attorney, sent a letter notifying AT&T of its infringement and requesting Defendant to cease such use, a copy of which correspondence is attached hereto as Exhibit 7.

47.    In response to that letter, on May 21, 2013, Plaintiff's attorney received a telephone call from Darren Saunders and Linda Goldstein of the New York law firm of Manatt, Phelps, & Phillips, who identified themselves as attorneys for AT&T and said they were conducting a preliminary review of the issues raised in the May 13, 2013 letter.

48.    AT&T's attorneys stated that Defendant had already spent a large sum of money on naming, launch and advertising of "aio wireless" and would not stop using the brand.  They suggested that Plaintiff should submit a different proposal to resolve the problem.

49.    On May 30, 2013, Plaintiff's attorney sent a second letter demanding that Defendant cease its use of the "aio" trademark, a copy of which is attached hereto as Exhibit 8.

50.    In response, on June 3, 2013 Plaintiff's attorney received another call from AT &T's attorneys named in paragraph 47 above, who reiterated the position that Defendant would not cease its use of the "aio" brand and said they would take the structure of a proposed business arrangement in settlement of the infringement up the chain at AT&T, but that due to AT&T's size and structure it would take some time before they could respond to Plaintiff's attorney.

51.    Defendant has thus refused to cease its unauthorized use of Plaintiff's trademark, thereby necessitating the present action.

52.     Plaintiff invested approximately $4,500,000 in the development and launch of its brand, and before Defendant interfered was beginning to reap the rewards of its investment, expanding revenues from $0 at the beginning of 2010 to $1,500,000 today, with projections of over $3 million in revenue for 2013, ramping aggressively to over $15 million in the following 12 months as the "aio" brand and product traction accelerates through sales to customers of Defendant's competitors already either signed or in final stages of contract negotiations.

53.     As a consequence of Defendant's wrongful conduct, Plaintiff has suffered, and will unless that conduct is enjoined by this Court will continue to suffer, great and irreparable loss, damage and injury to its business, reputation and the goodwill value of its "aio" trademark, for which monetary damages alone would not be an adequate remedy

54.     Plaintiff lacks the financial means to conduct the type of multi-million dollar remedial advertising campaign that would be required to counteract and attempt to repair the damage to its business, reputation and the goodwill value of its "aio" trademark that Defendant's wrongful conduct has caused and continues to cause.

## FIRST CLAIM FOR RELIEF
(Violation of Section 43(a) of the Lanham Act)

55.     The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

56.     Plaintiffs "aio" trademark is inherently distinctive or has acquired a secondary meaning among the relevant trade and public as identifying Plaintiff's wireless service.

57.     Defendant's unauthorized use of Plaintiff's "aio" trademark is likely to cause public confusion and deceive customers as to the affiliation, connection, and association of Defendant's services and Plaintiff, and/or as to the origin, or sponsorship, or approval by Plaintiff of Defendant's services.

58.     Defendant's unauthorized use of "aio" in connection with its wireless services constitutes trademark infringement, unfair competition, false designation of origin, and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) and Colorado law.

59.     Defendant's ongoing violations of Section 43(a) of the Lanham Act are committed knowingly, willfully, intentionally, and in bad faith.

60.     By reason of Defendant's acts as described above, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the

value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

61.     Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

62.     Plaintiff is also entitled to a monetary judgment against Defendant awarding Plaintiff compensatory and consequential damages, Defendant's profits, and compensation for a corrective advertising campaign in amounts to be proven at trial, plus attorney fees, costs, and expenses.

## SECOND CLAIM FOR RELIEF
(Unfair Competition under Colorado Law)

63.     The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

64.     Plaintiff's "aio" trademark is inherently distinctive or has acquired a secondary meaning among the relevant trade and public as identifying Plaintiff's wireless product and services.

65.     Defendant's unauthorized use of Plaintiff's "aio" trademark is deceptive and misleading and is likely to cause public confusion and deceive customers as to the affiliation, connection, and association of Defendant's services

and Plaintiff, and/or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff.

66.     Defendant's acts as described above constitute unfair competition under the common law of the State of Colorado.

67.     At all times relevant hereto, Defendant's acts of unfair competition were committed intentionally, willfully, knowingly, maliciously, and with reckless disregard of Plaintiff's rights.

68.     By reason of Defendant's acts as described above, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

69.     Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

70.     Plaintiff is also entitled to judgment against Defendant awarding Plaintiff direct and consequential damages in an amount to be proven at trial, plus attorney fees, costs, and expenses.

## THIRD CLAIM FOR RELIEF
(Trademark Disparagement under Colorado Law)

71.     The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

72.     Plaintiff had established "aio" as a trademark for wireless data, video and IPTV services prior to Defendant appropriating and adopting that brand as its corporate name and advertising and marketing "aio" as its own trademark for wireless services.

