# EXHIBIT J

Execution VERSION

TRIAL AGREEMENT
BETWEEN

COX COMMUNICATIONS INC.
AND
AIOTV INC.

This License Agreement ("**Agreement**"), dated as of October 13, 2011 ("**Effective Date**"), is entered into CoxCom, LLC, ("**Distribution Partner**"), a Delaware Corporation and AIOTV INC., a Colorado Corporation ("**AIOTV**"). Distribution Partner and AIOTV may be jointly referred to as the "**Parties**" or referred to individually as a "**Party**."

WHEREAS Distribution Partner, it's Partners (as defined below) and it's Affiliates (as defined below) market, sell and deliver communications and entertainment services to residential customers in the Territory;

WHEREAS, AIOTV has a video aggregation platform service and integrated advertising capabilities;

WHEREAS, Distribution Partner, its Partners and its Affiliates desire to enter into licensing relationship whereby (i) AIOTV will provide Distribution Partner a license enabling the trial of AIOTV Services (ii) Distribution Partner will assume primary responsibility for the trial of the AIOTV Service for evaluation in Distribution Partner's laboratory(as defined below).

NOW, THEREFORE, the Parties agree as follows:

1.  DEFINITIONS

    In addition to those terms defined elsewhere herein, when used herein, the following capitalized terms shall have the meanings indicated below.

    1.1  "**Affiliate**" means any person, partnership, joint venture, corporation or other form of enterprise, domestic or foreign, including but not limited to subsidiaries, that directly or indirectly Controls, is Controlled by, or is under common Control with a Party, where "Control" and the correlative terms "Controlling" and "Controlled by" mean the possession, directly or indirectly, of the power to direct the management and policies of such person or entity, whether through the ownership of voting securities, contract or otherwise.

    1.2  "**AIOTV Services**" means HTML5 based video aggregation platform services for internet enabled devices including but not limited to Apple iOS devices, Android devices, set-top-boxes and Google TV known as AIOTV.

    1.3  "**Intellectual Property Rights**" means copyrights, patents, trademarks, trade names, service marks, trade secrets, mask works, utility models,

HIGHLY Confidential
Outside Attorneys' Eyes Only                    AIOTV000911

Execution VERSION

design rights (whether registered or unregistered), and all other similar proprietary rights.

1.4 "**Materials**" means all tangible materials (including electronic materials in tangible form) developed or provided in connection with this Agreement, including, but not limited to, documents, records, computer software, and other materials.

1.5 "**License Relationship**" means the Parties' license of AIOTV Services and all associated activities contemplated by or described in this Agreement

1.6 "**Partner**" means any partnership, joint venture, corporation or other form of enterprise, domestic or foreign, including but not limited to service providers and property management companies.

2. RELATIONSHIP STRUCTURE

   2.1 AIOTV is licensing AIOTV Services to the Distribution Partner for the purpose of the Distribution Partner to trial AIOTV Services in its laboratory.

   2.2 Subject to the terms and conditions of this Agreement, AIOTV hereby grants to the Distribution Partner a perpetual (provided the Distribution Partner meets the requirements in Section 5.2, with respect to effect of termination), irrevocable (except in the event of a material Distribution Partner breach and provided the Distribution Partner meets the requirements in Section 5.2, with respect to effect of termination), nontransferable and non-assignable license under its AIOTV Intellectual Property Rights in and to the AIOTV Services to trial in the Territory (collectively the "**Licensed Rights**"), and such license shall grant Distribution Partner all necessary rights to use the AIOTV Services in the manner set forth in this Agreement.

   2.3 The AIOTV Service license is non-exclusive with the Distribution Partner.

3. GENERAL TERMS AND CONDITIONS

   The following terms and conditions apply to this Agreement:

   3.1 Ownership and Provision of Products and Services. Each Party will retain title to all products, services and Materials it provides under this Agreement and nothing herein shall be deemed construed to transfer any right, title or interest in same unless otherwise specifically provided in a writing signed by both Parties. Nothing in this Agreement shall be

AIOTV CONFIDENTIAL

HIGHLY Confidential
Outside Attorneys' Eyes Only

AIOTV000912

Execution VERSION

deemed to grant any right or license to any products, Materials or Intellectual Property Rights.

