# EXHIBIT P

# NON-DISCLOSURE AGREEMENT

This NON-DISCLOSURE AGREEMENT (this "Agreement') dated as of the 11th day of August, 2011 is made by and between aioTV, Inc. ("Company"), a Colorado corporation whose address is 20234 E Lake Circle, Centennial, CO 80016, and Cox Communications, Inc., a Delaware corporation and on behalf of its affiliates ("Cox"), whose address is 1400 Lake Hearn Drive, NE, Atlanta, Georgia 30319. Company and Cox are also referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, Cox and Company wish to have discussions in which each Party may be exposed to important business and/or technical information, which is the property of the other Party. Much of this information is the result of substantial expenditures of time, money and technical expertise by both Parties and is considered confidential by the Party that owns it.

NOW THEREFORE, in consideration of the mutual covenants contained in this Agreement and the mutual disclosure of confidential to each other, the Parties, for themselves, their subsidiaries and their affiliates, agree as follows:

1.   **Confidential Information**

   (a)   The term "**Confidential Information**" as used in this Agreement means information disclosed by the disclosing party ("**Disclosing Party**") to the receiving party (the "**Receiving Party**") prior to or after the date hereof which is non-public, proprietary and/or confidential in nature, whether provided in writing, orally, visually, electronically or by other means. Confidential Information will similarly include confidential or other proprietary information the Disclosing Party has obtained from a third party and discloses to the Receiving Party. Confidential Information also includes, but is not limited to: (i) "Trade Secrets" which means information which derives economic value, actual or potential, from not being generally known to, or readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy, or is otherwise a trade secret as defined by Georgia law; (ii) know-how, tools, methods, methodologies, techniques, designs, specifications, computer source code, customer lists, customer information, marketing plans, personnel information, financial information, business strategies, and information relating to released or unreleased software, hardware or technology; and (iii) the existence of this Agreement, the fact that the Receiving Party has received any information under this Agreement, and that any investigations, discussions or negotiations are taking, or have taken, place between the parties. Confidential Information disclosed to the Receiving Party by any Disclosing Party subsidiary, affiliate and/or agents are covered by this Agreement.

   (b)   The term "Confidential Information" shall not include any information that: (i) is or subsequently becomes publicly available without the Receiving Party's or its Representatives' (as defined below) breach of any obligation owed to the Disclosing Party; (ii) became known to the Receiving Party prior to the Disclosing Party's disclosure of such information to the Receiving Party; (iii) became known to the Receiving Party from a source other than the Disclosing Party or its affiliates or advisors other than by the breach of an obligation of confidentiality owed to the Disclosing Party; or (iv) is independently developed by the Receiving Party or its Representatives without violating any of their obligations under this Agreement and without access to or use of the Disclosing Party's Confidential Information.

2. **Obligations**. Subject to the exception stated in Section 3 below:

(a) Cox and Company shall each keep in confidence, and shall cause their respective Representatives (as defined below) to keep in confidence, all Confidential Information disclosed to either of them by the other and shall use such Confidential Information only for the mutually agreed upon objectives of the discussions between the parties.

(b) The Receiving Party shall exercise reasonable care to prevent the disclosure of Confidential Information to any third party, and in any event not less than the same precautions used by the Receiving Party to protect its own confidential information. Dissemination of Confidential Information shall be limited to the directors, officers, employees, advisors (including legal, accounting and financial advisors), agents, consultants and independent contractors of the Receiving Party (collectively, the "**Representatives**"), whose duties justify their need to know such information and then only on the basis of a clear understanding by these Representatives of their obligation to maintain the confidential status of the information and to restrict the use of the information solely to the use granted under this Agreement. The Receiving Party shall be responsible for any breach of this Agreement by its Representatives.

(c) All Confidential Information, including, but not limited to, all tangible embodiments, copies, reproductions and summaries thereof, and any other information and materials provided by the Disclosing Party to the Receiving Party shall remain the sole and exclusive property of the Disclosing Party.

(d) The Receiving Party shall immediately report to the Disclosing Party any attempt by the Receiving Party's Representatives to use or disclose any portion of the Confidential Information without authorization from the Disclosing Party, and shall cooperate with the Disclosing Party in every reasonable way to help the Disclosing Party regain possession of the Confidential Information and prevent its further unauthorized use.

(e) At the Disclosing Party's request, the Receiving Party shall return (or, at the Disclosing Party's option, destroy) all originals, copies, reproductions and summaries of Confidential Information in the possession of the Receiving Party or its Representatives, and shall destroy all copies of any analyses, compilations, studies or other documents prepared by the Receiving Party or its Representatives for the Receiving Party's use containing or reflecting any Confidential Information, and such destruction shall be certified in writing to the Disclosing Party.

3. **Exception**. The obligations of confidentiality imposed by this Agreement do not apply to the extent any Confidential Information, based on the advice of legal counsel, is required to be disclosed pursuant to operation of law or legal process, governmental regulation or court order, provided that the Receiving Party receiving such legal demand or order promptly shall inform the Disclosing Party thereof and cooperate with the Disclosing Party in contesting such request or order and in obtaining appropriate protection orders, subject to the payment by the Disclosing Party of all out-of-pocket expenses incurred by the party providing such cooperation at the request of the Disclosing Party.

