UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AT&T INTELLECTUAL PROPERTY II, L.P., and AIO WIRELESS LLC, | ) ) ) |
| Plaintiffs, | ) Civil Action ) No. 13-cv-1901 ) |
| v. | ) ) |
| AIOTV INC. | ) ) |
| Defendant. | ) ) |

_____

DEFENDANT AIOTV INC.'S REPLY IN SUPPORT OF ITS MOTION
TO DISMISS OR TRANSFER VENUE

_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ............................................................................................... 1

RELEVANT FACTS ........................................................................................... 1

ARGUMENT ...................................................................................................... 4

    A.    The requirements of the Georgia Long-Arm Statute are not
Met ............................................................................................. 5

    B.    This Court does not have general jurisdiction over AIO .................. 7

    C.    This Court does not have specific jurisdiction over AIO ................. 9

    D.    Notions of Fair Play and Substantial Justice Counsel against
Georgia Jurisdiction .................................................................... 11

    E.    Venue is Improper in Georgia ...................................................... 12

    F.    The Court Should Transfer Venue Even if it Determines that
Jurisdiction Exists ....................................................................... 13

CONCLUSION .................................................................................................. 15

CERTIFICATE OF COMPLIANCE ................................................................... 17

CERTIFICATE OF SERVICE ............................................................................ 18

EXHIBITS

    Exh. A      Declaration of Edward Lyons

Exh. A-1    Deposition of Michael Earle (Abstract)

Exh. A-2    Defendant's Amended Responses to Plaintiffs' Interrogatories

Exh. A-3    Plaintiffs' Interrogatories

Exh. A-4    Plaintiffs' Requests for Production

Exh. A-5    Email from Defendant's Counsel to Plaintiffs' Counsel

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                          <u>Page</u>

*Aero Toy Store, LLC v. Grieves*,
    279 Ga. App. 515 (2006) .................................................................... 7

*Anheuser-Busch, Inc. v. Supreme Int'l Corp.,*
    167 F.3d 417 (8th Cir. 1999) .............................................................. 14

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................... 12

*CompuServe, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1996) .............................................................. 7

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,*
    *593 F.3d 1249* (11th Cir. 2010) ......................................................... 4, 5

*Genentech, Inc. v. Eli Lilly and Co.,*
    998 F.2d 931 (Fed. Cir. 1993) ......................................................... 13, 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S.Ct. 2846 (2011) ........................................................................ 7

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ........................................................................... 2, 6

*Htl Sp. Zo.O. v. Nissho Corp.,*
    245 Ga. App. 625 (2000) .................................................................... 6

*Imageline, Inc. v. Fotolia*,
    663 F.Supp.2d 1367 (N.D. Ga. 2009) ............................................... 8, 9

*Kim v. Keenan*,
    71 F.Supp. 2d 1228 (M.D. Fla. 1999) ............................................... 7

*Manuel v. Convergys Corp.,*
    430 F.3d 1132 (11th Cir. 2005) ......................................................... 13, 14

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
    558 F.3d 1210 (11th Cir. 2009) .................................................................... 4

*Ottlite Technologies, Inc. v. Verilux, Inc.,*
    2010 WL 148802 (M.D.Fla. 2010) ...................................................... 13, 15

*Sculptchair, Inc. v. Century Arts, Ltd.,*
    94 F.3d 623 (11th Cir. 1996) ..................................................................... 7

*Schütz Cont. Sys., Inc. v. Mauser Corp.,*
    2010 WL 5087865 (N.D. Ga. 2010) ..................................................... 9, 10

*Soroka v. Lee Tech. Svcs.,*
    2006 WL 1734277 (N.D. Ga. 2006) .......................................................... 11

*Supreme Int'l Corp. v. Anheuser-Busch, Inc.,*
    972 F.Supp. 604 (S.D. Fla. 1997) ............................................................. 14

*Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,*
    819 F.2d 746 (7th Cir. 1987) ............................................................... 13, 15

*Trading Tech. Int'l, Inc. v. COG, Inc.,*
    2005 WL 3601935 (N.D. Ill. 2005) ........................................................... 11

*Virgin Health Corp. v. Virgin Enter., Ltd.,*
    393 Fed. Appx. 623 (11th Cir. 2010) ......................................................... 6

*Web.com, Inc. v. Go Daddy Group, Inc.,*
    2007 WL 7035105 (N.D. Ga. 2007) ..................................................... 8, 10

## **Statutes**

28 U.S.C. § 1391 ................................................................................................... 13

OCGA § 9-10-91 ................................................................................................... 5

Defendant aioTV Inc. ("AIO") submits this reply to the Plaintiffs' (collectively, "AT&T") Opposition ("Opp.") to AIO's Motion to Dismiss or Transfer Venue and supporting Memorandum of Law (collectively, "MTD").

## INTRODUCTION

AT&T's opposition follows the old adage: "When the law is on your side, argue the law. When the facts are on your side, argue the facts. When neither the facts nor the law are on your side, make an *ad hominem* attack." After delaying a response to the MTD to obtain "jurisdictional discovery," and getting full discovery of what it requested, AT&T expends much of its opposition brief falsely accusing AIO's Chief Executive Officer of providing deposition testimony that conflicted with his earlier declaration and being "forced to concede" the existence of documents that were, in fact, forthrightly produced as soon as they came to light. By contrast, this reply will focus on applying law to the facts - such facts having been confirmed and amplified by discovery - to show that AT&T remains unable to establish a basis for asserting jurisdiction over AIO in the present case.

## RELEVANT FACTS

AIO is a Colorado corporation having its only place of business within the United States in Centennial, Colorado. All of AIO's business activities within the United States are conducted entirely from Colorado. AIO has never had an

office or place of business, owned property, had a bank account, paid taxes,

received revenues from a source of payment, or been authorized to transact

business in Georgia.[1]

AIO provides a "cloud-based" product that aggregates and delivers multiple

sources of video content via a unified portal to wireless devices and computers

connected to the Internet.  AIO has two types of customers: (a) individual

users who download the product from AIO's passive Internet website, without

charge or entering into any contract;[2] and (b) independent industry licensees

which pay AIO a fee to distribute the product, typically re-branded with their

name, to their customers.[3]

With regard to the first type of customer, only    out of a total of     

such "Direct Users" of AIO's service who listed their location when they signed

up - less than      % - have identified themselves as having a physical

---

[1] Earle Decl. (Doc 8-2 at ¶¶4, 7, 8); Deposition of Michael Earle ("Earle Depo."), Exh. A-1, at 4:17-19 and 10:1-25.  None of these facts is disputed by AT&T.

[2]  AT&T's discovery requests correctly defined these customers as "Direct Users." However, AT&T also incorrectly sought discovery concerning "Indirect Users," a concept invented by AT&T, referring to users who obtained AIO's service from a third party. (Exh. A-3, Definition No. 5) "Indirect Users" are <u>not relevant</u> to the jurisdictional issue here because, by definition, they are customers of third parties over whom AIO has no control. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

[3] Earle Decl. at ¶¶ 5, 9, 12; AIO's Amended Interrogatory Responses, attached hereto as Exhibit A-2, at Resp. to Int. No. 5; Earle Depo., Exh. A-1 at 13:15-15:1, 21:5-22:20, 23:21-24:2.

location in Georgia.[4] With regard to the second type of customer, none of AIO's

licensees has a principal place of business in Georgia. AIO has no control over

where these independent companies market their products and services.[5]

AIO does not focus or direct its passive website or advertising and

marketing efforts at a particular state like Georgia. Rather, all such activities are

designed to reach viewers throughout the entire United States as well as an

international audience. Most of AIO's revenue is derived from fees paid by

third-party licensees, none of whom is located in Georgia. AIO also receives a

limited amount of revenue from advertisers based on the activity of individual

users of its service. In 2012 this advertising revenue totaled only $ ____ .

