EXHIBIT A

TO AIOTV INC's REPLY IN SUPPORT OF MOTION TO DISMISS

DECLARATION OF EDWARD T. LYONS, JR.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AT&T INTELLECTUAL PROPERTY II, L.P., and AIO WIRELESS LLC, ) ) ) | |
| Plaintiffs, ) | Civil Action |
| ) | No. 13-cv-1901 |
| ) | |
| v.  ) | |
| ) | |
| AIOTV INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

---

## DECLARATION OF EDWARD T. LYONS, JR.

---

Edward T. Lyons, Jr. makes the following declaration pursuant to 28 U.S.C.
§ 1746:

1.     My name is Edward T. Lyons, Jr.  I am over the age of 21 and am
competent to give testimony.  I am a partner at Jones & Keller, P.C., and am
counsel for aioTV Inc. ("AIO"), appearing *pro hac vice* in this action.  I have
personal knowledge of the facts stated in this declaration, which are provided in
support of AIO's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and (b)(3) or,
Alternatively, Motion to Transfer Venue Pursuant to 28 U.S.C.§ 1404(a)
("Motion") and its Reply in Support of the Motion.

2.      I have reviewed Plaintiffs' (henceforth, "AT&T") Opposition in Response to the Motion (Doc. 31, henceforth "Opposition").  The Opposition incorporated the Declaration of Chad S. Hummel, Esq., one of AT&T's attorneys. ("Hummel Decl.")  Mr. Hummel's Declaration contains certain misstatements or misleading references that I am obliged to correct.

3.      First, I am attaching copies of the documents described below for the Court's convenient review:

- A true and correct copy of relevant portions of the Transcript of the Deposition of Michael Earle is attached hereto as Exhibit A-1.

- A true and correct copy of AIO's Amended Responses to AT&T's Interrogatories is attached hereto as Exhibit A-2.

- A true and correct copy of AT&T's Interrogatories is attached hereto as Exhibit A-3.

- A true and correct copy of AT&T's Requests for Production of Documents and Things is attached hereto as Exhibit A-4.

- A true and correct copy of an email I sent to AT&T's counsel concerning the production of AIO's emails with Cox Communications ("Cox") is attached hereto as Exhibit A-5.

4.      Mr. Hummel states that "during the deposition" of Michael Earle he requested Defendant's counsel to produce the emails with Cox Communications,

Inc. that Mr. Earle had referred to in the deposition.  (Hummel Decl. at ¶ 13)  That request was not made on the record.  Instead, in an off-the-record conversation, during a recess in the deposition, Mr. Hummel asked for the emails and took the position that they should be produced in response to AT&T's Requests for Production No. 7.

5.      Request for Production No. 7 reads as follows:

> A sample of each advertisement or promotional material, containing Defendant's Marks, that is or has been distributed to or accessible by residents of the State of Georgia, from 2010 to the present.

See Exhibit A-4, attached hereto.7

6.      In response to Request for Production No. 7, AIO produced 69 pages of samples of advertising and promotional materials when it served its response on August 6, 2013.

7.      The terms "advertisement" and "promotional material" were not defined in Plaintiffs' document requests.  As such, the plain language of those terms controls their meaning.  See Exhibit A-4 at Definition No. 14.  The Cox emails that AIO orally requested at the deposition on August 22, 2013 are neither an "advertisement" nor are they "promotional material" under any common understanding of the term.

8.      Mr. Hummel's Declaration states that I informed him "via email that Defendant had <u>inadvertently failed to produce</u> the Cox communications...."

(Hummel Decl. at ¶ 15 (emphasis added)) This is not true.  My email speaks for itself.  See Exhibit A-5, in which I explained to Mr. Hummel that the emails were not previously produced because they had not been requested, but that AIO was <u>voluntarily</u> producing them at that time to avoid a wasteful discovery dispute and in the spirit of full disclosure.

9.      AT&T's Opposition relies on an alleged inconsistency between Michael Earle's deposition testimony and his first Declaration having to do with whether at the time of his declaration Mr. Earle had "knowledge" of "where, or in what states, AIO's independent licensees market and sell their products and services." (Opposition at 5).  This is based in turn on a citation to page 60 of the deposition transcript that Mr. Hummel selected as pertinent and attached as Exhibit F to his Declaration, in which Mr. Earle testified:  "We do have some knowledge of where our  licensees offer service. We have no control over where they offer their service."

10.      The page of the transcript of the Earle deposition that Mr. Hummel presented and AT&T relied on, more than once, in the Opposition brief ignores the fact that before the deposition was completed Mr. Earle clarified and supplemented his testimony as follows:

> Q. [Mr. Wartell, referring to Earle's declaration]
> ". . .paragraph 15 states, 'AIO has no knowledge of or control over where,  or in what states, these independent companies market and sell their products and services.'  Did I read that correctly?"

A. [Mr. Earle] "Yes, you did."

Q. "At the time you signed this Declaration, was that correct?"

A. "Yes."

Q. "Did there come a time where you gained further knowledge that formed the basis of your testimony today?"

A. "Yes."

Q. "Okay. How or what was – what caused you to – to acquire that additional knowledge?"

A. "During the preparation of materials for discovery requested by AT&T's counsel, we went back and looked at the business models of our customers and determined that they at that point were only offering service in their physical location."

Q. "So the testimony in your Declaration and your testimony today were both truthful and accurate to the best of your ability?"

A. "Correct."

11.    The testimony quoted above appears at page 92, lines 6 - 25, and page 93, lines 1 - 3 of the abstract of pertinent portions of the Earle deposition transcript that is attached hereto as Exhibit A-1.

12.    Thus, there is actually no conflict between Mr. Earle's first Declaration and his deposition testimony concerning AIO's knowledge of where AIO's independent licensees market and sell their products or services. Moreover, regardless of what knowledge AIO may have, and when that knowledge was

gained, the fact remains, which AT&T does not dispute, that AIO cannot control the actions of those licensees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of October, 2013.
Denver, Colorado

Edward T. Lyons, Jr.

EXHIBIT A-1

TO AIOTV INC's REPLY IN SUPPORT OF MOTION TO DISMISS

RELEVANT PORTIONS OF TRANSCRIPT
OF DEPOSITION OF MICHAEL EARLE

(Non-redacted version filed under Seal)

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 1

1        IN THE UNITED STATES DISTRICT COURT

         FOR THE NORTHERN DISTRICT OF GEORGIA

2

Civil Action No. 13-cv-1901

3    _____

4    HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

              DEPOSITION OF: MICHAEL EARLE

5                  August 22, 2013

     _____

6

AT&T INTELLECTUAL PROPERTY II, L.P., and AIO WIRELESS

7    LLC,

8    Plaintiffs,

9    v.

