**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

AT&T INTELLECTUAL         :
PROPERTY II, L.P. and AIO      :
WIRELESS LLC,                 :

      Plaintiffs,               :      CIVIL ACTION NO.
                               :      1:13-CV-1901-RWS
      v.                     :
                               :
AIOTV, INC.,            :
                               :
      Defendant.            :

## <u>ORDER</u>

This matter is before the court on Plaintiffs' motion to enjoin Defendant aioTV from prosecuting second-filed action in District of Colorado [6]; Defendant's motion to dismiss or in the alternative transfer venue [8]; and Defendant's motion for leave to file supplemental declaration of Michael Earle [30].

## I.    Background

### A.    Procedural History

Plaintiffs, AT&T Intellectual Property II, L.P. and Aio Wireless LLC, filed the instant declaratory judgment action against Defendant aioTV Inc. ("AIO") on June 6, 2013 seeking a declaration that Plaintiffs' use of the brand "aio" did not infringe any alleged common law trademark rights to the term. Five days later, Defendant filed a lawsuit in the United States District Court for the District of Colorado ("the Colorado action"). In that suit, Defendant alleges various causes of action against Plaintiffs, including trademark

infringement under the Lanham Act, and unfair competition, trademark disparagement, violations of consumer protection, and unjust enrichment under Colorado law.

Plaintiffs filed a motion to stay in the Colorado action and filed a similar motion to enjoin Defendant from prosecuting the Colorado action in the instant case. Defendant filed a motion here to dismiss Plaintiffs' complaint for lack of personal jurisdiction, or in the alternative, to transfer the case to the District of Colorado. Given that it is generally accepted in the law that the court holding the "first-filed" case decides which of two parallel federal lawsuits should proceed, the parties did agree to stay the Colorado action until this court decides both the motion to enjoin and the motion to dismiss. *See* Notice, Docket Entry [17].

Plaintiffs then filed a motion for leave to conduct jurisdictional discovery to address some of the arguments made by Defendant in its motion to dismiss for lack of personal jurisdiction. The court granted that motion permitting Plaintiffs to propound interrogatories and requests for production, as well as take the deposition of Defendant's Chief Operating Officer, Michael Earle. The parties engaged in that discovery and Plaintiffs then filed their response to Defendant's motion to dismiss. Because the court ultimately decides that this case should proceed under the Colorado action, the court focuses its discussion on matters related to the "first filed" doctrine.

AO 72A
(Rev.8/82)

**B.     Facts**

Defendant AIO resides and is incorporated in Colorado.  AIO provides a "cloud-based" service that streams video content to its subscribers' wireless mobile devices and personal computers.  AIO has offered this service under the "aio" (pronounced "A-O") trademark and uses brands such as "aioTV," "Myaio," "aioPro," and "aioBasic."  AIO contends that it has used the "aio" trademark in the United States for three years preceding Plaintiffs' use.  Defendant claims precedence of use pursuant to common law trademark theory.  Defendant has not registered any of these brands.

Plaintiffs launched their new "aio wireless" service on May 9, 2013, beginning in Texas and Florida and with the website www.aiowireless.com.  Plaintiffs decided to use the "aio" brand after hiring a "brand creation company" to develop a brand name.  Defendant believes this brand creation company is located in Colorado and is managed by an individual who is also the head of public relations and communications for Plaintiff Aio Wireless.

On May 13, 2013, Defendant's attorneys sent a "cease and desist" letter to Plaintiffs' attorneys.  After reviewing Defendant's and Plaintiffs' use of the brand "aio" and related terms, Defendant's counsel wrote:

> Since our clients are sophisticated and represented by counsel I will dispense with the usual case and statute citations and other "cease and desist" form-letter demands.  However, it is probably a requirement that I request, on behalf of aioTV Inc., that AT&T cease and desist any further use of the "aio" mark, and notify you that AT&T's use of the identical trademark in connection with nearly the same goods and services that are offered by AIO under its "aio" marks constitutes trademark infringement, false designation of origin, and unfair competition in violation of the federal Trademark Act of 1946 (Lanham Act), 15 U.S.C. Section 1501 et seq.

AO 72A
(Rev.8/82)

I suggest that AT&T counsel contact the undersigned as soon as possible so that we can understand AT&T's thinking on these marks, and see if this matter can be resolved.