73.     In this connection Defendant published the false statements described above to Plaintiff's customers or potential customers, which, coupled with the disparity in size between the companies and the voluminous advertising use of "aio" by Defendant, conveyed the implication that Defendant had the exclusive right to the use of "aio" as a trademark and that Plaintiff was using that trademark illegally.

74.     These false statements could reasonably be understood to cast doubt upon or create confusion about the validity of Plaintiff's "aioTV" trademark and create the appearance of dishonesty and wrongful conduct by Plaintiff.

75.     In publishing these false statements, Defendant acted with malice, intending to vex, injure, intimidate or annoy Plaintiff.

76.     These false statements had an adverse economic effect on Plaintiff's

business and have irreparably harmed its reputation within the trade and with the public.

77.     By reason of Defendant's misrepresentations, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

78.     Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

79.     Plaintiff is also entitled to judgment against Defendant awarding Plaintiff direct and consequential damages in an amount to be proven at trial, plus attorney fees, costs, and expenses.

## FOURTH CLAIM FOR RELIEF
(Violations of Colorado Consumer Protection Act)

80.     The allegations contained in the foregoing paragraphs numbered 1-54 are adopted and incorporated by reference herein.

81.     Defendant's knowing and unauthorized use of Plaintiff's "aio" trademark, which wholly appropriates it, constitutes a false representation as to the source, sponsorship, or approval of Defendant's product or service and

Defendant's affiliation, connection, or association with Plaintiff, and Defendant has thereby engaged, and continues to engage, in deceptive trade practices within the meaning of C.R.S. § 6-1-105(1)(b) and (c).

82.     These false representations occurred and continue to occur in the course of Defendant's business.

83.     These false representations significantly impact the public as actual or potential purchasers of Defendant's goods and services.

84.     At all times relevant hereto, Defendant's deceptive trade practices were committed intentionally, willfully, knowingly, maliciously, with reckless disregard of Plaintiff's rights, and in bad faith.

85.     By reason of Defendant's acts as described above, Plaintiff has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of Plaintiff's "aio" trademark, as well as irreparable harm to Plaintiff's business, goodwill, reputation, and customer relations.

86.     Plaintiff has no adequate remedy at law, and is entitled to preliminary and permanent injunctive relief against Defendant, because damages to Plaintiff's goodwill and reputation are irreparable and difficult to ascertain, and will irreparably continue unless enjoined by this Court.

87.     Plaintiff is also entitled to judgment against Defendant awarding Plaintiff direct and consequential damages in an amount to be proven at trial and to

be trebled pursuant to C.R.S § 6-1-113(2)(a)(iii), attorney fees pursuant to C.R.S.

6-1-113(2)(b), costs, and expenses.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment under Colorado Law)

88.    The allegations contained in the foregoing paragraphs numbered 1-54

are adopted and incorporated by reference herein.

89.    Defendant's use of Plaintiff's "aio" trademark constitutes a benefit

conferred on Defendant by Plaintiff.

90.    Defendant has appreciated or realized the benefit.

91.    Defendant accepted the benefit under circumstances that it would be

inequitable for Defendant to retain the benefit without payment of its value.

92.    Plaintiff is entitled to judgment against Defendant awarding restitution

of the value of the benefit it received, including disgorgement of Defendant's

profits from goods and services sold under the "aio wireless" brand, and awarding

Plaintiff attorney fees, costs, and expenses.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks the following relief against Defendant:

A.    Preliminary and permanent injunctions prohibiting Defendant's use of

the "aio" trademark in connection with advertising and selling wireless goods and

services;

{JK00487765.1 }

B.     Judgment awarding Plaintiff direct and consequential damages in treble the amount proven at trial, plus compensation for a corrective advertising campaign; in addition, Plaintiff reserves the right, to amend this complaint to seek an award of exemplary damages  pursuant to  C.R.S. § 13-21-102(1)(a).

C.     Judgment awarding Plaintiff restitution for the value of the amount of unjust enrichment received by Defendant, including disgorgement of Defendant's profits from goods and services sold under the "aio" brand;

D.     Judgment awarding Plaintiff attorney fees, interest, costs, expenses, and such additional relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable in this action.

s/

Edward T. Lyons, Jr.
Daniel A. Wartell
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600
Fax (303) 573-8133
elyons@joneskeller.com
Attorneys for Plaintiff

STATE OF COLORADO        )
                               ) ss.
CITY & COUNTY OF DENVER     )

       MICHAEL EARLE, being first duly sworn upon his oath, deposes and states: that he is the Chief Executive Officer of Plaintiff aioTV Inc.; that he has read the foregoing Verified Complaint and Jury Demand and knows the contents thereof; and that the facts stated therein are true and correct to the best of his knowledge, information and belief.

Michael Earle

Subscribed and sworn to before me this 11th day of June, 2013

My commission expires: *March 16, 2014*

Notary Public