3.2 Indemnification. Subject to the provisions of Section 3.4 below, each Party will defend, indemnify and hold harmless the other Party, its affiliates, shareholders, officers, directors, employees, contractors, subcontractors, professional advisors, investors and agents from and against any third party claim, suit, demand, loss, damage, expense or liability arising under this Agreement relating to any breach of any provision of this Agreement or bodily injury or death of any person or to damage to any real property or tangible personal property, to the extent directly caused by the negligence or willful misconduct of the indemnifying Party. Each party will promptly notify the other of any claim which may give rise to a claim for indemnification hereunder, provided that the failure to promptly notify shall only relieve such party of its obligations to the extent such party has been materially prejudiced by such failure, and reasonably cooperate with the indemnifying party's defense or settlement of any such claim.

3.3 Confidentiality. The Parties agree that any confidential information disclosed in connection with this License Relationship shall be handled in accordance with the provisions of the Mutual Non-Disclosure Agreement, dated as of August 11, 2011, between AIOTV and Distribution Partner (the "**NDA**"). The Parties agree that the terms of this Agreement (including, but not limited to, pricing terms and customer information) are Confidential Information as such term is defined in the NDA.

3.4 Limitation of Liability. (a) Neither Party shall be liable to the other Party for (i) any damages for loss of data (other than to the extent such loss is a breach of Section 3.3, above), or (ii) any incidental, indirect, special or consequential damages, including without limitation downtime costs or lost profits, even if advised of the possibility of same.

3.5 Arbitration. Any controversy or claim arising out of or relating to this Agreement, its enforcement, arbitrability or interpretation, shall be submitted to final and binding arbitration, to be held in the county which contains the initial respondents/defendants principal place of business (Distribution Partner: Atlanta, Georgia; for AIOTV: Denver, Colorado), before a single arbitrator, in accordance with the rules of the American Arbitration Association. The arbitrator shall be selected by mutual agreement of the Parties or, if the Parties cannot agree, by selecting from a list of arbitrators supplied by the American Arbitration Association. The arbitration shall be a confidential proceeding, closed to the general public. The arbitrator shall issue a written opinion stating the essential findings and conclusions upon which the arbitrator's award is based. Each Parties will share equally in payment of the arbitrator fees and arbitration expenses and any other costs unique to the arbitration hearing; provided, however, that each side shall bear its own deposition, witness, expert and attorneys fees and other expenses to the same extent as if the matter were being heard in court. Nothing in this paragraph shall affect either party's ability to seek from a court injunctive or equitable relief at any time.

AIOTV CONFIDENTIAL

HIGHLY Confidential
Outside Attorneys' Eyes Only

AIOTV000913

Execution VERSION

3.6   No Joint Venture or Partnership. Nothing contained in this Agreement shall be construed as creating a joint venture, partnership or employment relationship between the Parties, nor shall either Party have the right, power, or authority to create any obligation or duty, express or implied, on behalf of the other Party.

3.7   Severability. If one or more of the provisions of this Agreement shall be found to be illegal, invalid or unenforceable under any applicable law, then such illegality, invalidity, or unenforceability shall not invalidate the entire Agreement. Such provision shall be deemed to be modified consistent with the intent of the Parties to the extent necessary to render it legal, valid and enforceable, and if no such modification shall render it legal, valid and enforceable, then such agreement shall be construed as if not containing the provision held to be invalid, and the rights and obligations of the Parties shall be construed and enforced accordingly.

3.8   Counterparts. This Agreement may be executed in multiple original counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

3.9   No Waiver. Neither Party's failure to exercise any of its rights under this Agreement shall constitute or be deemed a waiver or forfeiture of any such rights.