4. **Term**. For a period of three (3) years from the date of disclosure ("**Term**"), the Receiving Party shall keep all Confidential Information in strict confidence and shall not disclose any Confidential Information or any documents, studies, reports or information derived therefrom to any person, firm or corporation, except as set forth in Section 3 above. However, with respect to Confidential Information

2

**HIGHLY CONFIDENTIAL -- OUTSIDE ATTORNEYS' EYES ONLY**     AIOTV000919

that constitutes a Trade Secret, the restrictions set forth in this Agreement shall continue in effect for so long as such information remains a Trade Secret. Recipient shall use all necessary and reasonable precautions to avoid disclosure of such Confidential Information and shall use the Confidential Information only for the purpose described above.

5. **Right to Disclose**. Each Party warrants that it has the right to disclose all Confidential Information which it has disclosed or may hereafter disclose to the other Party pursuant to this Agreement. Each Party agrees to indemnify and hold harmless the other from and against all claims which may be brought by a third party related to the disclosing Party's wrongful disclosure of such third party's information. Notwithstanding the above, neither Party shall be liable for indirect, incidental, consequential or punitive damages of any kind arising in connection with this Agreement. No Party makes any other representation or warranty, express or implied, with respect to any Confidential Information, or the completeness or accuracy thereof, provided the Party acts in good faith in supplying the Confidential Information. Notwithstanding anything contained herein, the Parties are under no obligation to disclose to each other any information of any kind whatsoever.

6. **Disclosure**. All media releases and public announcements or disclosures by any Party relating to the purpose of this Agreement shall be coordinated with and consented to by the other Party in writing prior to the release thereof.

7. **No Licenses or Other Obligations.** By disclosing information to the Receiving Party, the Disclosing Party does not grant any express or implied rights or licenses to the Receiving Party with respect to any patents, copyrights, trademarks, trade secrets or other proprietary rights of the Disclosing Party. Nothing in this Agreement shall obligate either party to disclose any information to the other Party. Nothing in this Agreement shall obligate either Party to enter into a business relationship or to consummate a transaction with the other Party. Each Party shall bear its own costs and expenses in connection with the activities contemplated by this Agreement.

8. **Relief**. Each Party hereby acknowledges and agrees that in the event of any breach of this Agreement by the other Party, including, without limitation, the actual or threatened disclosure of a Disclosing Party's Confidential Information without the prior express written consent of the Disclosing Party, the Disclosing Party may suffer an irreparable injury, such that no remedy at law shall afford it adequate protection against, or appropriate compensation for such injury. Accordingly, each Party hereby agrees that the other Party shall be entitled to seek, without waiving any other rights or remedies and without the posting of any bond, specific performance of the Receiving Party's obligations as well as such other injunctive relief as may be granted by a court of competent jurisdiction.

9. **General**.

(a) This Agreement shall be governed and construed under the laws of the State of Georgia without regard to the choice of law provisions thereof. If any individual term or provision of this Agreement is contrary to or in conflict with any requirement of applicable law, then that term or provision shall be severed herefrom and the remainder of this Agreement shall be binding on the Parties.

(b) This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement. No failure or delay by either Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any right, power or privilege hereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. This Agreement may not be amended except in writing and signed by an authorized representative of each Party and shall be binding upon all employees and agents of each Party as provided herein.

HIGHLY CONFIDENTIAL -- OUTSIDE ATTORNEYS' EYES ONLY        AIOTV000920

(c) <u>Notices</u>. Except as specifically provided in this Agreement, any notice, approval, request, authorization, direction or other communication under this Agreement shall be given in writing and shall be deemed to have been delivered and given for all purposes (i) on the delivery date if delivered personally to the party to whom the same is directed; (ii) one (1) business day after deposit with a commercial overnight carrier, with written verification of receipt, to the address of the party to whom the same is directed as set forth below; or (iii) three (3) days after being mailed by certified mail, postage prepaid, return receipt requested:

|  |  |
|---|---|
| If to Company: | aioTV Inc.<br>20234 E Lake Cir<br>Centennial, CO 80016<br>Attn: Michael Earle |
| If to Cox: | Cox Communications, Inc.<br>1400 Lake Hearn Drive<br>Atlanta, GA 30319<br>Attn: James Kelso |
| with copies to: | Cox Communications, Inc.<br>1400 Lake Hearn Drive<br>Atlanta, GA 30319<br>Attn: General Counsel |

(d) This Agreement shall inure to the benefit of and be binding upon the Parties' respective permitted assigns, transferees and successors of the Parties and such companies; provided, however, that this Agreement shall not be assigned by either Party without the other Party's prior written consent and in no event shall either Party be relieved of any of its respective obligations hereunder. Any purported assignment in violation of the foregoing shall be null and void and not enforceable.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the effective date stated above.

| aioTV, Inc. | Cox Communications, Inc.,<br>And on behalf of its affiliates |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: __Michael Earle__<br>(print name) | Name: __R. James Kelso__<br>(print name) |
| Title: __Founder and CEO__<br>(print title) | Title: __VP, Video Svc__<br>(print title) |
| Date: __August 11, 2011__ | Date: __8-18-11__ |

4

HIGHLY CONFIDENTIAL -- OUTSIDE ATTORNEYS' EYES ONLY     AIOTV000921