None of this revenue can be linked to Georgia because it is not paid on a state-

by-state basis.[6]

In October 2011, AIO entered into a three-month "Trial Agreement"

with Cox Communications, a company located in Atlanta, Georgia,

concerning a possible distribution agreement. The Trial Agreement was

preceded by a related Non-Disclosure Agreement ("NDA"). This short-lived

experiment neither produced any revenue for AIO nor ripened into a full-

---

[4] Exh. A-2, Resp. to Int. No. 1.
[5] Earle Decl. at ¶¶ 14, 15; Earle Depo. at 60:1-4, 60:15-16.
[6] Earle Decl. at ¶¶ 10, 11, 13; Earle Depo. at  54:25-56:11, 76:23-77:4, 77:23-78:2; Exh. A-2 at Resp. to Int. No. 5.

fledged distribution agreement.[7]

## ARGUMENT

AT&T's opposition brief proceeds from the erroneous premise that AIO "bears the burden of proving lack of personal jurisdiction." (Opp. at 8) To the contrary, where, as here, a "defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir. 2010). "[W]here the defendant challenges the court's jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1217 (11th Cir. 2009). AT&T has not met that burden.

---

[7] The Supplemental Declaration of Michael Earle (Doc.30-1) explains why these temporary arrangements were overlooked at the time of his initial declaration. Their existence only came to light when AIO was in the process of voluntarily producing emails with Cox that Mr. Earle had mentioned during his deposition. Despite AT&T's hyperbolic efforts to portray this as a deliberate failure to make timely discovery, the fact is that AT&T's written discovery did not request the production of the emails in question, but instead sought a "sample of each advertisement or promotional material, bearing Defendant's Marks, that is or has been distributed to or accessible by residents of the State of Georgia..." (Exh. A-4, Request No. 7).  See the correspondence from AIO's attorney to AT&T's attorney, explaining that while the emails were not produced initially because they were not within the scope of the discovery request, they were being voluntarily produced in the interest of full disclosure. (Exh. A-5)

## A. The requirements of the Georgia Long-Arm Statute are not met.

AT&T again misstates the law when they claim, with respect to the Georgia Long-Arm Statute ("GLAS"), that "[a]ll Plaintiffs need to establish is that Defendant 'transacts any business' within the State of Georgia...." (Opp. at 9) In fact, the "transacts any business" prong of the GLAS is only one part of the analysis and reaches "*only* to the maximum extent permitted by procedural due process[,]" and also means "something more than, and cannot simply equate to, mere minimum contacts in a due process sense." *Diamond Crystal,* 593 F.3d at 1261-62 (emphasis in original) (internal punctuation and citation omitted).[8] If the Court reads the GLAS "literally" and "delineate[s] the precise contours of the '[t]ransacts any business within this state' requirement of O.C.G.A. § 9-10-91(1) according the facts of [this] case," as it must (*Diamond Crystal,* 593 F.3d at 1259 and 1263), the Court should find that no long-arm jurisdiction exists.

Importantly, the second prong of the GLAS provides for jurisdiction over a nonresident only "as to a cause of action arising from any of the acts" enumerated by the statute. O.C.G.A. § 9-10-91 (emphasis added). AT&T does not seriously

---

[8] Plaintiffs also misstate the law when they claim that *Diamond Crystal* simply "clarified and broadened the reach of Georgia's Long-Arm Statute by stripping away limitations not expressly contained in the statute." (Opp. at 10) In fact, *Diamond Crystal* clarified that recent changes in interpreting Georgia's Long-Arm Statute "inject[ed] renewed vitality into its restrictions." 593 F.3d at 1259.