10   AIOTV, INC.,

11   Defendant.

     _____

12

13

14            PURSUANT TO COURT ORDER, the deposition of

15   MICHAEL EARLE was taken on behalf of the Plaintiffs at

16   1999 Broadway, Suite 3150, Denver, Colorado 80202, on

17   August 22, 2013, at 8:59 a.m., before Amy L. Bland,

18   Registered Professional Reporter, Certified Shorthand

19   Reporter, and Notary Public within Colorado.

20

21

22

23

24

25

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

```
                                                    Page 2

 1                    A P P E A R A N C E S

 2    For the Plaintiffs:

 3              CHAD HUMMEL, ESQ.

                Manatt, Phelps & Phillips, LLP

 4              11355 West Olympic Boulevard

                Los Angeles, California 90064

 5

 6    For the Defendant:

 7              DANIEL A. WARTELL, ESQ.

                EDWARD T. LYONS, JR., ESQ.

 8              Jones & Keller

                1999 Broadway, Suite 3150

 9              Denver, Colorado 80202

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 4

1              WHEREUPON, the following proceedings

2     were taken pursuant to the Federal Rules of Civil

3     Procedure.

4              *      *      *      *      *

5                      MICHAEL EARLE,

6     having been first duly sworn to state the whole truth,

7     testified as follows:

8                      EXAMINATION

9     BY MR. HUMMEL:

10        Q.   Good morning, Mr. Earle.  My name's Chad

11    Hummel.  I represent AT&T and Aio Wireless in this

12    particular matter.  Have you ever been deposed before?

13        A.   I have.

14        Q.   You have.  Okay.  Can you please state

15    your full name for the record?

16        A.   Michael Everett Earle.

17        Q.   What is your business address?

18        A.   20234 East Lake Circle in Centennial,

19    Colorado 80016.

20        Q.   I'm sure your counsel has told you in

21    advance of the deposition, and you've been deposed

22    before, but let me go through just a few of the ground

23    rules that will apply today.

24             Your deposition is being taken here today,

25    as you may know, pursuant to a court order issued by

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 10

1          Q.    And you said there were founding partners.

2    How many?

3          A.    I'd have to look at the record for the

4    exact number.  Roughly seven.

5          Q.    Are they -- where are they based?

6          A.    With the exception of one, they're all in

7    Canada.

8          Q.    And are you the exception?

9          A.    No.  There's a secondary exception to me.

10         Q.    Who is that?

11         A.    The COO, Jim Anderson.

12         Q.    And where is he based?

13         A.    He's based in Austin, Texas.

14         Q.    What is the business office address of

15    aioTV?

16         A.    It's the 20234 East Lake Circle.

17         Q.    In Centennial?

18         A.    Yes, correct.

19         Q.    Is that also the principal place of

20    business?

21         A.    Yes.  In the U.S.

22         Q.    Is there a non-U.S. principal place of

23    business?

24         A.    Yes.  There's the development center in

25    Halifax, Nova Scotia, Canada.

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 13

1   your ability to conduct discovery, but I want to

2   interpose -- it's not an objection right now, but I

3   want to interpose, I guess, the position that we have,

4   which is if we continue to kind of go down extraneous

5   roads, I may have to start objecting, and we'll have to

6   deal with it when we get there.

7          MR. HUMMEL:  I'm mindful of that, and I

8   appreciate that.

9          MR. WARTELL:  Thanks.

10         Q.  (BY MR. HUMMEL)  So the question was just,

11  how many in the development group in Nova Scotia?

14         A.  Yes.

15         Q.  Who is in charge of licensing the Aio

16  product?

17         A.  Can you define "in charge"?

18         Q.  Who does it?

19         A.  The company obviously grants a license of

20  use to operator partners, so it would be corporate

21  documentation around the way we have decided to write

22  that license.

23         Q.  And who has been responsible for writing

24  the license?

25         A.  Licenses were drafted between counsel and

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 14

1    the company.

2          Q.   And counsel is -- is this -- this law

3    firm, Jones & Keller?

4          A.   No.  It was an earlier law firm that we

5    used to draft those documents.

6          Q.   And when you say "license of use to

7    operator," what do you mean?

8          A.   We typically sell the product business to

9    business and grant a use of license to service provider

10   partners, be it cable, telco, wireless providers, IP

11   service providers, who will license our product and, in

12   turn, offer it to their customers.  We charge them a

13   fee for that use.

14         Q.   You said you sell the product?

15         A.   Correct.

16         Q.   What is it that you sell?

17         A.   We sell them the back-office management

18   tools, the user interface client, that they can, in

19   turn, then either brand on their own or we will brand

20   for them to offer to their customer base.

21         Q.   And the brand on your own is your

22   so-called white labeling offerings?

23         A.   Correct.

24         Q.   That's actually what the definition of

25   "white label" is; is that right?

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 15

1              A.    Correct.

2              Q.    Okay.  The answers you gave were limited

3    to the license issue, but what about the sales

4    function?  Who approaches potential -- I'll use your

5    word -- operators?

6              A.    In effect, as a startup, everybody's

7    technically a salesperson, but the majority of that

8    work is done through business development staff, the

9    COO and myself.

10             Q.    You still consider your company a startup?

11             A.    Correct.

12             Q.    Okay.  Have you attended major video

13   conferences held throughout the U.S., such as NAB?

14             A.    Absolutely.

15             Q.    You have?

16             A.    Yes.

17             Q.    Okay.  Have you attended Streaming Media

18   East?

19             A.    Yes.

20             Q.    Okay.

21             A.    Sorry.  Not East.  West.

22             Q.    You've only gone to West?

23             A.    Correct.

24             Q.    Is there a reason you didn't go to the

25   East?

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 21

1    approach, not correct.

2              Q.    What do you mean, "in terms of approach"?

9              Q.    Okay.  Now I need to ask some definitional

10   questions.  When you say "platform," what are you

11   referring to?

12             A.    Platform is the Aio platform which

13   consists of a consumer client that runs on consumer

14   devices, talking to our back office management platform

15   that provides conditional access, content injection,

16   personalization, social media.  That is what the client

17   talks to to get its information.

18             Q.    And the client is downloaded from the

19   aioTV website?

20             A.    The client, if it's downloaded, is on an

21   Android device, which is a native Android application.

22   All other uses on other devices, be it PC, Mac, iPad,

23   et cetera, is a web-based application that runs in the

24   browser.

25             Q.    And by "web-based," just so the -- the

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 22

1    court will understand this -- by "web-based," it's in

2    the cloud?

3            A.    It's in the cloud.  It is known as an

4    HTML5 web app.

5            Q.    Mm-hmm.  And the -- the -- the download

6    that's available as a client is available from your

7    website platform?

8            A.    Or Google Play.

9            Q.    Okay.  Or Google Play.  And there's no

10   geographic limitation, I take it, on where -- where a

11   consumer can download that?

12           A.    That is correct.

13           Q.    And you -- when you have talked about

14   guest access to your -- to your HTLM -- HTML5 platform,

15   there's no geographic limitation to that either,

16   correct?

17           A.    Correct.

25           Q.    Okay.  Do any of your licensees market

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 23

1   your product?

2           A.   Surely, they do, yes.

3           Q.   How?

4           A.   They -- well, that would be different from

5   one to the next.

6           Q.   Okay.

7           A.   I'm not entirely certain how they're doing

8   their marketing.  Clearly, web-based --

9           Q.   Mm-hmm.

10          A.   -- and clearly e-mail and electronic

11  communication to their existing customer base.  Beyond

12  that, that would be a question better served from them.

13          Q.   Right.  We will -- I'll ask you about

14  specific licensees as we go on, because they've been

15  identified.

16          A.   Sure.

17          Q.   Is the Android client download solely to

18  hand-held devices, or is it to PC as well?

19          A.   If it's Android, it would be whatever that

20  device is -- set-top box, handsets, and tablets.

21          Q.   What is an aggregation platform?

22          A.   Well, if it relates to how Aio views an

23  aggregation platform --

24          Q.   Yes, that's what I'm asking.

25          A.   -- it's a platform that aggregates

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 24

1   multiple sources of video content into a user

2   experience that feels unified.

3          Q.   There's no geographic limitation on source

4   of video aggregated, correct?

5          A.   Let me answer that two ways.  Yes, there

6   is limitations as provided by the content owners.

7   Certain assets are not made available in certain

8   geographic areas.  Our platform, as it ingests the

9   content, is not restricting that.  It is the content

10  owner that's restricting that.

11         Q.   Your platform has no geographic

12  restrictions?

13         A.   Correct.

14         Q.   Or -- or content ownership restrictions.

15  That is imposed by the content owner?

16         A.   Right.  Our platform is aware of those

17  restrictions and only places content in front of a

18  consumer that they can access wherever they may be at

19  the time.

20         Q.   Can you -- this is going to be a very

21  broad question, but I'd like to know.  What's your --

22  what's your initiating vision for the company?  What is

23  it that you want to do ultimately as a consumer-facing

24  product?

25              MR. WARTELL:  Object to form.

1  is that some of the products -- for example, with

2  Cricket -- may -- may have, in connection with aioTV,

3  been marketed in Georgia.  So I just want to know, have

4  you -- have you developed any products in addition to

5  the service with any third-party licensee?

6              MR. WARTELL:  Same objection.

7         A.   No third-party licensee and Aio have

8  jointly developed products outside of the platform.

9         Q.   (BY MR. HUMMEL)  Okay.  Going to the --

10  the directed consumer subscription service, just so the

11  record is absolutely clear, is it true that there's no

12  limit on any person who can access that?

13        A.   There is no limit on any person, correct.

14        Q.   And there's no limit on the location of

15  access?

16        A.   Correct.

17        Q.   And anyone can download the video content

18  from the website?

19        A.   To be clear, we don't host any video

20  content on our website.  We provide a direction to it,

21  a path to it.

22        Q.   And there's no limit on -- there's no

23  geographic limit on that access?

24        A.   Correct.

25        Q.   What is your revenue source, if any, from

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 55