*See* Hamilton Decl., Exh. 2-C, Cease and Desist Letter, dated May 13, 2013, at 2.  On May 15, 2013, Defendant's counsel began preparing a verified complaint to be filed in Colorado. *See* Hamilton Decl., ¶ 8.  On May 21, 2013, AT&T's counsel called AIO's counsel to discuss the May 13th letter, the dispute, and possibilities of settlement. *Id.*, ¶ 10.  By May 24, 2013, AIO's counsel had prepared a draft verified complaint to be filed in Colorado. *Id.*, ¶ 14.

On May 30, 2013, Defendant's counsel again corresponded with AT&T's counsel. The letter noted that Plaintiffs continued a "very aggressive, well-funded and comprehensive brand marketing campaign surrounding the 'aio' mark." *See id.*, ¶ 16 & Exh. 2-D, Second Cease and Desist Letter, dated May 30, 2013, at 1.  The letter continued to state:

In our phone conversation last week you inquired whether our client might have a proposal to settle this matter.  As our client is not the infringing party, it is incumbent upon us to notify you that AT&T's use of the "aio" mark constitutes trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act and my client's common law rights.

While our client is prepared to take aggressive action in connection with AT&T's unauthorized use of the "aio" mark, we are writing in an effort to resolve this matter by seeking AT&T's assurance that it will *immediately* cease and desist from using "aio", or anything confusingly similar thereto, as a trademark, service mark or trade name in connection with the sale and/or service of wireless devices.

If AT&T has any proposals or suggestions for settling this matter in a different manner, please communicate them to me as soon as possible;

> unfortunately, AT&T's actions have already virtually destroyed my client's
> mark, so usual remedial actions would have no value.

*Id.* at 2.

On June 3, 2013, AT&T's counsel called AIO's counsel to discuss the Second Cease and Desist letter and what AIO had as a basis for a settlement. *See* Hamilton Decl., ¶ 17. AIO's counsel discussed possible terms in general. *Id.*, ¶ 20. According to the declaration filed by Defendant's counsel, AT&T's counsel seemed interested but stated that it would be a while before AT&T could respond given the size of the organization and the chain of command. *Id.*, ¶¶ 21-23. AT&T's counsel asked that if AIO was not willing to wait on filing the lawsuit, AIO's counsel would notify AT&T's counsel before filing suit. *Id.*, ¶ 24. AIO's counsel agreed to this proposal and testified that he understood from this conversation that the parties had essentially agreed to an "informal standstill arrangement." *Id.*, ¶¶ 25-26. Three days later, on June 6, 2013, AT&T filed the instant declaratory judgment action. On June 11, 2013, AIO filed its own complaint in the United States District Court for the District of Colorado.

### B.     Contentions

Defendant argues this court does not have personal jurisdiction over it because Defendant does not transact any business in Georgia, has no offices or employees here, and directs no activity toward Georgia. As such, Defendant does not have sufficient contacts with Georgia to justify jurisdiction under either Georgia's long-arm statute or constitutional due process. In the alternative, Defendant contends the court should transfer venue to the

District of Colorado because (1) Defendant does not reside in Georgia and none of the events or omissions giving rise to Plaintiff's claims occurred in Georgia and (2) the convenience of the witnesses and the sake of judicial economy favors venue in Colorado. Finally, Defendant contends that Plaintiffs' suit in Georgia should not be entitled to any "first-filed" presumption because it was filed in anticipation of litigation by Defendant.

Plaintiff responds that the court may exercise both general and specific jurisdiction over Defendant.  Plaintiff avers that Defendant has continuous and substantial contacts with Georgia based on the direct and "indirect subscribers" who reside in Georgia and who may continually stream product from Defendant.  Plaintiffs further aver that AIO has purposefully directed its activities at Georgia because AIO not only has a web-based presence, but Georgia users of aioTV stream media content aggregated by aioTV on an on-going basis. Moreover, Plaintiffs contend that AIO has contacts with Georgia because it entered into contracts with a Georgia company and agreed to Georgia forum selection clauses.  Finally, Plaintiffs state that by arguing it had nationwide common law trademark rights, Defendant admits that it must have conducted sufficient business in Georgia such that this court's exercise of jurisdiction comports with the Georgia long arm statute and constitutional due process.

AO 72A
(Rev.8/82)

## II.   Discussion

Defendant argues that the court should dismiss this declaratory judgment action in favor of the pending federal litigation in Colorado.  The court has discretion in deciding whether to entertain a declaratory judgment action even if the action is within the court's jurisdiction.  *See*, *e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  The Supreme Court explained:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

*Id.* at 286.  A "district court may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties."  *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).