3.10   Entire Agreement. This Agreement (together with the exhibits and schedules hereto and thereto) represent the entire understanding between the Parties with respect to their subject matter, and supersede any previous communications, representations or agreements (other than the NDA) by either Party, whether verbal or written. In addition, the obligations of the Parties are solely as set forth in this Agreement (including the exhibits and schedules hereto and thereto) with respect to their subject matter, and the Parties will have no other obligations to each other, implied or otherwise. No changes or modifications of any of the terms and conditions herein shall be valid or binding on either Party unless in writing and signed by an authorized representative of each Party

3.11   Order of Precedence. In the event of any conflict or ambiguity between the terms and conditions of this Agreement and the terms and conditions (including the exhibits and schedules hereto and thereto), the terms and conditions of the MA(s) (including the exhibits and schedules thereto) shall govern.

3.12   Notices. All notices that are required under this Agreement shall be in writing and shall be considered received the next business day after sending by overnight courier to the address below or to such address as either Party may substitute by written notice to the other:

    To Distribution Partner:   CoxCom,LLC


With copy to Vice President of Legal Affairs: CoxCom, LLC

Page 4

AIOTV CONFIDENTIAL

HIGHLY Confidential
Outside Attorneys' Eyes Only

AIOTV000914

Execution VERSION

1400 Lake Hearn Drive
Atlanta, GA 30019

To AIOTV:         AIOTV INC.
                  20234 East Lake Circle
                  Centennial, CO 80016
                  Attn: Michael Earle
                  Phone: 720-221-4325

3.12   Calendar days.   All reference to days in this Agreement shall mean calendar days unless otherwise specified.

3.13   Representations. Each Party warrants and represents that: (a) it has full right, power and authority to enter into this Agreement and to perform the Agreement without violating any other agreement or commitment; (b) it has complied and will comply with all applicable laws respecting its execution and performance of this Agreement and (c) it has all necessary rights and licenses to grant the rights and licenses herein granted.

3.14   Disclaimer. (a) EXCEPT AS MAY BE EXPRESSLY AND SPECIFICALLY SET FORTH HEREIN, NEITHER PARTY MAKES ANY EXPRESS OR IMPLIED WARRANTIES OR GUARANTEE OF ANY NATURE (INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF QUALITY, FITNESS, MERCHANTABILITY, NON-INFRINGEMENT, OR ANY IMPLIED WARRANTIES ARISING OUT OF A COURSE OF PERFORMANCE, DEALING OR TRADE USAGE). (b) THE PARTIES HEREBY ACKNOWLEDGE THAT EACH PARTY MAY RELY ON THE SERVICES OF THIRD PARTIES RESPECTING ITS PROVISION OF SERVICES AND/OR THE OPERATION OF ITS NETWORKS, AND ACCORDINGLY, NEITHER PARTY MAKES NOR ASSUMES ANY REPRESENTATION OR WARRANTY OF ANY NATURE THAT ITS PROVISION OF SERVICES AND/OR THE OPERATION OF ITS NETWORKS WILL BE ON-GOING OR UNINTERRUPTED OR FREE OF ERRORS. FURTHER, NEITHER PARTY SHALL HAVE ANY LIABILITY FOR THE CONSEQUENCES OF ANY INTERRUPTIONS OR ERRORS RESPECTING ITS PROVISION OF THE SERVICES AND/OR THE OPERATION OF ITS NETWORKS OTHER THAN AS EXPRESSLY AND SPECIFICALLY SET FORTH IN THIS AGREEMENT. (c) NEITHER PARTY SHALL HAVE ANY LIABILITY OR RESPONSIBILITY RESPECTING: (i) ANY FAILURE OF OR DEFECTS IN THE PROVISIONS OF ITS SERVICES OR THE OPERATION OF ITS NETWORKS THAT RESULT IN WHOLE OR IN PART FROM THE ACTIONS OF THIRD PARTIES; OR (ii) FAILURE OF, DEFECTS IN, SERVICE OUTAGES TO OR SECURITY BREAKS IN ITS PROVISION OF THE SERVICES AND/OR THE OPERATION OF ITS NETWORKS THAT RESULT IN WHOLE OR IN PART FROM ANY ACT OR OMISSION THAT IS NOT SOLELY AND COMPLETELY WITHIN THAT PARTY'S EXCLUSIVE CONTROL.