contend that the present declaratory judgment action <u>arises from</u> AIO's transaction of any business in Georgia.  AT&T admits that AIO's "contracts with Cox do not directly relate to the instant litigation...." (Opp. at 22) Thus, the present action cannot be said to arise from those agreements.[9]  Rather, AT&T concedes  that this action was filed in response to AIO's cease and desist letters. (Hummel Decl. at ¶ 2; Doc. 34 at § 1) If anything, this action "arises from" those letters. AIO sent those letters to recipients in Texas and New York and they concerned AT&T's roll-out of services in Florida and Texas. (MTD at 6-8) Those letters have nothing to do with Georgia; even if they had, the act of sending a cease and desist letter is insufficient to confer jurisdiction. *Virgin Health Corp. v. Virgin Enter., Ltd.,* 393 Fed. Appx. 623, 626 (11th Cir. 2010).

　　AT&T's focus on where AIO's licensees do business is a *non sequitur* twice over. First, AT&T must demonstrate jurisdiction over AIO, not its licensees.  *Hanson,* 357 U.S. at 253 ("The unilateral activity of those who claim

---

[9] The circumstance that one of those contracts provided that Georgia law would govern any dispute between the parties arising under that agreement does not help to establish jurisdiction over AIO in the present action by AT&T. *See Htl Sp. Zo.O. v. Nissho Corp.,* 245 Ga. App. 625, 626 (2000) ("a contractual provision choosing to apply Georgia law to resolve disputes under a contract is not sufficient, standing alone, to subject a party to the contract to personal jurisdiction under the Georgia long-arm statute").

some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . .").  Second, AT&T does not allege that this action "arises from" the activities of AIO's licensees, which is a prerequisite to long-arm jurisdiction under the GLAS.[10]

### B. This Court does not have general jurisdiction over AIO.

AIO's minimal contacts with the state of Georgia do not give rise to general jurisdiction over AIO. AT&T's contrary conclusion is based on chimerical support at best. The Court should reject AT&T's argument because it fundamentally contradicts the concepts upon which general jurisdiction jurisprudence is based.

General jurisdiction is only appropriate where a party's contacts with the forum state are so continuous or systematic that the party is "essentially at home" in that state. *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011). Here, AIO's *de minimus* contacts with Georgia do not rise to the level

---

[10] AT&T cites cases under the GLAS that are inapposite because they involve litigants who had contracts with each other, which is not the case here. *E.g., CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1260 (6th Cir. 1996) (noting that "Patterson entered into [an Agreement] with CompuServe"); *Aero Toy Store, LLC v. Grieves,* 279 Ga. App. 515 (2006) (describing suit as "breach of contract [claim]"); *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 625 (11th Cir. 1996) (describing "exclusive licensing agreement" between parties which gave rise to action); *Kim v. Keenan,* 71 F. Supp. 2d 1228, 1231-34 (M.D. Fla. 1999) (describing how defendant-attorneys were subject to suit in plaintiff-clients' forum for claims related to alleged malpractice).

that it could be considered "essentially at home" in Georgia. AIO in fact has no presence in Georgia at all. AIO's thirteen "Direct Users" in Georgia—with whom AIO has neither a contract nor from whom it receives any payment—constitute a *de minimus* percentage of its total "Direct Users".

AT&T blithely ignores several remarkably similar cases cited in the MTD which found that general jurisdiction did not exist in situations like this case. For example, like the website operator defendant ("Go Daddy") in *Web.com, Inc. v. Go Daddy Group, Inc.,* 2007 WL 7035105 (N.D. Ga. 2007), AIO has never applied for a license to do business, owned real property, leased office space, had employees, owned financial accounts, or paid taxes in Georgia. (Doc. 8-2 at ¶8) While Go Daddy hosted websites on its servers and had "approximately 72,000 customers who reside in Georgia," the court "readily conclude[d] that Go Daddy's contacts with Georgia are not continuous and systematic." 2007 WL 7035105 at *2. AIO hosts no video content on its websites[11] and is remotely connected to far fewer Georgia residents than Go Daddy. AT&T's silence concerning the *Go Daddy* case is telling.