```
 1     that access?  It's the advertising piece?
 2             A.    That is correct.
 3             Q.    Okay.  And how have you marketed to
 4     advertisers generally?
 5             A.    We don't market to advertisers.  We use a
 6     third-party platform that provides the ad inventory
 7     that we call when an ad is requested.
 8             Q.    What is that platform?
 9             A.    It's called
10             Q.    Where are they based?
11             A.    I'm not entirely sure.  I believe their
12     corporate is in California.
13             Q.    Do they control which advertisers appear
14     on the site?
15             A.    Yes.
16             Q.    You have no -- no independent input?
17             A.    Correct.
18             Q.    So you have -- is it true that you have no
19     knowledge about the location of the advertisers with
20     whom you derive a revenue through
21             A.    That's correct.
22             Q.    Do you know if there are any advertisers
23     who are Georgia companies?
24             A.    I do not know.
25             Q.    Do you track clicks on advertiser links on
```

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 56

1    your website?

2           A.    No.

3           Q.    Do you have any reason -- do you have any

4    basis -- strike that.

5                 MR. HUMMEL:  Off the record for a second.

6                 (Discussion off the record.)

7           Q.    (BY MR. HUMMEL)  Do you have any way of

8    discerning whether consumers who clicked on ads or --

9    or banner ads on your website did so from Georgia?

10          A.    There are no banner ads on our website.

11   There is no ability to click on an ad on our website.

12          Q.    How did you ascertain the number of direct

13   service users who actually subscribed through a

14   non-guest method to aioTV?

15          A.    We ran a query against our database,

16   looking for any information provided that indicated a

17   user in Georgia, including zip codes, states that were

18   provided, at the time of registration.

19          Q.    Does your name, aioTV, appear on your

20   website?

21          A.    Yes, it does.

22                MR. HUMMEL:  I'll just mark this for the

23   record as Exhibit 2.

24                (Deposition Exhibit 2 was marked.)

25                MR. HUMMEL:  I'll ask you to place it in

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 60

1        Q.   Is it true that aioTV has no knowledge of

2   or control over where or in what states your

3   independent licensees market and sell your products and

4   services?

5            A.   The question again?

6                MR. HUMMEL:  Could you read that one back?

7                (The last question was read back as

8   follows:  "Is it true that aioTV has no knowledge of or

9   control over where or in what states your independent

10  licensees market and sell your products and services?")

11           A.   That is not a true statement.

12           Q.   (BY MR. HUMMEL)  Okay.  In what sense is

13  it not true?

14           A.   We do have some knowledge of where our

15  licensees offer service.  We have no control over where

16  they offer their service.

17           Q.   You could negotiate that, but you haven't?

18           A.   Correct.

19           Q.   Okay.  So let me just mark your

20  Declaration in connection with the Motion to Dismiss

21  filed in Georgia as Exhibit 3.

22               (Deposition Exhibit 3 was marked.)

23           Q.   Is Exhibit 3 a copy of your Declaration,

24  which you signed under penalty of perjury on July 1,

25  2013?

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 76

1    gallery that ships on the platform.  There was no

2    requirement for a license.

3           Q.   What's a spotlight gallery?

4           A.   It's a collection of applications that

5    Google has chosen to highlight to their -- their users

6    of the platform.

7           Q.   Google does not use the name "Aio" in any

8    consumer-facing way?

9           A.   Google does use the name "Aio" when they

10   ship a Google TV product.

14          Q.   Does a consumer in Georgia who utilizes

15   the Google TV product see the Aoi mark?

16          A.   Yes.

17               MR. WARTELL:  Objection.  Foundation.

18          Q.   (BY MR. HUMMEL)  You know that's true?

19          A.   Yes.

20          Q.   Other than on the web -- I think I may

21   have asked you this, so bear with me as I go through my

22   outline here.

23               Other than on the web, does aioTV

24   advertise in any -- in any other forum?

25          A.   No.

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 77