Here, the instant declaratory judgment action was filed before the action pending in the District of Colorado.  The Eleventh Circuit has observed that "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) (noting this practice should be followed when "competing courts are both federal courts"); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there

7

is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").

The "party objecting to jurisdiction in the first-filed forum carries the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel*, 430 F.3d at 1135.  To determine whether these "compelling circumstances" exist, "one equitable consideration is whether the action was filed in apparent anticipation of another pending proceeding." *Ven-Fuel*, 673 F.2d at 1195; *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967).[1]

Courts have found that anticipatory declaratory judgment suits filed in response to indications from the defendant of imminent suit are examples of disfavored forum shopping. *See*, *e.g.*, *Schwarz v. National Van Lines, Inc.,* 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) ("[C]ourts refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an 'improper anticipatory filing' made under threat of an imminent suit and asserting the mirror-image of that suit in another district."); *Z–Line Designs, Inc. v. Bell'O International LLC,* 218 F.R.D. 663, 667 (N.D. Cal. 2003) ("where as here a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first"); *Hanson PLC v. Metro–Goldwyn–Mayer, Inc.,* 932 F. Supp. 104, 107

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

(S.D.N.Y. 1996) ("Where the first-filed case is a declaratory judgment action precipitated by a demand letter and filed in anticipation of the later action, the second-filed action will be allowed to go forward in plaintiff's chosen forum"); *NSI Corp. v. Showco, Inc.,* 843 F. Supp. 642, 645 (D. Or. 1994) ("first-filed" rule does not apply where "the party seeking declaratory judgment unfairly took advantage of the other in a race to the courthouse").

The court has reviewed the testimony of Plaintiffs' counsel and Defendant's counsel (undisputed by Plaintiffs) as well as the correspondence between Defendant's counsel and Plaintiffs' counsel. The court finds there is sufficient evidence in the record to determine that Plaintiffs were motivated by forum-shopping concerns and filed the instant action in anticipation of the suit later filed by Defendant. Defendant sent two "cease and desist" letters to Plaintiffs. On both occasions, Plaintiffs asked Defendant for offers of settlement. Having obtained some discussion on settlement, Plaintiffs' counsel then asked Defendant for time to confer with his client. Plaintiffs' counsel indicated that such discussions would take some time as his client was a large corporation.

Plaintiffs' counsel then specifically asked that if Defendant was not willing to wait on filing its lawsuit, if Defendant's counsel would notify Plaintiffs' counsel before filing suit. Defendant's counsel reasonably and understandably took from this conversation that the parties had essentially agreed to an "informal standstill arrangement." Nonetheless, three days later, Plaintiffs filed the instant declaratory judgment action. Unlike *Supreme International Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604 (S.D. Fla. 1997), cited by Plaintiffs, the parties here had not ceased unsuccessful settlement negotiations. Plaintiffs'

9

counsel specifically asked Defendant's counsel to inform Plaintiffs if Defendant intended to file suit.  There were no "mixed signals" in this case.  Given that the last statement Plaintiffs' counsel made to Defendant's counsel was an intention to consult with his client regarding whether settlement discussions would be useful, a conversation Plaintiffs' counsel warned could take some time, the court finds that Plaintiffs' suit filed three days later is an example of forum-shopping and therefore, an exception to the "first-filed" rule.

For these reasons, the court finds there are compelling circumstances which cause the court to decline to follow the "first-filed" rule.  The court declines to exercise jurisdiction over this declaratory judgment action.  The court grants Defendant's motion to dismiss to the extent it asked the court to decline to exercise jurisdiction over this first filed declaratory judgment action.  Because the parties will now continue with the litigation in the Colorado action, the court need not address Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404.

**III.    Conclusion**

The court DENIES Plaintiffs' motion to enjoin Defendant aioTV from prosecuting second-filed action in District of Colorado [6]; GRANTS IN PART AND DENIES AS MOOT IN PART Defendant's motion to dismiss or in the alternative transfer venue [8]; and GRANTS Defendant's motion for leave to file supplemental declaration of Michael Earle [30].

The Clerk of the Court is DIRECTED to CLOSE this case.


**IT IS SO ORDERED** this  13th  day of August, 2014.


**RICHARD W. STORY**
United States District Judge

11