3.15   Each Party shall be solely responsible for obtaining and maintaining any registrations, permits, or other governmental permissions necessary for the operation, promotion or sale of their respective services. For the avoidance of doubt, the parties acknowledge that no registrations, permits, or other

HIGHLY Confidential                        AIOTV000915
Outside Attorneys' Eyes Only

Execution VERSION

4. FEES

   4.1 Generally. All fees are specified in United States Dollars net of any taxes (see Section 7.11). Any fees paid by the Distribution Partner to AIOTV shall be in United States Dollars. Fees are due and payable sixty (60) days from the earlier of the the receipt of the invoice unless this Agreement provides greater specificity about the due date of a particular payment.

   4.2 Monthly License Fee. AIOTV shall license AIOTV Services to the Distribution Partner at no cost to the Distribution Partner. AIOTV will provide basic support as reasonably necessary for Distribution Partner to evaluate the AIOTV Services without charge.

   4.3 Customer Engineering Fees. Without limiting the foregoing, the parties do not anticipate that there will be any custom engineering and development associated with the AIOTV Service; provided, however, that Distribution Partner shall be responsible for any custom engineering and development associated with the AIOTV Service. Professional service fees shall be based upon an hourly rate of $100. AIOTV will set forth the costs of services in writing in advance, and Distribution Partner must accept such services prior to AIOTV providing any professional services in order for Distribution Partner to be liable for payment for any services. All such services shall be provided in accordance with the terms of this Agreement. AIOTV will adhere to any Distribution Partner's network and other access policies in connection with the provision of such services.

   4.4 Taxes. Each party will only be responsible for payment of its taxes that are imposed on such party by an authorized governmental entity from this Agreement. Payments under this Agreement will be made without any withholding or deduction of any nature. If pursuant to the Distribution Partner country's legislation, any withholding must be made, the Distribution Partner will pay such additional amounts as needed of such amounts as would have been received by AIOTV had no such withholding or deduction been required.

   4.5 Late Payment. Fees will be considered late if not paid within thirty (30) calendar days of the Date Due.

governmental permissions are necessary for the operation, of the AIOTV Service in Distribution Partner's laboratory.

5. TERM/TERMINATION

   5.1 Term. This Agreement shall commence on the Effective Date and shall expire on the later of three (3) months from the Effective Date, provided that the parties may agree to extend this Agreement upon mutual agreement.

Execution VERSION

    5.2   <u>Termination.</u>

        a.  <u>Breach.</u> This Agreement may be terminated for cause by either Party if the other Party is in material breach of any of its material obligations under this Agreement and fails to remedy such breach within thirty (30) days of receipt of a written notice, specifying such breach.

        b.  <u>Insolvency.</u> A Party may terminate this Agreement for cause if any petition or proceeding is filed by or against the other Party under any Federal or state bankruptcy or insolvency code or similar law, and, if such petition is involuntary, it is not dismissed within sixty (60) days after filing thereof.

    5.3   <u>Effect of Expiration or Termination.</u> Upon any expiration or earlier termination of this Agreement pursuant to its terms, the rights and obligations of the Parties will terminate, except that the rights and obligations of the Parties, which by their nature should survive, shall survive such expiration or termination.

6.   ASSIGNABILITY AND ENTIRE AGREEMENT

The Distribution Partner cannot assign this Agreement, or any of its respective rights or obligations hereunder or thereunder without the written consent of the AIOTV (such consent not to be unreasonably delayed or withheld); provided, however, that either the Distribution Partner shall be entitled to assign this Agreement to any Affiliate, acquirer or successor to its business (provided such assignee is not a substantial competitor of AIOTV) with written notice to AIOTV. This Agreement is the entire agreement of the parties and may not be modified or amended without a written agreement that is signed by both parties hereto.

7.   GOVERNING LAW

This Agreement will be governed by the laws of the State of Delaware, without regard to its conflicts of law principles.

Agreed to by:

AIOTV INC.

By: *(signature)*
Name:  Michael Earle
Title:   CEO

CoxCom, LLC.

By: *(signature)*
Name:  R. James Kelso
Title:  VP, Video Engineering

HIGHLY Confidential
Outside Attorneys' Eyes Only

AIOTV000917