Likewise, despite AT&T's futile attempt to distinguish it, *Imageline, Inc. v.*

---

[11] Hosting a website involves a party storing data for a website operator for others' access. http://www.techterms.com/definition/webhost (last accessed September 24, 2013). AIO hosts no video content on its websites. Earle Depo. at 54:19.

*Fotolia,* 663 F.Supp.2d 1367 (N.D. Ga. 2009), demonstrates precisely why there is no general jurisdiction over AIO in Georgia.[12] So does *Schütz Cont. Sys., Inc. v. Mauser Corp.,* 2010 WL 5087865, at *3 (N.D. Ga. 2010) (see MTD at 17), which AT&T makes no effort to distinguish.

AT&T's argument for general jurisdiction over AIO in Georgia, if accepted, would undermine the core principle of general jurisdiction: that a defendant must be essentially "at home" in the forum. Foreign defendants like AIO should not be subject to general jurisdiction from *de minimus* forum contacts. A contrary conclusion could subject nearly anyone to jurisdiction anywhere.

### C. This Court does not have specific jurisdiction over AIO.

AT&T asserts that AIO's allegations in the Colorado complaint—none of which concerns Georgia as such—can suffice to create specific jurisdiction here. (Opp. at 19-22)  In so arguing, AT&T confuses a possible measure of damages at trial in the Colorado action with threshold jurisdictional prerequisites here. The cases AT&T offers for support (Opp. at 19-20) concern trademark law issues of proof and damages, not jurisdictional questions. AT&T's attempt to use

---

[12] While the *Imageline* defendant had over 1,700 active users in Georgia and 1.9% of its registered users lived in Georgia (*see* Opp. at 16), AIO has merely "Direct Users" who listed a location in Georgia, which represent less than ▮▮▮▮ of such "Direct Users." Exh. A-2, Resp. to Interrogatory No. 1.

allegations of the complaint in the Colorado case as a jurisdictional hook here is merely an *ex post facto* attempt to cure the jurisdictional deficiency that exists in the present case by the contents of a complaint AT&T had not even seen before it filed the present action.

AT&T also argues that specific jurisdiction exists because AIO's no-charge, no contract service is "regularly and systematically" available in Georgia via the internet and wireless devices. (Opp. at 18-19) The Court cannot accept AT&T's argument, as it would result in nationwide specific jurisdiction over anyone who simply makes information available on the internet or a wireless device, which is a result courts have roundly rejected. *See*, *e.g.*, *Go Daddy*, 2007 WL 7035105; *Schütz*, 2010 WL 5087865.

Moreover, as discussed above, AT&T concedes that "the contracts with Cox do not directly relate to the instant litigation...." (Opp. at 22)  Specific jurisdiction, if it were to exist, would therefore have to be based on some other act.  AT&T does not specifically allege what this other act is, who performed this other act, or when this other act occurred. This lack of specificity exists in both the AT&T's complaint and its opposition to the present motion. AT&T's vague references to AIO's activities generally do not give rise to specific jurisdiction.

AT&T hypothesizes that this action is based on AIO's "purposeful attempt to create nationwide trademark rights," and/or "efforts to garner nationwide recognition of its brand...." (Opp. at 19) At the same time, AT&T contradicts this by submitting a declaration averring that AT&T filed this action because of AIO's cease-and-desist letters. (Hummel Decl. at ¶2)  As described above, those letters have nothing to do with any activity in Georgia that could give rise to a cause of action here.  *See* page 6, *supra*.