```
 1           Q.    No magazine advertising?

 2           A.    No.

 3           Q.    No trade magazine?

 4           A.    No.

 5           Q.    When you've attended the trade shows that

 6      we talked about at the beginning of the deposition, do

 7      you hand out business cards?

 8           A.    Yes.

 9           Q.    Do you hand out any other printed

10      materials?

11           A.    Yes.

12           Q.    What are those?

13           A.    We have created a single, one-pager that

14      we have passed out at shows.

15           Q.    Okay.  And that's designed as a B-to-B

16      informational piece?

17           A.    Correct.

18           Q.    Do you have a copy of that?

19           A.    Not with me.

20           Q.    Can you access it online?

21           A.    No.  It's not available online.  The only

22      thing left now -- we don't use it anymore.

23           Q.    Don't use it anymore.  No radio

24      advertising?

25           A.    Correct.
```

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 78

1      Q.   No TV advertising?

2      A.   No.

3      Q.   Any direct e-mail marketing to potential

4  licensees?

5      A.   Licensees being B-to-B?

6      Q.   Yes.

7      A.   Yes.

8      Q.   Is there a standard form e-mail that's

9  sent out to potential B-to-B licensees?

10     A.   No.

11     Q.   It's all targeted?

12     A.   Yes.

17     Q.   When did those occur?

18     A.   Would have been mid 2000 -- sorry -- early

19  2012.

20     Q.   The purpose of those communications was

21  what?

22     A.   Attempting to sell the platform for their

23  use, white label.

24     Q.   Describe what you were trying to sell.

25     A.   The aioTV platform.

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 79

1          Q.    To Cox Communications as a cable provider?

2          A.    Yes.

3          Q.    Did you ever visit Cox?

4          A.    No.

5          Q.    Were those e-mail exchanges or just

6    one-way transmissions from you to Cox?

7          A.    No.  They were exchanges.

8                THE DEPONENT:  And I will need a "bio"

9    shortly.  My coffee has found the bottom.

10               MR. WARTELL:  Can we take a break?

11               MR. HUMMEL:  Sure.  It's a good time.

12               (Recess taken, 11:00 a.m. to 11:10 a.m.)

13         Q.    (BY MR. HUMMEL)  I'm just going to show

14    you something.  I'm confident you haven't seen it, but

15    I just want to ask anyway.  Exhibit 6.

16               (Deposition Exhibit 6 was marked.)

25               MR. HUMMEL:  Okay.  I'm not going to

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 89

1    indicate that it's over 1 million.

2           Q.   Mm-hmm.  Including in Georgia?

3                MR. WARTELL:  Objection.  Foundation.

4           Q.   (BY MR. HUMMEL)  If you know?

5           A.   I would have no idea how many, but

6    certainly there -- there's likely to be some in

7    Georgia.

8                MR. HUMMEL:  Off the record.

9                (Recess taken, 11:25 a.m. to 11:36 a.m.)

10          Q.   (By MR. HUMMEL)  Did aioTV have any

11   contracts with any Georgia companies?

12          A.   No.

13          Q.   With any Georgia individuals?

14          A.   No.

15          Q.   Any oral agreements with any Georgia

16   companies?

17          A.   No.

18          Q.   Are you in any -- presently in any

19   contract discussions with any Georgia companies?

20          A.   No.

21          Q.   Other than Cox Communications, have you

22   had any interaction regarding potential licensing

23   arrangements with Georgia companies?

24          A.   No.

25          Q.   None other than Cox?

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 91

1    September 5th, I believe.  And I think that's a

2    weekday.

3                    Would that be -- is that enough

4    turn-around time?

5                    MR. HUMMEL:  Sure.

6                    MR. LYONS:  Yeah.  We can do that.

7                    MR. HUMMEL:  Okay.  So the witness will

8    have until September 5 to review the transcript and

9    notify us of any changes to the transcript --

10                   MR. LYONS:  Right.

11                   MR. HUMMEL:  -- at that point.

12                   And you understand, do you not, that if

13   you do make changes to the transcript, either party

14   will have the opportunity to comment on the fact of the

15   change, as it may or may not impact your credibility.

16                   THE DEPONENT:  I understand.

17                   MR. HUMMEL:  Okay.  Anything else?

18                   MR. WARTELL:  Yeah.  I've got one area of

19   follow-up with Mr. Earle.

20                   MR. HUMMEL:  Okay.

21                   MR. WARTELL:  All right.

22                           EXAMINATION

23   BY MR. WARTELL:

24           Q.   Mr. Earle, just one area of -- of inquiry.

25   Mr. Hummel asked you questions about paragraph 15 of

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 92

1    your Declaration, which has been marked as Exhibit 3 --

2           A.    Mm-hmm.

3           Q.    -- for purposes of the deposition.  Can

4    you get that in front of you?

5           A.    Yes.  Got it.

6           Q.    That paragraph 15 states, "Aio has no

7    knowledge of or control over where, or in what states,

8    these independent companies market and sell their

9    products and services."  Did I read that correctly?

10          A.    Yes, you did.

11          Q.    At the time you signed this Declaration,

12   was that correct?

13          A.    Yes.

14          Q.    Did there come a time where you gained

15   further knowledge that formed the basis of your

16   testimony today?

17          A.    Yes.

18          Q.    Okay.  How or what was -- what caused you

19   to -- to acquire that additional knowledge?

20          A.    During the preparation of materials for

21   discovery requested by AT&T's counsel, we went back and

22   looked at the business models of our customers and

23   determined that they at that point were only offering

24   service in their physical location.

25          Q.    So the testimony in your Declaration and

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 93

1   your testimony today were both truthful and accurate to

2   the best of your ability?

3          A.   Correct.

4          Q.   Nothing further.

5               MR. HUMMEL:  Nothing further from me.

6   Same stipulation that I put on the record.  I should

7   have asked if you had questions before I did the

8   stipulation.  But so stipulated?

9               MR. LYONS:  Yes.

10              MR. WARTELL:  Yeah.

11              MR. HUMMEL:  Off the record.

12              WHEREUPON, the within proceedings were

13  concluded at the approximate hour of 11:40 a.m. on the