### D. Notions of Fair Play and Substantial Justice Counsel against Georgia Jurisdiction.

AT&T does not dispute that they have superior financial resources to AIO. (Opp. at 23) Indeed, they cannot, and this factor counsels against AT&T's forum-shopped selection of venue in their own backyard. *See*, *e.g.*, *Soroka v. Lee Tech. Svcs.*, *Inc.*, 2006 WL 1734277 at *4 (N.D. Ga. 2006), and other cases cited at MTD 23-24. Moreover, the nature of AT&T's counsel's deception to get into this forum in the first place offends notions of fair play.[13]

AT&T also fallaciously equates AIO's ability to do business over the internet via video conferencing and other tools with the ease of litigating in a foreign forum. (Opp. at 23) This fatuous argument disregards that a trial in this

---

[13] *Trading Tech. Int'l, Inc. v. CQG, Inc.*, 2005 WL 3601936 at *3 (N.D. Ill. 2005) (rejecting party's tactics of "feign[ed] negotiation in order to delay [opposing party filing suit] in an effort to secure a preferable forum").

case—should the Court determine jurisdiction exists—will plainly not occur via video conferencing.[14]

Finally, AT&T's reliance on *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 484 (1985) to support its fairness argument (Opp. at 23), is not only factually misplaced but boomerangs against AT&T because, unlike the defendant in that case, there is no evidence in the present case that AIO has "purposefully derived commercial benefit" from any Georgia affiliation. *Id.* at 484.

### E.  Venue is Improper in Georgia

AT&T's simplistic, one-paragraph response to the improper venue issue again falsely conflates—like AT&T did with jurisdiction—the type of evidence AIO may have to produce at an eventual trial in a trademark infringement case with the evidence AT&T must now produce to establish that venue is proper in the present case. (Opp. at 24) As has been shown above, AT&T has not even come close to demonstrating either that AIO "resides" or that "a substantial portion of the events giving rise to [AT&T's] claim[] occurred . . ." in this judicial district as

---

[14] Plaintiffs also claim that this action should proceed in Georgia because their headquarters are located here, along with witnesses and documents. (Opp. at 25) Of course, the same arguments cut in favor of AIO for Colorado venue; AT&T cannot have it both ways.

AT&T must prove to uphold venue under 28 U.S.C. §1391(b)(1) or (2).

**F. The Court Should Transfer Venue Even if it Determines that Jurisdiction Exists.**

Regardless of whether the Court determines jurisdiction over AIO exists in the Northern District of Georgia, there is ample authority demonstrating that the Court should transfer this action to the District of Colorado. *See* MTD at 21-25 and authorities cited therein. The MTD mustered ten cases in support of transfer; AT&T's Opposition tellingly discusses <u>none</u> of those authorities. AT&T's silence on this front speaks volumes.

The legal authority that AT&T recites in opposing transfer avails them naught. To support their argument against transfer and that the first-filed rule controls "whether or not the first-filed action is declaratory in nature[,]" AT&T cites *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005). [15] That case is

---

[15]  Plaintiffs also cite an unpublished Middle District of Florida and a Federal Circuit case for their argument. *See* Opp. at 24. Neither case aids Plaintiffs, as AIO has already demonstrated in its Response to the Motion to Enjoin. (Doc. # 18 at 11-12 (describing, *inter alia,* how the *Genentech* case has been abrogated)) Moreover, *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993), limited itself by its terms to the specialized realm of patent cases and only for that reason declined to follow the trademark-focused rationale of *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746 (7th Cir. 1987), which is a case AIO discussed as supportive of its position. MTD at 24. *Ottlite* is also a patent case and it relies on the now-abrogated *Genentech* authority.  *See Ottlite Technologies, Inc. v. Verilux, Inc.,* 2010 WL 148802 at *2 (M.D. Fla. 2010) (*citing Genentech*).

inapposite, as it concerned a situation where the district court concluded, with record support, that the first-filed declaratory judgment action "was not improperly anticipatory...." *Manuel*, 430 F.3d at 1136. Here, AT&T's declaratory judgment filing not only <u>was</u> anticipatory, but was also filed in their home forum, which is a compelling circumstance that justifies departure from the first-filed rule. See *Supreme Int'l Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 606 (S.D. Fla. 1997), and *Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417 (8th Cir. 1999) (collectively, "*Anheuser-Busch*").