14  22nd day of August, 2013.

15              *       *       *       *       *

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 94

**ACKNOWLEDGEMENT OF DEPONENT**

1      I, Michael Earle, do hereby certify that I have read the foregoing transcript of my

2    testimony, and further certify that it is a true and accurate record of my testimony (with the

3    exception of the corrections listed below):

4    <u>Page</u>    <u>Line</u>            <u>Correction</u>

5    89      12      No      aioTV had a three-month "Trial Agreement" with Cox
                                      Communications that expired in Jan. 2012 and resulted in no
                                      income to aioTV.

6

7

8

9

10                                 Michael Earle

11

12    SUBSCRIBED AND SWORN TO BEFORE ME THIS 4th DAY OF SEPTEMBER, 2013.

13
14
15    *Cassandra Smith*
     (NOTARY PUBLIC)                      *March 16, 2014*
                                         MY COMMISSION EXPIRES

CASSANDRA SMITH
NOTARY PUBLIC
STATE OF COLORADO

VERITEXT REPORTING COMPANY
www.veritext.com

212-267-6868                                                   516-608-2400

{JK00510898.1 }

HIGHLY CONFIDENTIAL
OUTSIDE ATTORNEYS' EYES ONLY

Page 95

1                    REPORTER'S CERTIFICATE
2    STATE OF COLORADO          )
                                )  ss.
3    CITY AND COUNTY OF DENVER )
4              I, AMY L. BLAND, Registered Professional
     Reporter, Certified Shorthand Reporter, and Notary
5    Public ID 20124056559, State of Colorado, do hereby
     certify that previous to the commencement of the
6    examination, the said MICHAEL EARLE was duly sworn by
     me to testify to the truth in relation to the matters
7    in controversy between the parties hereto; that the
     said deposition was taken in machine shorthand by me at
8    the time and place aforesaid and was thereafter reduced
     to typewritten form; that the foregoing is a true
9    transcript of the questions asked, testimony given, and
     proceedings had.
10
               I further certify that I am not employed
11   by, related to, nor of counsel for any of the parties
     herein, nor otherwise interested in the outcome of this
12   litigation.
13             IN WITNESS WHEREOF, I have affixed my
     signature this 29th day of August, 2013.
14
15             My commission expires September 6, 2016.
16
     __X__ Reading and Signing was requested.
17
     _____ Reading and Signing was waived.
18
     _____ Reading and Signing is not required.
19
20
21
22
23
24
25

EXHIBIT A-2

TO AIOTV INC's REPLY IN SUPPORT OF MOTION TO DISMISS

DEFENDANT'S AMENDED INTERROGATORY RESPONSES

(This Exhibit filed under Seal)

EXHIBIT A-3

TO AIOTV INC's REPLY IN SUPPORT OF MOTION TO DISMISS

PLAINTIFFS' INTERROGATORIES

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| AT&T INTELLECTUAL PROPERTY II, L.P., and AIO WIRELESS LLC, | § § § | Civil Action No. 1:13-cv-1901-JOF |
| *Plaintiffs,* | § § | |
| *v.* | § § | |
| AIOTV, INC. | § § | |
| *Defendant.* | § § § § | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT AIOTV, INC.

Plaintiffs, AT&T Intellectual Property II, L.P. and Aio Wireless LLC pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Court's Order dated ____, request that Defendant aioTV, Inc., within 21 days of service, answer these Interrogatories, and provide its responses to the same to the law offices of Manatt, Phelps & Phillips, LLP, 7 Times Square, New York, NY 10036.

## DEFINITIONS

1.      The terms "Plaintiffs" means AT&T Intellectual Property II, L.P. and Aio Wireless LLC, their officers, directors representatives, agents, or those acting with or under its authority or control.

2.      The terms "aioTV", "Defendant", "you" or "your" means aioTV, Inc., its officers, directors, representatives, agents, or those acting with or under its authority or control.

3.      The term "Defendant's Marks" means the terms: aio, aioTV, aio pro, aio cloud, and others incorporating the term "aio," to which aioTV claims common law trademark rights.

4.      The term "aioTV Direct Service User" means subscribers or users that obtain the aioTV streaming service directly from aioTV without subscription to or use of any third party products or services, such as Google TV.

5.      The term "aioTV Indirect Service User" means subscribers or users that obtain the aioTV streaming service indirectly from aioTV through subscription or use of any third party products or services, such as Google TV.

6.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

7.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

8.      The term "person" is defined as any natural person or any business, legal or governmental entity or association.

9.      The term "identify," when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10.     The term "identify," when referring to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).  In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

11.     The terms "all," "any" and "each" shall each be construed as encompassing any and all.

12.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

13.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

14.     The term "relate to" means consist of, refer to, reflect, or be in any way logically or factually connected with the matter discussed.

15.     The term "including" shall be interpreted so as to expand the meaning or interpretation of a term or question and shall not be interpreted in a restrictive manner.

16.     Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary style.

## <u>INSTRUCTIONS</u>

1.      Each Interrogatory shall be answered separately and fully in writing under oath or the grounds for refusal to answer shall be fully stated under oath.  If You object to only a portion of any Interrogatory, You shall fully answer the remainder of the Interrogatory.  If any of these Interrogatories cannot be answered in full, You must answer to the extent possible, specifying the reasons for Your inability to answer the remainder and stating whatever information, knowledge, or belief You have concerning the unanswered portion.  If, in answering these Interrogatories, You encounter any ambiguities in construing a question, instruction, or definition, You shall set forth the matter deemed ambiguous and the construction used in answering.

2.      These Interrogatories are continuing.  Any additional information responsive to these Interrogatories that aioTV acquires and/or that becomes known to aioTV in the future shall be furnished to Plaintiffs promptly after such information is acquired by or becomes known to aioTV.