AT&T's reliance on the Hummel declaration as support for opposing a transfer to the District of Colorado is not only wide of the mark, but counter-productive. Mr. Hummel is AT&T's <u>Los Angeles</u>-based counsel. AIO was lulled into not filing its Colorado Complaint by the deception of AT&T's <u>New York</u>-based counsel, Mr. Saunders and Ms. Goldstein. (MTD at 7-9)  Mr. Hummel was not a party to the conversations that AIO's counsel had with Mr. Saunders and Ms. Goldstein, and Mr. Hummel's declaration does not cure the deception carried out by Mr. Saunders and Ms. Goldstein, whose silence now suggests they cannot defend their own conduct.

AT&T has <u>already admitted</u> before this Court that the *Anheuser-Busch* case presented a "remarkably similar" fact pattern and procedural posture when

compared to this case.  See AT&T's Motion to Enjoin (Doc. 6-1 at 13); and AIO's

Response to Motion to Enjoin (Doc. 18 at 10) [16]. Just as the *Anheuser-Busch* courts

refused to permit a race to the courthouse to determine venue, this Court should not

permit this anticipatorily-filed declaratory judgment action to deprive AIO—the

natural plaintiff in this case—of its choice of venue in Colorado, particularly given

the deception AT&T's counsel employed to file first in this Court.

## CONCLUSION

For the foregoing reasons, AIO requests the Court to dismiss the present case

for lack of jurisdiction over AIO and improper venue or, in the alternative, transfer

the case to the District of Colorado.

---

[16]  Plaintiffs also cite an unpublished Middle District of Florida and a Federal Circuit case for their argument. *See* Opp. at 24. Neither case aids Plaintiffs, as AIO has already demonstrated in its Response to the Motion to Enjoin. (Doc. # 18 at 11-12 (describing, *inter alia,* how the *Genentech* case has been abrogated)) Moreover, *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993), limited itself by its terms to the specialized realm of patent cases and only for that reason declined to follow the trademark-focused rationale of *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746 (7th Cir. 1987), which is a case AIO discussed as supportive of its position. MTD at 24. *Ottlite* is also a patent case and it relies on the now-abrogated *Genentech* authority.  *See Ottlite Technologies, Inc. v. Verilux, Inc.,* 2010 WL 148802 at *2 (M.D. Fla. 2010) *(citing Genentech).*

Respectfully submitted,
s/ Kelly L. Whitehart
Kelly L. Whitehart
GA Bar No. 755447
MILLER & MARTIN, PLLC
1170 Peachtree Street, N.E. *#800*
Atlanta, GA 30309-7706
Telephone: (404) 962-6100
Fax: (404) 962-6300
kwhitehart@millermartin.com

Edward T. Lyons, Jr.
elyons@joneskeller.corn
Daniel A. Wartell
dwartell@joneskeller.com
Aaron D. Goldhamer
agoldhamer@joneskeller.com
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: (303) 573-1600
Fax: (303) 573-8133
        Appearing *pro hac vice*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing was typed in Times New Roman 14 point font with a top margin of 1.5 inches in accordance with Rule 5.1 of the Local Rules of this Court.

Aaron D. Goldhamer
_____

# CERTIFICATE OF SERVICE

This is to certify that on October 3, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail documentation for such filing to the attorneys of record as follows:

James R. Thompson (Jt0309@att.com)

Darren W. Saunders, Esq. (dsaunders@manatt.com)

Linda Goldstein, Esq. (lgoldstein@manatt.com)

Chad S. Hummel, Esq. (chummel@manatt.com)

William H. Brewster, Esq. (bbrewster@kiltown.com)


  s/ Kelly Whitehart