3.      If you should make any objection to any request on the ground that it calls for the disclosure of a communication or information protected from discovery by any privilege or doctrine, including, but not limited to, the attorney-client privilege or the attorney work-product doctrine, please provide a privilege log detailing each communication or document for which privilege is claimed and the basis for the claim.  The privilege log shall include the following information concerning any such communication or information, where applicable: (a) its nature (*e.g.*, telephone communication, letter, memorandum) and whether it is reflected in or evidenced by any document, as defined herein; (b) the date on which it was made; (c) the name, address,

and occupation of each person who was a party to said communication, present at the time of (or

who overheard) said communication, and (d) the Bates Numbers of the document(s).

## INTERROGATORIES

**Interrogatory No. 1.**   State the number of aioTV Direct Service Users that have or had a

mailing, post office box, or Internet Protocol address located within the State of Georgia by year,

from 2010 to the present.

**Interrogatory No. 2.**   State the number of aioTV Indirect Service Users that have or had

a mailing, post office box, or Internet Protocol address located within the State of Georgia by year,

from 2010 to the present.

**Interrogatory No. 3.**   Identify each wireless carrier with whom aioTV has entered into an

agreement to provide or to whom aioTV has provided any products or services under Defendant's

Marks.

**Interrogatory No. 4.**   Identify each licensee or other authorized user of Defendant's

Marks.

**Interrogatory No. 5.**   State the amount of revenue derived by aioTV from, or as a result

of, use by aioTV Direct Service Users with a mailing, post office box, or Internet Protocol address

located within the State of Georgia by year, from 2010 to the present.

**Interrogatory No. 6.**   State the amount of revenue derived by aioTV from, or as a result

of, use by aioTV Indirect Service Users with a mailing, post office box, or Internet Protocol address

located within the State of Georgia by year, from 2010 to the present.

**Interrogatory No. 7.**   State the name and address of any person in the located in the State

of Georgia with whom aioTV has entered into a contract.

Dated:  July ____, 2013

                _____

                William H. Brewster
                Georgia Bar No. 080422
                Kilpatrick Townsend & Stockton
                1100 Peachtree Street, Ste. 2800
                Atlanta, Georgia  30309
                Telephone:  (404) 815-6500
                Facsimile:  (404) 815-6555
                Email: bbrewster@kiltown.com

                Darren W. Saunders, Esq.
                Linda A. Goldstein, Esq.
                Manatt, Phelps & Phillips LLP
                7 Times Square
                New York, New York 10036
                Telephone:      (212) 790-4500
                Facsimile:      (212) 790-4545
                Email: dsaunders@manatt.com
                Email: lgoldstein@manatt.com

                Chad S. Hummel, Esq.
                Manatt, Phelps & Phillips LLP
                11355 W. Olympic Blvd.
                Los Angeles, California 90064
                Telephone:      (310) 312-4000
                Facsimile:      (310) 312-4224
                Email: chummel@manatt.com

                ***Attorneys for Plaintiffs***
                **AT&T INTELLECTUAL PROPERTY
                II, L.P. and AIO WIRELESS LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT** is being served via electronic mail and first class mail this _____ day of July, 2013 on counsel for the Defendant aioTV, Inc.:

        Edward T. Lyons, Jr.  (elyons@joneskeller.com)
        Daniel A. Wartell (dwartell@joneskeller.com)
        Aaron D. Goldhamer (agoldhamer@joneskeller.com)
        Jones & Keller, P.C.
        1999 Broadway, Suite 3150
        Denver, CO 80202

        Kelly L. Whitehart (kwhitehart@millermartin.com)
        Morris Manning & Martin LLP
        1600 Atlanta Financial Center
        3343 Peachtree Road NE
        Atlanta, GA 30326-1044

_____
William Brewster

7

EXHIBIT A-4

TO AIOTV INC's REPLY IN SUPPORT OF MOTION TO DISMISS

PLAINTIFFS' REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| AT&T INTELLECTUAL PROPERTY II, L.P., and AIO WIRELESS LLC, | § § § | Civil Action No. 1:13-cv-1901-JOF |
| *Plaintiffs,* | § § | |
| *v.* | § § | |
| AIOTV, INC. | § § | |
| *Defendant.* | § § § § | |

## PLAINTIFFS'  FIRST SET OF REQUESTS FOR DOCUMENT AND THINGS TO DEFENDANT AIOTV, INC.

Plaintiffs, AT&T Intellectual Property II, L.P. and Aio Wireless, LLC pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Court's Order dated July ___, 2013, request that Defendant aioTV, Inc., within 21 days of service, respond to these Requests for documents and things, and provide its responses to the same to the law offices of Manatt, Phelps & Phillips, LLP, 7 Times Square, New York, NY 10036.

## **DEFINITIONS**

1.      The terms "Plaintiffs" means AT&T Intellectual Property II, L.P. and Aio

Wireless LLC, their officers, directors representatives, agents, or those acting with or under its

authority or control.

2.      The terms "aioTV", "Defendant", "you" or "your" means aioTV, Inc., its officers,

directors, representatives, agents, or those acting with or under its authority or control.

3.      The term "Defendant's Marks" means the terms: aio, aioTV, aio pro, aio cloud,

and others incorporating the term "aio," to which aioTV claims common law trademark rights.

4.      The term "aioTV Direct Service User" means subscribers or users that obtain the

aioTV streaming service directly from aioTV without subscription to or use of any third party

products or services, such as Google TV.

5.      The term "aioTV Indirect Service User" means subscribers or users that obtain the

aioTV streaming service indirectly from aioTV through subscription or use of any third party

products or services, such as Google TV.

6.      The term "document" is defined to be synonymous in meaning and equal in scope

to the usage of the phrase "documents or electronically stored information" in Fed. R. Civ. P.

34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this

term.

7.      The term "communication" means the transmittal of information (in the form of

facts, ideas, inquiries or otherwise).

8.      The term "person" is defined as any natural person or any business, legal or

governmental entity or association.

9.      The terms "all," "any" and "each" shall each be construed as encompassing any and all.

10.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11.      The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

12.      The term "relate to" means consist of, refer to, reflect, or be in any way logically or factually connected with the matter discussed.

13.      The term "including" shall be interpreted so as to expand the meaning or interpretation of a term or question and shall not be interpreted in a restrictive manner.

14.      Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary style.

## INSTRUCTIONS

1.      These requests call for all documents and things, as defined herein, that are known or are available to you, including all documents and things in the possession of, or under the custody or control of, your employees, attorneys, accountants, auditors, other professional persons, or any investigator or other persons acting under your or your attorneys' authorization, employment, direction, custody or control.

2.      For each document responsive to these requests for production that is withheld from production, or from which any information has been redacted, on a claim of attorney-client privilege or attorney work product production, specify the privilege or work product

protection(s) you claim, and provide the following information: (a) the nature of the document (*e.g.*, letter, memorandum, contract, etc.) and a description of its subject matter; (b) the author or sender of the document; (c) the recipient(s) of the document; (d) the date that the document was authored, sent and received; and (e) the basis for your privilege claim.  If the claimed privilege or work product protection applies only to a particular phrase, sentence, paragraph, or section of a responsive document, the entire document should be produced with the allegedly protected portion redacted and a legend indicating that the withheld portion is the subject of a specified privilege or protection.

3.      If any document that was, or might have been, responsive to these requests for production was destroyed, erased, surrendered, or otherwise removed from your possession, custody or control, at any time, provide, to the maximum extent possible, the following information: (a) the nature of the document (*e.g.*, letter, memorandum, contract, etc.) and a description of its subject matter; (b) the author or sender of the document; (c) the recipient(s) of the document; (d) the date that the document was authored, sent and received; (e) the circumstances surrounding the removal of the document from your custody, possession or control; and (f) the identity of the person(s) having knowledge of such removal from your custody, possession or control.

4.      Any document that was generated or created by use of a spreadsheet program, *e.g.* Microsoft Excel, or by use of a presentation program, *e.g.* Microsoft PowerPoint, and any other electronically-stored information (ESI) produced in response to these requests for production, should be produced in native format with all metadata to be included with such productions.

5.      If a document has been prepared in several copies that are not identical, or if additional copies have been made that are no longer identical, or if copies are no longer identical

by reason of subsequent modification or other modification of any kind whatsoever, on the front or back pages thereto, each non-identical copy is a separate document and must be produced.  In addition, if you maintain identical copies of the same document in different files and/or obtained identical documents from different sources, each identical copy is a separate document and must be produced.

6.      These requests for production are continuing.  Additional documents or information that become known to you at any time hereafter must be furnished to Plaintiffs' counsel immediately.

## REQUESTS FOR DOCUMENTS AND THINGS

**Request No. 1.**      Documents sufficient to identify each aioTV Direct Service User having a mailing address, post office box, or Internet Protocol address located within the State of Georgia, from 2010 to the present.

**Request No. 2.**      Documents sufficient to identify each aioTV Indirect Service User having a mailing address, post office box, or Internet Protocol address located within the State of Georgia, from 2010 to the present.

**Request No. 3.**      Documents sufficient to identify the number of times a person has accessed aioTV's products and service, whether directly or indirectly, from the State of Georgia, including but not limited to any person with a mailing, post office box or Internet Protocol address located within the State of Georgia, from 2010 to the present.

**Request No. 4.**      Documents sufficient to identify the amount of revenue generated from, or as a result of, use by aioTV Direct Service Users having a mailing address, post office box, or Internet Protocol address located within the State of Georgia, from 2010 to the present.

**Request No. 5.**    Documents sufficient to identify the amount of revenue generated from, or as a result of, use by aioTV Indirect Service Users having a mailing address, post office box, or Internet Protocol address located within the State of Georgia, from 2010 to the present.

**Request No. 6.**    Documents sufficient to identify each person with a mailing address, post office box address, or Internet Protocol address located within the State of Georgia, who has purchased or used aioTV's products and services through Google TV, from 2010 to the present.

**Request No. 7.**    A sample of each advertisement or promotional material, containing Defendant's Marks, that is or has been distributed to or accessible by residents of the State of Georgia, from 2010 to the present.

**Request No. 8.**    Documents supporting the allegations made in Paragraph 18 of Defendant's Verified Complaint in the action captioned, *aioTV Inc. v. Aio Wireless, LLC*, civil action number 1:13-cv-01493, filed in the United States District Court for the District of Colorado, namely that, "[t]he Google TV$^{TM}$ platform has shipped to over one million consumers, all of whom have access to "aioTV" upon activation of the TV."

**Request No. 9.**    Documents sufficient to identify any person in the located in the State of Georgia with whom aioTV has entered into a contract.

**Request No. 10.**    Each document referenced, consulted or reviewed in answering Plaintiffs' First Set of Interrogatories.

Dated:  July ____, 2013

_____
William H. Brewster
Georgia Bar No. 080422
Kilpatrick Townsend & Stockton
1100 Peachtree Street, Ste. 2800
Atlanta, Georgia  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
Email:  bbrewster@kiltown.com

Darren W. Saunders, Esq.
Linda A. Goldstein, Esq.
Manatt, Phelps & Phillips LLP
7 Times Square
New York, New York 10036
Telephone:    (212) 790-4500
Facsimile:    (212) 790-4545
Email: dsaunders@manatt.com
Email: lgoldstein@manatt.com

Chad S. Hummel, Esq.
Manatt, Phelps & Phillips LLP
11355 W. Olympic Blvd.
Los Angeles, California 90064
Telephone:    (310) 312-4000
Facsimile:    (310) 312-4224
Email: chummel@manatt.com

***Attorneys for Plaintiffs***
**AT&T INTELLECTUAL PROPERTY
II, L.P. and AIO WIRELESS LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **PLAINTIFFS' FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT** is being served via electronic mail and first class mail this _____ day of July, 2013 on counsel for the Defendant aioTV, Inc.:

> Edward T. Lyons, Jr.  (elyons@joneskeller.com)
> Daniel A. Wartell (dwartell@joneskeller.com)
> Aaron D. Goldhamer (agoldhamer@joneskeller.com)
> Jones & Keller, P.C.
> 1999 Broadway, Suite 3150
> Denver, CO 80202
>
> Kelly L. Whitehart (kwhitehart@millermartin.com)
> Morris Manning & Martin LLP
> 1600 Atlanta Financial Center
> 3343 Peachtree Road NE
> Atlanta, GA 30326-1044

_____
William Brewster

201776984.1

EXHIBIT A-5

TO AIOTV INC's REPLY IN SUPPORT OF MOTION TO DISMISS

EMAIL FROM DEFENDANT'S COUNSEL TO PLAINTIFFS' COUNSEL

From:       Ed Lyons
Sent:       Tue 9/3/2013 03:24 PM
Rcvd:       Tue 9/3/2013 03:29 PM
To:         Hummel, Chad (CHummel@manatt.com)
CC:         dsaunders@manatt.com; Dan Wartell; Aaron Goldhamer; Brad H. Hamilton;
            Kelly Whitehart (kwhitehart@millermartin.com); Renae Mesch
BCC:
Subject:    AT&T v. aioTV

======================================

Chad,

This e-mail will respond to your e-mail below and will also serve as a meet-and-conferral regarding a motion we intend to file later this week for leave to file a supplemental declaration of Mike Earle in support of Defendant's pending motion to dismiss for lack of *in personam* jurisdiction and improper venue.

First, with regard to your inquiry about the communications with Cox that came up during Mr. Earle's deposition, further review has confirmed our original understanding that the e-mails in question are not within the scope of Plaintiffs' First Set of Requests for Document and things. Request No 7 sought:

"A sample of each advertisement or promotional material containing Defendant's Marks, that is or has been distributed to or accessible by residents of the State of Georgia, from 2010 to the present. "

In response, although in fact no such advertising or promotional materials had been directed at Georgia residents, Defendant nevertheless produced *samples* of advertising or promotional materials which could have been *seen* by residents of Georgia because they were freely accessible on the Internet. (Bates Nos. AIOTV000458-527).

Production of the e-mail communications between Defendant and Cox Communications would not be responsive to that request, for several reasons. To begin with, the e-mails were *confidential* communications that were, by their very

nature, never intended to be, and never were, "distributed to or accessible by residents of the State of Georgia." More importantly, because the term "advertisement or promotional material" was not otherwise defined in Plaintiffs' discovery request, the usual and ordinary meaning of the term governs – as Plaintiffs' Definition No. 14 expressly provides. The commonly understood meaning of "advertisement" is "[a] notice, such as a poster or a paid announcement in the print, broadcast, or electronic media, designed to attract public attention or patronage." *American Heritage Dictionary of the English Language* (4th ed. 2000). Similarly, the commonly understood meaning of "promotional" materials contemplates "articles of merchandise (often branded with a logo) used in marketing and communication programs. They are given away to promote a company, corporate image, brand, or event." http://en.wikipedia.org/wki/Promotional_item

Your assumption that the Cox e-mails should be produced in response to Request No. 7 is therefore incorrect. Nevertheless, in the spirit of full disclosure, and to avoid the delay and waste of judicial and party resources that would be occasioned by an unnecessary discovery dispute, Defendant will voluntarily produce copies of the e-mails in question, between Plaintiff and Cox Communications. These documents, which are marked "HIGHLY Confidential – Outside Attorneys' Eyes Only" in accordance with the Consent Protective Order entered by the Court on August 5, 2013, are attached hereto as Bates Nos. AIOTV000528 - 910. (Note: this production contains numerous duplications of e-mails and strings of e-mails, the elimination of which would be unreasonably time consuming and delay completing discovery at this time).

The e-mails that are being produced have brought to light the fact that Defendant did, almost two years ago, enter into a three-month "Trial Agreement" with Cox Communications, dated October 13, 2011, which never produced any revenue or ripened into an ongoing contract and was inadvertently overlooked when Defendant responded to the written discovery requests. Thus, in accordance with Fed.R.Civ.P. 26(e)(1), Defendant will promptly supplement its responses to Interrogatory No. 7 and Request for Documents No. 9 to provide this updated information. We intend to serve these supplemented responses as soon as possible, no later than the end of this week. In the meantime, a copy of the prior Cox agreement is provided herewith as Bates Nos. AIOTV000911 - 917.

Finally, consistent with Mr. Earle's deposition testimony and the "Trial Agreement" with Cox that came to light as a result of reviewing the Cox emails, we intend to file a motion with the Court seeking leave to file a supplemental declaration of Mr. Earle in support of Defendant's motion to dismiss on

jurisdictional grounds and for improper venue to reflect the facts as they are now known concerning the former existence of that agreement.  Please advise us if the Plaintiffs will not object and that this motion may therefore be filed as an unopposed or consent motion. We intend to file the motion to update Mr. Earle's declaration by the end of this week.


Sincerely,


Ed Lyons


Description: Description: Description: Description: Yellow Bar

Description: Description: Description: Description: JONES&KELLER

**Edward T. Lyons, Jr**

Attorney at Law

1999 Broadway, Suite 3150
Denver, Colorado 80202
P: 303.573.1600 | F: 303.573.8133

**JONES&KELLER, P.C.**
elyons@joneskeller.com
www.joneskeller.com


**NOTICE:** THIS E-MAIL AND ANY ATTACHED DOCUMENTS MAY CONTAIN

PROVISIONS CONCERNING A FEDERAL TAX ISSUE OR ISSUES AND ARE NOT INTENDED TO BE USED, AND MAY NOT BE USED, BY ANY TAXPAYER FOR THE PURPOSES OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON ANY TAXPAYER BY THE INTERNAL REVENUE SERVICE. FOR INFORMATION ABOUT THIS STATEMENT, CONTACT JONES & KELLER, P.C.  The foregoing legend has been attached pursuant to U.S. Treasury Regulations governing tax practice.

**CONFIDENTIALITY NOTICE**

This electronic mail transmission and any attachments contain information belonging to the sender which may be confidential, privileged and exempt from disclosure under applicable law.  This information is intended only for the use of the individual or entity to whom this electronic mail transmission is addressed.  If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken or not taken in reliance on the contents of the information contained in this transmission is strictly prohibited.  If you have received this transmission in error, please immediately inform me by "reply" e-mail and delete the message in its entirety.  Thank you.